# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

ILENE RICHMAN, Individually and on Behalf of
All Others Similarly Situated,

        Plaintiffs,

      v.

GOLDMAN SACHS GROUP, INC., LLOYD C.
BLANKFEIN, DAVID A. VINIAR and GARY D.
COHN,

        Defendants.

Civil Action No.  1:10 CIV 3461

(caption continued on subsequent pages)

# MEMORANDUM OF LAW IN SUPPORT OF THE MOTION OF
# THE INSTITUTIONAL INVESTOR GROUP FOR (1) CONSOLIDATION; (2) APPOINTMENT AS LEAD PLAINTIFF; AND (3) APPROVAL OF LEAD PLAINTIFF'S CHOICE OF CO-LEAD COUNSEL

HOWARD SORKIN, Individually and on Behalf
of All Others Similarly Situated,

          Plaintiffs,

      v.

GOLDMAN SACHS GROUP, INC., LLOYD C.
BLANKFEIN, DAVID A. VINIAR and GARY D.
COHN,

          Defendants.

Civil Action No.  1:10 CIV 3493

---

DR. EHSAN AFSHANI, On Behalf of Himself and
All Others Similarly Situated,

          Plaintiffs,

      v.

GOLDMAN SACHS GROUP, INC., LLOYD C.
BLANKFEIN, DAVID A. VINIAR and GARY D.
COHN,

          Defendants.

Civil Action No. 1:10 CIV 3616

LOUIS GOLD, Individually and on Behalf of All Others Similarly Situated,

        Plaintiffs,

     v.

GOLDMAN SACHS GROUP, INC., LLOYD C. BLANKFEIN, DAVID A. VINIAR and GARY D. COHN,

        Defendants.

No. 1:10 CV 4786

THOMAS DRAFT, Individually and on Behalf of All Others Similarly Situated,

        Plaintiffs,

     v.

GOLDMAN SACHS GROUP, INC., LLOYD C. BLANKFEIN, DAVID A. VINIAR, GARY D. COHN and SARAH E. SMITH,

        Defendants.

No. 1:10 CV 4812

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ....................................................................................................... ii

INTRODUCTION ................................................................................................................. 1

SUMMARY OF THE PENDING ACTIONS ............................................................................... 3

ARGUMENT ......................................................................................................................... 6

      1.      The Institutional Investor Group Should Be Appointed Lead Plaintiff .................. 6

            a.      The Institutional Investor Group Has the Largest Financial Interest in the Relief Sought ....................................................................... 7

      2.      The Institutional Investor Group Is Qualified Under Rule 23 ................................. 8

            a.      The Institutional Investor Group's Claims Are Typical of the Claims of the Class ...................................................................... 9

            b.      The Institutional Investor Group Will Fairly and Adequately Represent the Interests of the Class ........................................... 9

      3.      This Court Should Approve the Institutional Investor Group's Choice of Co-Lead Counsel .............................................................................................. 11

      4.      This Court Should Consolidate the Related Actions ............................................. 13

CONCLUSION .................................................................................................................... 14

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Albert Fadem Trust v. Citigroup Inc.*,
    239 F. Supp. 2d 344 (S.D.N.Y. 2002)..............................................................8

*City of Brockton Ret. Sys. v. Shaw Group, Inc.*,
    No. 06-cv-8245(CM)(MHD), 2007 WL 2845125 (S.D.N.Y. Sept. 26, 2007) ..........8

*Constance Sczesny Trust v. KPMG LLP*,
    223 F.R.D. 319 (S.D.N.Y. 2004) ......................................................................10

*Ferrari v. Impath, Inc.*,
    No. 03 Civ. 5667 (DAB), 2004 WL 1637053 (S.D.N.Y. July 20, 2004) ...........3, 10

*Glauser v. EVCI Ctr. Colls. Holding Corp.*,
    236 F.R.D. 184 (S.D.N.Y. 2006) ...................................................................12, 13

*In re Cendant Corp. Litig.*,
    264 F.3d 201 (3d Cir. 2001).............................................................................10

*In re Comverse Tech., Inc. Sec. Litig.*,
    No. 06-CV-1825(NGG)(RER), 2007 WL 680779 (E.D.N.Y. Mar. 2, 2007) ...........7

*In re McDermott Int'l, Inc. Sec. Litig.*,
    No. 08 Civ. 9943 (DC), 2009 WL 579502 (S.D.N.Y. Mar. 6, 2009) .....................7

*In re Olsten Corp. Sec. Litig.*,
    3 F. Supp. 2d 286 (E.D.N.Y. 1998) ...................................................................8

*Juliar v. Sunopta, Inc.*,
    No. 08 Civ. 933 (PAC), 2009 WL 1955237 (S.D.N.Y. Jan. 30, 2009) ...............7, 8

*Kaplan v. Gelfond*,
    240 F.R.D. 88 (S.D.N.Y. 2007) ......................................................................8, 13

*Police and Fire Ret. Sys. of the City of Detroit v. SafeNet, Inc.*,
    No. 06-CV-5797 (PAC), 2007 U.S. Dist. LEXIS 97959 (S.D.N.Y. Feb. 21, 2007) ...........8

*Reimer v. Ambac Fin. Group, Inc.*,
    No. 08 Civ. 411 (NRB), 2008 WL 2073931 (S.D.N.Y. May 9, 2008)...................8

*Weltz v. Lee*,
    199 F.R.D. 129 (S.D.N.Y. 2001) .......................................................................14

*Xianglin Shi v. Sina Corp.*,
   No. 05 Civ. 2154 (NRB), 2005 WL 1561438 (S.D.N.Y. July 1, 2005)..............................9, 10


**STATUTES**

15 U.S.C. § 77z-1(a)(3)(B)(v)..........................................................................................11

15 U.S.C. § 78j(b) ...............................................................................................................1

15 U.S.C. § 78t(a) ...............................................................................................................1

15 U.S.C. § 78u-4 ...................................................................................................... *passim*


**OTHER AUTHORITIES**

Fed. R. Civ. P. 23.................................................................................................... *passim*

Fed. R. Civ. P. 42(a) ......................................................................................................1, 13

H.R. Conf. Rep. No. 104-369 (1995), at *35, *reprinted* in 1995 U.S.C.C.A.N. 730, 734
   (1995)..............................................................................................................................11

The Montana Board of Investments ("Montana BoI"), Metzler Investment GmbH ("Metzler"), and Sampension KP Livsforsikring A/S ("Sampension") (collectively, the "Institutional Investor Group"), respectfully submit this memorandum in support of their motion (i) to be appointed Lead Plaintiff pursuant to Section 21D(a)(3)(B) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78u-4(a)(3)(B), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), (ii) for approval of their selection of the law firms of Bernstein Litowitz Berger & Grossmann LLP ("Bernstein Litowitz") and Grant & Eisenhofer P.A. ("Grant & Eisenhofer") as Lead Counsel for the Class, and (iii) for consolidation of all related securities class actions pursuant to Fed. R. Civ. P. 42(a) (the "Related Actions").

## INTRODUCTION

Presently pending in this District are at least five actions brought pursuant to Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b), 78t(a)), and Securities and Exchange Commission ("SEC") Rule 10b-5 promulgated thereunder (17 C.F.R. § 240.10b-5) that allege violations of the federal securities laws by The Goldman Sachs Group, Inc. ("Goldman" or the "Company"), its Chairman and Chief Executive Officer, Lloyd Blankfein; its Chief Financial Officer, David Viniar; its President and Chief Operating Officer, Gary D. Cohn; and its Controller and Chief Accounting Officer, Sarah E. Smith (collectively, "Defendants"). During the period from December 14, 2006 through June 9, 2010 (the "Class Period"), Defendants misled investors concerning the Company's commitment to its clients, its procedures for risk management, and its financial results, including the profits Goldman earned by shorting the housing market and selling its clients investments that were designed to fail. Goldman's misconduct in structuring and marketing toxic securities drew the attention of the SEC, which

served the Company with a Wells Notice in July 2009 – a fact that was concealed from investors until the filing of the SEC action on April 16, 2010. The price of Goldman stock plummeted in response to a series of disclosures about the Defendants' misconduct, causing the Class to incur billions of dollars of losses.

Pursuant to the PSLRA, this Court must appoint the "most adequate plaintiff" to serve as Lead Plaintiff in the Related Actions. 15 U.S.C. § 78u-4(a)(3)(B)(i). In so doing, the Court must consider which movant or movants have the "largest financial interest" in the relief sought by the Class and whether there has been a *prima facie* showing that the movant is an adequate and typical class representative under Rule 23 of the Federal Rules of Civil Procedure (the "Federal Rules"). 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

The Institutional Investor Group respectfully submits that it is the "most adequate plaintiff," as defined by the PSLRA, because it has the largest financial interest in the relief sought in the Related Actions and otherwise satisfies the requirements of Rule 23 of the Federal Rules. As a result of Defendants' misconduct, the Institutional Investor Group suffered losses of approximately $14,272,947.75 on a first-in, first-out ("FIFO") basis and $13,406,639.60 on a last-in, first-out ("LIFO") basis.[1] By virtue of its substantial investment and losses in Goldman stock during the Class Period, the Institutional Investor Group believes that it has the largest financial interest in the relief sought in the Related Actions. The Institutional Investor Group also satisfies the adequacy and typicality requirements of Rule 23 of the Federal Rules, and fully understands the duties and responsibilities of a Court-appointed Lead Plaintiff under the PSLRA.

---

[1] As required by the PSLRA, the members of the Institutional Investor Group provided Certifications that, among other things, list their respective transactions in Goldman common stock during the Class Period. *See* Exhibit A of accompanying Declaration of Gerald H. Silk, dated June 25, 2010 (hereinafter "Silk Decl. Ex. ___"). A chart of the Institutional Investor Group's losses in Goldman stock during the Class Period is attached as Exhibit B to the Silk Decl.

Accordingly, the Institutional Investor Group is presumptively the "most adequate plaintiff" as defined by the PSLRA and should be appointed Lead Plaintiff on behalf of the Class.

Moreover, the Institutional Investor Group is entirely comprised of sophisticated institutional investors experienced in conducting and supervising counsel in complex securities litigation, and is therefore the paradigmatic Lead Plaintiffs envisioned by the PSLRA.  *See Ferrari v. Impath, Inc.*, No. 03 Civ. 5667 (DAB), 2004 WL 1637053, at *3 (S.D.N.Y. July 20, 2004) (stating that institutional investors are the type of lead plaintiff that Congress wanted to encourage to participate in litigation and in the selection of plaintiff's counsel).  Lastly, the Institutional Investor Group selected Bernstein Litowitz and Grant & Eisenhofer, two highly qualified law firms with substantial experience in prosecuting securities class actions, to serve as Co-Lead Counsel for the Class.

Accordingly, and for the reasons set forth in detail below, the Institutional Investor Group should be appointed Lead Plaintiff, its selection of Bernstein Litowitz and Grant & Eisenhofer as Co-Lead Counsel for the Class should be approved, and the Related Actions should be consolidated.

## SUMMARY OF THE PENDING ACTIONS

Founded in 1869, Goldman is headquartered in New York and, together with its subsidiaries, provides investment banking, securities, and investment management services to corporations, financial institutions, governments, and high-net-worth individuals worldwide. Goldman operates in three segments: Investment Banking, Trading and Principal Investments, and Asset Management and Securities Services.

Throughout the Class Period, Goldman touted to investors the client-driven nature of its business and the "expertise" and "exceptional talent" of its employees, which enabled the

Company to consistently outperform its peers and achieve a stellar reputation in the investment community.  Rather than adhere to this client-centric business model, Goldman routinely placed its own interests ahead of those of its clients by engaging in pervasive misconduct that jeopardized its good name and the loyalty of its client franchise, exposing the Company to potentially significant civil and criminal liability.  Specifically, since the beginning of 2007, Goldman structured, marketed, and sold to its clients a range of risky residential mortgage-backed securities ("RMBS") and collateralized debt obligations ("CDOs"), which the Company knew were doomed to fail.  Goldman used those CDOs and RMBS to aggressively off-load its own high-risk positions onto unsuspecting clients who were not informed by the Company of the toxic nature of those investments.  Indeed, some of the CDOs structured and sold by Goldman, such as ABACUS 2007-AC1, were purposefully designed by the Company to fail.  Thus, while clients convinced by Goldman to purchase these investments suffered steep losses, Goldman profited immensely and removed substantial mortgage-related risk exposure from its books. Goldman investors were misled by the Company's Class Period statements concerning its mortgage-related business because the Company concealed that it had a regular practice of actively structuring the toxic securities that it would later sell to unsuspecting and less sophisticated clients.

The truth began to be revealed in early September 2008 when several analysts began to lower their projections for Goldman's Fixed Income, Currency and Commodities division, which housed Goldman's mortgage department and was responsible for placing the short bets against Goldman's clients.  On September 16, 2008, Goldman issued its third quarter results, announcing its worst quarterly performance since 2005.  The Company attributed its performance, in large part, to significant difficulties in the Company's mortgage business.  This partial disclosure of

4

the Company's true condition caused Goldman stock to decline almost 20% from its previous day's closing price. Yet, this disclosure did not reveal, and Goldman continued to conceal from investors, the full extent of the Company's misconduct. On November 6, 2008, *The Wall Street Journal* published an article revealing that Goldman and other banks had been accused by certain of their clients of selling investments without fully disclosing the risks related to those investments. Following this partial revelation of the truth, which the Company vigorously denied, Goldman stock declined $6.71 per share, or over 7.6%. Shortly thereafter, on November 19, 2008, *The Wall Street Journal* published a second article expounding on Goldman's failure to fully advise its clients about the risks of certain investments, which led to a further stock drop of $6.85 per share, or over 11%. The full extent of Goldman's misconduct, however, remained hidden from investors.

On April 16, 2010, the SEC filed a complaint against Goldman's principal broker dealer, Goldman Sachs & Co., and one of its vice presidents, Fabrice Tourre, charging them with securities fraud. According to the SEC complaint, Goldman was not only betting against its clients' positions in a clear conflict of interest, it knowingly created and sold to its clients debt securities that were selected because they were likely to default so that one of Goldman's clients could reap enormous profits by betting against the performance of these securities. In response to the filing of the SEC suit, the price of Goldman stock fell 13%, from a closing price of $184.27 on April 15 to close at $160.70 on April 16.

On April 17, 2010, various news articles revealed that Goldman had been warned, but failed to disclose to its investors, that nine months prior to the SEC's filing of the complaint "investigators wanted to bring a case" against the Company. The price of Goldman stock continued to decline in the wake of the April 27, 2010 Congressional hearings focused on the

5

Company's deception of its clients, and then on the news of a criminal investigation by the U.S. Department of Justice ("DOJ"), which surfaced on April 29 and 30, 2010. On June 10, 2010, *Bloomberg* and *Financial Times* reported that the SEC was now probing Goldman's conduct with respect to another CDO that Goldman designed to fail. In response to these reports, Goldman stock fell $3.03 per share, or 2.2%.

The first of the Related Actions was filed on April 26, 2010 by shareholder Ilene Richman, and was assigned to this Court. *Richman v. Goldman Sachs Group, Inc. et al*, No. 10-cv-3461. On April 26, 2010, Ms. Richman published notice of the pendency of her action on *Business Wire*, which provided a June 25, 2010 deadline to seek appointment as Lead Plaintiff. Silk Decl., Ex. C. The Institutional Investor Group now timely moves this Court to be appointed as the Lead Plaintiff for the Related Actions.

## ARGUMENT

### 1.  The Institutional Investor Group Should Be Appointed Lead Plaintiff

The Institutional Investor Group respectfully submits that it should be appointed Lead Plaintiff because it is the movant "most capable of adequately representing the interests of class members." 15 U.S.C. § 78u-4(a)(3)(B)(i). The PSLRA sets forth the procedure for selecting the lead plaintiff in class actions arising under the securities laws and provides a presumption favoring the plaintiff with the largest financial interest in the action. Under the PSLRA, the Court "shall" adopt a presumption that the most adequate plaintiff is "the person or group of persons that…(bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

6

a.    **The Institutional Investor Group Has the Largest Financial Interest in the Relief Sought**

The Institutional Investor Group believes that it has the largest financial interest of any movant in this action and should therefore be appointed Lead Plaintiff. 15 U.S.C. § 78u-4(a)(3)(B)(iii). As a result of Goldman's misconduct and the subsequent market correction of the price of Goldman common stock, the Institutional Investor Group sustained losses of $14,272,947.75 on a FIFO basis and $13,406,639.60 on a LIFO basis. *See* Silk Decl. Ex. B. Courts commonly employ both the "FIFO" and "LIFO" methods for calculating financial interest for purposes of appointing Lead Plaintiff under the PSLRA. *See, e.g., In re Comverse Tech., Inc. Sec. Litig.*, No. 06-CV-1825(NGG)(RER), 2007 WL 680779, at *7 n.10 (E.D.N.Y. Mar. 2, 2007) (noting that "Courts have recognized two potential accounting methods when assessing gains/losses that result from the purchase and sale of securities" and identifying FIFO and LIFO as those methods).[2] In light of its extremely large financial interest, the Institutional Investor Group is entitled to the statutory presumption as the most adequate plaintiff and should be appointed Lead Plaintiff in this case.

The appointment of a group of class members as Lead Plaintiff is appropriate under the PSLRA, as courts in this District have recognized. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I); *see, e.g., In re McDermott Int'l, Inc. Sec. Litig.*, No. 08 Civ 9943 (DC), 2009 WL 579502, at *2 (S.D.N.Y. Mar. 6, 2009) (Chin, J.) (holding that the "majority of courts, including those in this District … permit [] unrelated investors to join together as a group seeking lead-plaintiff status … if such a grouping would best serve the class."); *Juliar v. Sunopta, Inc.*, No. 08 Civ 933

---

[2] Under the FIFO method, sales are offset against the movant's inventory of stock acquisitions, starting with the earliest and moving chronologically forward. Under the alternative LIFO method, sales are offset against the movant's inventory of stock acquisitions, starting with the latest and moving chronologically backward.

(PAC), 2009 WL 1955237, at *1 (S.D.N.Y. Jan. 30, 2009) (appointing pension fund group as lead plaintiff); *Reimer v. Ambac Fin. Group, Inc.*, No. 08 Civ. 411 (NRB), 2008 WL 2073931, at *3 (S.D.N.Y. May 9, 2008) (appointing group of pension funds lead plaintiff); *City of Brockton Ret. Sys. v. Shaw Group, Inc.*, No. 06-cv-8245(CM)(MHD), 2007 WL 2845125 (S.D.N.Y. Sept. 26, 2007); *Police and Fire Ret. Sys. of the City of Detroit v. SafeNet, Inc.*, No. 06-CV-5797 (PAC), 2007 U.S. Dist. LEXIS 97959 (S.D.N.Y. Feb. 21, 2007).   The Institutional Investor Group is comprised of a small, cohesive group of three sophisticated institutional investors with experience supervising counsel in the prosecution of complex litigation, and therefore, its members' financial interest is properly aggregated for purposes of this motion.

### 2.    The Institutional Investor Group Is Qualified Under Rule 23

The Institutional Investor Group should also be appointed Lead Plaintiff because it "otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure."  *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc); *Albert Fadem Trust v. Citigroup Inc.*, 239 F. Supp. 2d 344, 347 (S.D.N.Y. 2002); *In re Olsten Corp. Sec. Litig.*, 3 F. Supp. 2d 286, 294 (E.D.N.Y. 1998); *Sunopta,*, 2009 WL 1955237, at *1.

Of the four prerequisites to class certification, "typicality and adequacy of representation are the only provisions [of Rule 23] relevant to the determination of lead plaintiff under the PSLRA."  *Kaplan v. Gelfond*, 240 F.R.D. 88, 94 (S.D.N.Y. 2007) (Buchwald, J.) (citation omitted); *see Sunopta,* 2009 WL 1955237, at *1.  Furthermore, "at this stage of litigation, only a preliminary showing of typicality and adequacy is required."  *Id.* (citing *In re eSpeed, Inc. Sec. Litig.*, 232 F.R.D. 95, 102 (S.D.N.Y. 2005)).  As detailed below, the Institutional Investor Group unquestionably satisfies these requirements.

### a.      The Institutional Investor Group's Claims Are Typical of the Claims of the Class

The Institutional Investor Group satisfies the typicality requirements of Rule 23. Typicality can be established by showing that the claims of the proposed lead plaintiff "arise from the same conduct from which the other class members' claims and injuries arise." *Xianglin Shi v. Sina Corp.*, No. 05 Civ. 2154 (NRB), 2005 WL 1561438, at *3 (S.D.N.Y. July 1, 2005) (Buchwald, J.) (internal citation and quotation marks omitted).

Here, the Institutional Investor Group claims are typical of the claims of the members of the proposed class, who also purchased or otherwise acquired Goldman common stock at artificially inflated prices during the Class Period and suffered damages after the subsequent market correction.  In sum, the Institutional Investor Group satisfies the typicality requirement because, just like all other class members, it: (1) purchased or otherwise acquired Goldman common stock during the applicable period; (2) at prices allegedly artificially inflated by Defendants' materially false and misleading statements and/or omissions; and (3) suffered damages when the truth about the Company was subsequently disclosed.  *See Xianglin Shi*, 2005 WL 1561438, at *3 (finding typicality where movant "executed stock trades during the proposed class period at prices alleged to have been affected by the alleged conduct of the defendants" because "[t]hese claims are similar in substance to the allegations of the other class members, who claim similar injuries.").  The Institutional Investor Group and all class members therefore have identical, non-competing and non-conflicting interests in establishing Defendants' liability.

### b.      The Institutional Investor Group Will Fairly and Adequately Represent the Interests of the Class

Rule 23(a)(4) requires that the representative party will "fairly and adequately protect the interests of the Class."  The PSLRA directs the Court to limit its inquiry regarding adequacy to:

(1) whether there are any conflicts between the interests of the movant and the members of the class; (2) whether the movant is an adequate representative of the class; (3) whether the interests of the movant are aligned with the members of the class; and (4) whether there is evidence of any antagonism between the interests of the movant and the class.    15 U.S.C. § 78u 4(a)(3)(B) (iii)(I)(cc).  Adequate representation will be found if the representative is represented by able and experienced counsel, and the representative has no fundamental conflicts of interest with the interests of the class as a whole.  *See Constance Sczesny Trust v. KPMG LLP*, 223 F.R.D. 319, 324 (S.D.N.Y. 2004).

As sophisticated institutional investors, the members of the Institutional Investor Group are not merely adequate, they are the paradigmatic investors that Congress wanted to lead securities class actions. *See Xianglin Shi*, 2005 WL 1561438, at *5 ("Because the size and experience of institutional investors can be of significant assistance to the prosecution of the action, a number of courts 'have understood [the PSLRA] to favor large institutional investors' as lead plaintiff.'") (citation omitted); *Ferrari*, 2004 WL 1637053, at *3 (stating that institutional investors are the type of lead plaintiff that Congress wanted to encourage to participate in securities litigation and to exercise control over the selection and actions of plaintiff's counsel); *see also In re Cendant Corp. Litig.*, 264 F.3d 201, 264 (3d Cir. 2001) (noting that the legislative intent of the PSLRA is to encourage large institutional investors to serve as lead plaintiff).

Having suffered a significant $14,272,947.75 FIFO loss and a $13,406,639.60 LIFO loss as a result of the misconduct at Goldman, the Institutional Investor Group has a significant financial interest in the litigation and can be counted on to vigorously pursue recovery for the Class from all culpable parties.  As such, the interests of the Institutional Investor Group are perfectly aligned with those of the Class, and there is no evidence of any antagonism between the

10

Institutional Investor Group and the Class.  In addition, members of the Institutional Investor Group have experience serving as Lead Plaintiff under the PSLRA and understand the importance of having an engaged Lead Plaintiff monitor the litigation and supervise counsel. The Institutional Investor Group has further demonstrated its adequacy by retaining highly experienced counsel, timely seeking appointment as Lead Plaintiff, and submitting Certifications reflecting its understanding of the obligations owed by the Lead Plaintiff to the Class.  *See* Silk Decl. Ex. A.  Thus, the Institutional Investor Group has the requisite experience and expertise to vigorously represent the Class in leading this action, and has satisfied the adequacy requirement of Rule 23 of the Federal Rules.

### 3. This Court Should Approve the Institutional Investor Group's Choice of Co-Lead Counsel

The PSLRA vests authority in the Lead Plaintiff to select and retain lead counsel, subject to the Court's approval.  *See* 15 U.S.C. § 77z-1(a)(3)(B)(v); 15 U.S.C. § 78u-4(a)(3)(B)(v). Courts should not disturb the lead plaintiff's choice of counsel unless necessary to "protect the interests of the plaintiff class."  H.R. Conf. Rep. No. 104-369 (1995), at *35, *reprinted* in 1995 U.S.C.C.A.N. 730, 734 (1995).  The Institutional Investor Group has retained highly-qualified counsel to serve as Lead Counsel for the Class.

Bernstein Litowitz and Grant & Eisenhofer are among the preeminent securities class action law firms in the country, having been appointed sole or co-lead counsel in numerous complex securities class actions in this District and around the country.  *See, e.g.*, Bernstein Litowitz's Firm Biography attached as Exhibit D to the Silk Decl.; Grant & Eisenhofer's Firm Biography attached as Exhibit E to the Silk Decl.

11

Bernstein Litowitz served as co-lead counsel in *In re WorldCom, Inc. Securities Litigation* (S.D.N.Y.), in which settlements totaling in excess of $6 billion – one of the largest recoveries in securities class action history – were obtained for the class. Other examples in which courts have recognized Bernstein Litowitz as adequate and qualified class counsel in securities class actions include *In re Nortel Networks Corp. Securities Litigation*, No. 05-MD-1659 (LAP) (S.D.N.Y.), *Glauser v. EVCI Ctr. Colls. Holding Corp.*, 236 F.R.D. 184, 190 (S.D.N.Y. 2006) (appointing Bernstein Litowitz as lead counsel and noting that "Bernstein Litowitz is a highly competent and respected law firm, specializing in securities class actions."), *In re Bristol-Myers Squibb Co. Securities Litigation*, 07-cv-5867 (PAC) (S.D.N.Y.); and *Police and Fire Retirement System of the City of Detroit v. SafeNet, Inc.*, 06-CV-5797 (PAC) (S.D.N.Y. 2007).

Grant & Eisenhofer has been lead counsel in several of the largest securities class actions in history, including *In re Tyco International Ltd. Securities Litigation*, MDL No. 02-1335-B, in which a $2.975 billion settlement was achieved on behalf of the class; and *In re Global Crossing, Ltd. Securities & "ERISA" Litigation*, 02 Civ. 910 (S.D.N.Y.), where settlements exceeded $345 million. Most recently, Grant & Eisenhofer resolved securities litigation pending against Marsh & McLennan for $400 million. Grant & Eisenhofer also has experience taking securities class actions to trial, having served as sole lead counsel in *In re Safety-Kleen Bondholders Litigation*, No. 00-CV-1145-17 (D.S.C.), which went to a jury trial and ended in judgments as a matter of law against two of the company's executives for nearly $200 million, and settlements with the remaining defendants shortly before closing arguments.

Not only are Grant & Eisenhofer and Bernstein Litowitz each well-qualified and experienced law firms in their own right, but they have a successful track record of working

together cooperatively as co-lead counsel.  The firms are presently serving as co-lead counsel in the Refco securities class action, in which over $140 million in settlements have been achieved to date and which continues to be actively prosecuted against numerous defendants.  *In re Refco, Inc. Securities Litigation*, No. 05-CV-8626 (JSR) (S.D.N.Y.).  The firms have also achieved successful resolutions of numerous shareholder suits in the Delaware Court of Chancery where they have served as co-lead counsel.  Accordingly, the Court should approve the Institutional Investor Group's selection of Grant & Eisenhofer and Bernstein Litowitz as Co-Lead Counsel for the Class.

    **4.**    **This Court Should Consolidate the Related Actions**

Presently pending in this District are at least five related securities class actions brought pursuant to Sections 10(b) and 20(a) of the Exchange Act, and Rule 10b-5 promulgated thereunder.  The Related Actions are as follows:

| Case | Civil No. | Date Filed |
|------|-----------|------------|
| *Richman v. Goldman Sachs Group, Inc., et al* | 10-CV-3461 | April 20, 2010 |
| *Sorkin v. Goldman Sachs Group, Inc., et al* | 10-CV-3493 | April 26, 2010 |
| *Afshani v. Goldman Sachs Group, Inc., et al* | 10-CV-3616 | April 30, 2010 |
| *Gold v. Goldman Sachs Group, Inc., et al* | 10-CV-4786 | June 18, 2010 |
| *Draft v. Goldman Sachs Group, Inc., et al* | 10-CV-4812 | June 21, 2010 |

These actions present virtually identical factual and legal issues, as they all arise out of the same alleged misstatements and omissions regarding Goldman's finances and business operations.  Accordingly, consolidation is appropriate under Rule 42(a) of the Federal Rules.  *See, e.g., Glauser,* 236 F.R.D. at 186 ("[T]his Court has recognized that consolidation is

13

particularly appropriate in the context of securities class actions if the complaints are based on the same public statements and reports.") (internal quotation marks omitted); *Kaplan*, 240 F.R.D. at 92 (ordering consolidation where actions contained overlapping factual allegations that "defendants' statements to the investing public misrepresented or omitted to state material facts about the financial status of [the defendants]"); *Weltz v. Lee*, 199 F.R.D. 129, 131 (S.D.N.Y. 2001) ("In securities actions where the complaints are based on the same 'public statements and reports,' consolidation is appropriate if there are common questions of law and fact and the defendants will not be prejudiced.") (internal citation omitted).

## CONCLUSION

For the above reasons, the Institutional Investor Group respectfully requests that the Court: (1) consolidate the Related Actions; (2) appoint the Institutional Investor Group as the Lead Plaintiff in the Related Actions; and (3) approve its choice of Co Lead Counsel for the Class.

Dated: June 25, 2010
     New York, New York

                                       Respectfully submitted,

                                       **BERNSTEIN LITOWITZ BERGER**
                                          **& GROSSMANN LLP**

                                       By:   /s/ Gerald H. Silk
                                            Gerald H. Silk (GS-4565)
                                          Avi Josefson (AJ-3532)
                                          Laurence J. Hasson (LH-5834)
                                     1285 Avenue of the Americas
                                   New York, NY 10019
                                   Telephone: (212) 554 1400
                                   Facsimile:  (212) 554 1444

**BERNSTEIN LITOWITZ BERGER
    & GROSSMANN LLP**
Blair A. Nicholas
12481 High Bluff Drive
Suite 300
San Diego, CA 92130
Telephone: (858) 793-0070
Facsimile:  (858) 793-0323

*Counsel for the Institutional Investor Group
and Proposed Co-Lead Counsel for the Class*

**GRANT & EISENHOFER P.A.**
Jay W. Eisenhofer
Geoffrey C. Jarvis
Hung G. Ta
485 Lexington Ave 29th Floor
New York, New York 10017
Tel: (646) 722-8500
Fax:  (646) 722-8501

*Counsel for the Institutional Investor Group
and Proposed Co-Lead Counsel for the Class*

15

**BARRACK, RODOS & BACINE**
Leonard Barrack
Daniel E. Bacine
M. Richard Komins
Two Commerce Square
2001 Market Street
Suite 3300
Philadelphia, PA 19103
Telephone: ((215) 963-0600
Facsimile:   (212) 963-0838

**BARRACK, RODOS & BACINE**
A.  Arnold Gershon
William J. Ban
1350 Broadway
Suite 1001
New York, NY 10018
Telephone: (212) 688-0782
Facsimile: (212) 688-0783
*Additional Counsel for Montana Board of Investments*

**BARROWAY TOPAZ KESSLER**
   **MELTZER & CHECK, LLP**
Sean M. Handler
280 King of Prussia Road
Radnor, PA 19087
Telephone: (610) 667-7706
Facsimile: (610) 667-7056

*Additional Counsel for Sampension KP Livsforsikring A/S*

16