UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ILENE RICHMAN, Individually and on Behalf of All Others Similarly Situated,<br><br>                    Plaintiff,<br><br>    vs.<br><br>GOLDMAN SACHS GROUP, INC., et al.,<br><br>                    Defendants. | Civil Action No. 1:10-cv-03461-PAC<br><br>Hon. Paul A. Crotty<br><br>ECF Case |
| HOWARD SORKIN, Individually and on Behalf of All Others Similarly Situated,<br><br>                    Plaintiff,<br><br>    vs.<br><br>GOLDMAN SACHS GROUP, INC., et al.,<br><br>                    Defendants. | Civil Action No. 1:10-cv-03493-PAC<br><br>Hon. Paul A. Crotty<br><br>ECF Case |

[Caption continued on following page]

**MEMORANDUM OF LAW IN SUPPORT OF THE PENSION FUNDS'
MOTION FOR CONSOLIDATION, APPOINTMENT AS LEAD PLAINTIFF,
<u>AND APPROVAL OF LEAD PLAINTIFF'S SELECTION OF LEAD COUNSEL</u>**

| | |
|---|---|
| TIKVA BOCHNER, On Behalf of Herself and All Others Similarly Situated,<br><br>      Plaintiff,<br><br> vs.<br><br>GOLDMAN SACHS GROUP, INC., et al.,<br><br>      Defendants. | Civil Action No. 1:10-cv-03595-PAC<br><br>Hon. Paul A. Crotty<br><br>ECF Case |
| DR. EHSAN AFSHANI, On Behalf of Himself and All Others Similarly Situated,<br><br>      Plaintiff,<br><br> vs.<br><br>GOLDMAN SACHS GROUP, INC., et al.,<br><br>      Defendants. | Civil Action No. 1:10-cv-03616-PAC<br><br>Hon. Paul A. Crotty<br><br>ECF Case |
| LOUIS GOLD, Individually and on Behalf of All Others Similarly Situated,<br><br>      Plaintiff,<br><br> vs.<br><br>GOLDMAN SACHS GROUP, INC., et al.,<br><br>      Defendants. | Civil Action No. 1:10-cv-04786-UA<br><br>ECF Case |
| THOMAS DRAFT, Individually and on Behalf of All Others Similarly Situated,<br><br>      Plaintiff,<br><br> vs.<br><br>THE GOLDMAN SACHS GROUP, INC., et al.,<br><br>      Defendants. | Civil Action No. 1:10-cv-04812-UA<br><br>ECF Case |

Proposed lead plaintiff Arkansas Teacher Retirement System, West Virginia Investment Management Board, and Plumbers and Pipefitters National Pension Fund (collectively, the "Pension Funds") respectfully submit this memorandum of law in support of their motion for: (1) consolidation of the related actions pursuant to Rule 42(a) of the Federal Rules of Civil Procedure; (2) appointment as lead plaintiff in the above-referenced actions pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA"); and (3) approval of their selection of Robbins Geller Rudman & Dowd LLP ("Robbins Geller") and Labaton Sucharow LLP ("Labaton Sucharow") as lead counsel for the Class.

## I.  INTRODUCTION

Presently pending in this district are six securities class action lawsuits (the "Actions") on behalf of purchasers of Goldman Sachs Group, Inc. ("Goldman" or the "Company") securities during various class periods against Goldman and certain of its officers and/or directors for violation of the Securities Exchange Act of 1934 (the "Exchange Act"):

| **Caption** | **Class Period** | **Security** | **Date Filed** |
|---|---|---|---|
| *Richman v. Goldman Sachs Group, Inc.*, No. 1:10-cv-03461-PAC | 10/15/09-04/16/10 | common stock | 04/26/10 |
| *Sorkin v. Goldman Sachs Group, Inc.*, No. 1:10-cv-03493-PAC | 10/15/09-04/16/10 | common stock | 04/26/10 |
| *Bochner v. Goldman Sachs Group, Inc.*, No. 1:10-cv-03595-PAC | 08/05/09-04/16/10 | call/put options | 04/30/10 |
| *Afshani v. Goldman Sachs Group, Inc.*, No. 1:10-cv-03616-PAC | 01/02/07-04/16/10 | common stock | 04/30/10 |
| *Gold v. Goldman Sachs Group, Inc.*, No. 1:10-cv-04786-UA | 12/14/06-06/09/10 | common stock | 06/18/10 |
| *Draft v. Goldman Sachs Group, Inc.*, No. 1:10-cv-04812-UA | 02/06/07-04/30/10 | common stock | 06/21/10 |

In securities class actions, the PSLRA requires district courts to resolve consolidation prior to appointing a lead plaintiff. *See* 15 U.S.C. § 78u-4(a)(3)(B)(ii). Here, the Actions should

be consolidated because they each involve substantially similar issues of law and fact. *See* Fed. R. Civ. P. 42(a); *infra* § III.A.

As soon as practicable after its decision on consolidation, the Court "shall appoint the most adequate plaintiff as lead plaintiff for the consolidated actions." *See* 15 U.S.C. § 78u-4(a)(3)(B)(ii). The lead plaintiff is the "member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members . . . ." 15 U.S.C. § 78u-4(a)(3)(B)(i). The Pension Funds should be appointed as lead plaintiff because they: (1) timely filed this motion; (2) have the largest financial interest in the relief sought by the Class, to their counsel's knowledge; and (3) will fairly and adequately represent the interests of the Class. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). In addition, the Pension Funds' selection of Robbins Geller and Labaton Sucharow as lead counsel for the class should be approved. *See* 15 U.S.C. § 78u-4(a)(3)(B)(v).

## II.   FACTUAL BACKGROUND

Defendant Goldman is a financial holding company that provides global banking, securities, and investment management services in the United States and internationally. Goldman, Sachs & Co. ("GS&C"), Goldman's principal broker-dealer in the United States, is headquartered in New York, New York. The Individual Defendants are Lloyd C. Blankfein, David A. Viniar, Gary D. Cohn, and Sarah E. Smith.

During the Class Period, Defendants issued materially false and misleading statements with respect to events surrounding GS&C's sale of a collateralized debt obligation ("CDO") security named ABACUS 2007-AC1 in early 2007. Defendants omitted and/or misrepresented material facts concerning Goldman's participation in structuring the CDO to help one client, who would short the CDO, while simultaneously selling the CDO to another client. In or around July

2009, Goldman received a Wells Notice from the SEC relating to the ABACUS 2007-AC1 transaction. Even as it responded to the SEC in the fall of 2009, Goldman continued to conceal from investors that it had received such a notice and was being investigated by the SEC in connection with events and practices surrounding ABACUS 2007-AC1.

In October 2009, Goldman reported a 190 percent increase in year-over-year quarterly earnings. At about the same time, it came under intense scrutiny about the more than $16 billion in bonuses it was scheduled to pay to Goldman's executives and employees. To combat this negative publicity, the Company made a concerted effort to affect public opinion, instigating a full-fledged media campaign that included many interviews with several Goldman executives discussing the Company's responsible business practices and its $200 million donation to promote education. However, throughout 2009, Goldman continued to conceal that it had received a Wells Notice concerning ABACUS 2007-AC1 and issues relating to its practices in the mortgage markets.

On December 24, 2009, *The New York Times* published an article discussing the ABACUS 2007-AC1 transaction, noting that Goldman employees "were aggressive from the start in trying to make the assets in Abacus deals look better than they were" and "structured some Abacus deals in a way that enabled those betting on a mortgage-market collapse to multiply the value of their bets . . . [leading to] bigger profits for Goldman and other short sellers – and bigger losses for other investors." Rather than acknowledge its conduct relating to the ABACUS transaction *or* that it had received a Wells Notice related thereto and was the subject of an SEC investigation, Defendants claimed that Goldman's clients were well aware of many of the questionable aspects of the ABACUS 2007-AC1 transaction and that the creation of the ABACUS CDO was driven by client demand. As a result of Defendants' false statements,

Goldman stock traded at artificially inflated prices during the Class Period, reaching a high of $188.63 per share on October 15, 2009, and rebounding to $184.92 per share on April 14, 2010.

After the market opened on April 16, 2010, it was revealed that Goldman's U.S. broker-dealer, GS&C, had been sued by the SEC "for making materially misleading statements and omissions in connection" with ABACUS 2007-AC1. As news of Goldman's misconduct reached the market, Goldman stock immediately fell $23.57, declining from $184.27 per share on April 15, 2010, to close at $160.70 per share on April 16, 2010, or 12.79 percent.

On April 30, 2010, the Department of Justice opened a criminal investigation into possible securities fraud in mortgage trading at Goldman. The Federal Bureau of Investigations and the U.S. Attorney's office in the Southern District of New York are conducting the criminal probe. As a result of the news about the criminal investigation into Goldman, the Company's stock dropped $15.04, from $164.27 to $145.20, on April 30, 2010, or 9.38 percent.

On June 9, 2010, it was reported that the SEC was investigating a second Goldman CDO called Hudson Mezzanine 2006-1. In reaction to all of these revelations, Goldman's stock has declined significantly, inflicting heavy losses on the class.

III. ARGUMENT

A. The Actions Should Be Consolidated for All Purposes

"If actions before the court involve a common question of law or fact the court may . . . consolidate the actions . . . ." Fed. R. Civ. P. 42(a). Here, all of the Actions assert Exchange Act claims on behalf of purchasers of Goldman common stock and/or call options and sellers of put options during similar class periods.[1] Each of the Actions name the Company and certain of its

---

[1] "[N]either the fact that [six] actions' factual allegations are not identical nor that the actions have slightly differing class periods is enough to defeat consolidation." *Linn v. Allied Irish*

officers and/or directors as Defendants and involve similar factual and legal issues, namely, whether Plaintiffs purchased various Goldman securities at artificially inflated prices as a result of Defendants' allegedly false and misleading statements, and whether Defendants' conduct violates the Exchange Act. Thus, the Actions should be consolidated. *See Johnson v. Celotex Corp.*, 899 F.2d 1281, 1285 (2d Cir. 1990) ("In the exercise of discretion, courts have taken the view that considerations of judicial economy favor consolidation.").

### B. The Pension Funds Should Be Appointed as Lead Plaintiff

The PSLRA establishes the procedure for the appointment of a lead plaintiff in "each private action arising under [the Exchange Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure." 15 U.S.C. § 78u-4(a)(1); *see also* 15 U.S.C. § 78u-4(a)(3)(B)(i). First, the pendency of the action must be publicized in a widely-circulated, national, business-oriented publication or wire service not later than 20 days after filing of the first complaint. 15 U.S.C. § 78u-4(a)(3)(A)(i). Next, the PSLRA provides that the Court shall adopt a presumption that the most adequate plaintiff is the person or group of persons that –

   (aa) has either filed the complaint or made a motion in response to a notice . . .;

   (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and

   (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). The Pension Funds meet each of these requirements and should therefore be appointed as lead plaintiff.

---

*Banks, PLC*, 02-cv-1738, 2004 U.S. Dist. LEXIS 24655, at *7 (S.D.N.Y. Dec. 7, 2004) (Batts, J.).

### 1.     **This Motion Is Timely**

The notice published in this Action on April 26, 2010 advised Class members of: (1) the pendency of the action; (2) the claims asserted therein; (3) the proposed Class Period; and (4) the right to move the Court to be appointed as lead plaintiff within 60 days from April 26, 2010, or June 25, 2010.  *See* Decl. of Stefanie J. Sundel in Supp. of the Pension Funds' Mot. for Consol., App't as Lead Pl. & Approval of Lead Pl.'s Selection of Lead Counsel ("Sundel Decl."), Ex. A. This Motion is therefore timely filed and the Pension Funds are entitled to be considered for appointment as lead plaintiff.

### 2.     **The Pension Funds Have the Largest Financial Interest in the Relief Sought by the Class**

During the Class Period, the Pension Funds purchased substantial amounts of Goldman securities and lost in excess of $18.5 million due to Defendants' misconduct.  *See* Sundel Decl., Exs. B, C.[2]  To the best of their counsels' knowledge, there are no other applicants seeking appointment as lead plaintiff with a larger financial interest.  Therefore, the Pension Funds satisfy the PSLRA's prerequisite of having the largest financial interest.

### 3.     **The Pension Funds Otherwise Satisfy Rule 23 of the Federal Rules of Civil Procedure**

In addition to possessing a significant financial interest, a lead plaintiff must also "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc).  "The Rule 23 inquiry under 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc) is less stringent than the inquiry the rule otherwise requires." *Linn*, 2004 U.S. Dist.

---

[2]  During the Class Period, the Pension Funds suffered more than $18.5 million in losses calculated pursuant to the first-in, first-out methodology, suffered more than $14.3 million in losses calculated pursuant to the last-in, last-out methodology, purchased more than 112,000 net shares of Goldman, and expended more than $65 million acquiring Goldman shares.  *See* Sundel Decl., Ex. C.

Case 1:10-cv-03461-PAC    Document 19    Filed 06/25/2010    Page 9 of 12

LEXIS 24655, at *13.  "At this stage in the litigation, one need only make a 'preliminary showing' that the Rule's typicality and adequacy requirements have been satisfied."  *Id*. at *13-14.

"The typicality requirement is satisfied when the claims of the proposed lead plaintiff 'arise from the same conduct from which the other class members' claims and injuries arise.'"  *Id*. at *14 (citation omitted).  The Pension Funds satisfy this requirement because, just like all other proposed Class members, they purchased Goldman securities during the Class Period in reliance upon the false and misleading statements issued by Defendants and suffered damages thereby, as did the other members of the putative Class.  *See* Sundel Decl., Ex. B; *Linn*, 2004 U.S. Dist. LEXIS 24655, at *15.  Thus, the Pension Funds' claims "arise from the same factual predicate" as those of other Class members and the Court should find that the Pension Funds "satisf[y] Rule 23's typicality requirement."  *Id.*

"The adequacy requirement is satisfied if (1) the class counsel is qualified, experienced, and generally able to conduct the litigation; (2) the interests of the class members are not antagonistic to one another; and (3) the lead plaintiff has a sufficient interest in the outcome to ensure vigorous advocacy."  *Id*. at *15-16.  The Pension Funds also satisfy the adequacy requirement.  The Pension Funds have demonstrated their ability and willingness to prosecute this action by filing their certifications as well as by retaining qualified counsel.  *See* Sundel Decl., Exs. B, C.  The Pension Funds' commitment to acting in the Class' best interests is further evidenced in the Declaration of H. Craig Slaughter.  *See* Sundel Decl., Ex. D.  The Pension Funds are not subject to unique defenses and there is no evidence that the Pension Funds "seek[] anything other than 'the greatest recovery for the class consistent with the merits of the claims.'"  *Linn*, 2004 U.S. Dist. LEXIS 24655, at *17 (citation omitted).

- 7 -

Thus, the Pension Funds satisfy the requirements of Rule 23 of the Federal Rules of Civil Procedure for the purposes of this Motion.

**C.      The Court Should Approve the Pension Funds' Selection of Counsel**

The PSLRA vests authority in the lead plaintiff to select and retain lead counsel, subject to this Court's approval. *See* 15 U.S.C. § 78u-4(a)(3)(B)(v). This Court should not disturb the lead plaintiff's choice of counsel unless it is necessary to "protect the interests of the class . . . ." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa).

The Pension Funds have selected Robbins Geller and Labaton Sucharow to serve as lead counsel. *See* Sundel Decl., Exs. E-F. Robbins Geller and Labaton Sucharow "possess extensive experience in the area of securities litigation," and "have successfully prosecuted numerous securities fraud class actions." *City of Ann Arbor Employees Ret. Sys. v. Accuray Inc.*, 09-cv-3362, 2009 U.S. Dist. LEXIS 105466, at *10 (N.D. Cal. Oct. 26, 2009). Robbins Geller has substantial experience in the prosecution of shareholder and securities class actions, including serving as lead counsel in *In re Enron Corp. Securities Litigation*, No. H-01-3624 (S.D. Tex. Dec), in which Robbins Geller obtained the largest recovery ever obtained in a shareholder class action. *See* Sundel Decl., Ex. E. Specifically, the court in *Enron* stated: "The firm is comprised of probably the most prominent securities class action attorneys in the country. It is not surprising that Defendants have not argued that counsel is not adequate. Counsel's conduct in zealously and efficiently prosecuting this litigation with commitment of substantial resources to that goal evidences those qualities . . . ." *Enron*, 529 F. Supp. 2d 644, 675 (S.D. Tex. 2006)

Labaton Sucharow has served as lead counsel in numerous important actions on behalf of defrauded investors. Labaton Sucharow is lead counsel in *In re Countrywide Financial Corp. Securities Litigation*, 07-cv-5295 (C.D. Cal.), which resulted in a settlement in principle of $624

- 9 -

million, the largest subprime-related securities class action settlement achieved to date. Labaton Sucharow served as lead counsel in the Waste Management securities litigation, which resulted in a settlement of $457 million, one of the largest common-fund securities class action settlements ever achieved at that time. *See In re Waste Mgmt., Inc. Sec. Litig.*, 128 F. Supp. 2d 401, 432 (S.D. Tex. 2000) (stating that Labaton Sucharow "ha[s] been shown to be knowledgeable about and experienced in federal securities fraud class actions"). In addition, Labaton Sucharow is currently serving as lead or co-lead counsel in the securities fraud cases against American International Group, HealthSouth, Bear Stearns, Fannie Mae, Satyam, Royal Bank of Scotland, and others. *See* Sundel Decl. Ex. F.

As such, the Court should find that Robbins Geller and Labaton Sucharow are "well qualified to serve as lead counsel in this matter." *In re Orion Sec. Litig.*, 08-cv-1328, 2008 U.S. Dist. LEXIS 55368, at *18 (S.D.N.Y. July 8, 2008). Accordingly, the Pension Funds' selection of Robbins Geller and Labaton Sucharow as lead counsel should be approved.

## IV. CONCLUSION

The six related securities fraud actions before the Court are substantially similar and should be consolidated. In addition, the Pension Funds have satisfied each of the PSLRA's requirements for appointment as lead plaintiff. As such, the Pension Funds respectfully request that the Court consolidate the Actions, appoint the Pension Funds as Lead Plaintiff, approve their selection of Lead Counsel, and grant such other relief as the Court may deem just and proper.

DATED:  June 25, 2010                          Respectfully submitted,

    /s/ Christopher J. Keller
Christopher J. Keller
Eric J. Belfi
Alan I. Ellman
Stefanie J. Sundel
**LABATON SUCHAROW LLP**
140 Broadway, 34th Floor
New York, NY  10005
Telephone: (212) 907-0700
Facsimile: (212) 818-0477
ckeller@labaton.com
ebelfi@labaton.com
aellman@labaton.com
ssundel@labaton.com

*Counsel for Arkansas Teacher Retirement System
and Proposed Lead Counsel for the Class*

Samuel H. Rudman
David A. Rosenfeld
**ROBBINS GELLER RUDMAN
  & DOWD LLP**
58 South Service Road, Suite 200
Melville, NY  11747
Telephone: (631) 367-7100
Facsimile: (631) 367-1173
srudman@rgrdlaw.com
drosenfeld@rgrdlaw.com

*Counsel for West Virginia Investment
Management Board, and Plumbers and
Pipefitters National Pension Fund,
and Proposed Lead Counsel for the Class*