UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ILENE RICHMAN, Individually and on Behalf of All Others Similarly Situated, | Civil Action No. 1:10-cv-03461-PAC |
| Plaintiff, | Hon. Paul A. Crotty |
| vs. | ECF Case |
| GOLDMAN SACHS GROUP, INC., et al., | |
| Defendants. | |
| HOWARD SORKIN, Individually and on Behalf of All Others Similarly Situated, | Civil Action No. 1:10-cv-03493-PAC |
| Plaintiff, | Hon. Paul A. Crotty |
| vs. | ECF Case |
| GOLDMAN SACHS GROUP, INC., et al., | |
| Defendants. | |
| TIKVA BOCHNER, On Behalf of Herself and All Others Similarly Situated, | Civil Action No. 1:10-cv-03595-PAC |
| Plaintiff, | Hon. Paul A. Crotty |
| vs. | ECF Case |
| GOLDMAN SACHS GROUP, INC., et al., | |
| Defendants. | |

[Caption continued on following page]

**THE PENSION FUNDS' MEMORANDUM OF LAW IN OPPOSITION TO
THE COMPETING MOTIONS FOR APPOINTMENT AS LEAD PLAINTIFF**

| | |
|---|---|
| DR. EHSAN AFSHANI, On Behalf of Himself and All Others Similarly Situated, | Civil Action No. 1:10-cv-03616-PAC |
| Plaintiff, | Hon. Paul A. Crotty |
| vs. | ECF Case |
| GOLDMAN SACHS GROUP, INC., et al., | |
| Defendants. | |
| LOUIS GOLD, Individually and on Behalf of All Others Similarly Situated, | Civil Action No. 1:10-cv-04786-PAC |
| Plaintiff, | ECF Case |
| vs. | |
| GOLDMAN SACHS GROUP, INC., et al., | |
| Defendants. | |
| THOMAS DRAFT, Individually and on Behalf of All Others Similarly Situated, | Civil Action No. 1:10-cv-04812-PAC |
| Plaintiff, | ECF Case |
| vs. | |
| THE GOLDMAN SACHS GROUP, INC., et al., | |
| Defendants. | |
| HALMAN ALDUBI GROUP, Individually and on Behalf of All Others Similarly Situated, | Civil Action No. 1:10-cv-04918-UA |
| Plaintiff, | ECF Case |
| vs. | |
| GOLDMAN SACHS GROUP, INC., et al., | |
| Defendants. | |

## **TABLE OF CONTENTS**

I.      INTRODUCTION ..................................................................................................1

II.     ARGUMENT ......................................................................................................2

        A.      The Pension Funds Have Triggered the  "Most Adequate Plaintiff"
                Presumption ..........................................................................................3

                1.      The Pension Funds Have the Largest Financial Interest.............................3

                2.      The Pension Funds Satisfy the Rule 23 Requirements ...............................6

        B.      The IIG's Members Have Significant Defects
                Precluding their Appointment as Lead Plaintiff ........................................7

                1.      The IIG's Counsel Is Materially Conflicted ..................................8

                2.      As a German Investment Manager, Metzler Is Subject to Unique
                        Standing and Res Judicata Defenses..........................................11

                        a.      Metzler Did Not Evidence its Standing .......................................11

                        b.      Metzler Is Subject to Unique Res Judicata Defenses....................15

        C.      The Individual Investors Do Not Have the Largest Financial Interest and
                There Is No Need To Splinter This Action Into Sub-classes.................................20

III.    CONCLUSION....................................................................................................22

## TABLE OF AUTHORITIES

### FEDERAL CASES

*In re Bally Total Fitness Sec. Litig.*,
  No. 04-C-3530, 2005 WL 627960 (N.D. Ill. Mar. 15, 2005) .........................................5, 6, 19

*In re Bard Assocs., Inc.*,
  No. 09-6243, 2009 WL 4350780 (10th Cir. Dec. 2, 2009).....................................................13

*In re Bausch & Lomb Inc. Sec. Litig.*,
  244 F.R.D. 169 (W.D.N.Y. 2007).........................................................................................3

*Baydale v. Am. Express Co.*,
  No. 09 civ. 3016, 2009 WL 2603140 (S.D.N.Y. Aug. 14, 2009) .....................................11, 14

*Bersch v. Drexel Firestone, Inc.*,
  519 F.2d 974 (2d Cir. 1975)..................................................................................................16

*Bhojwani v. Pistiolis*,
  No. 06 Civ. 13761 (CM), 2007 WL 2197836 (S.D.N.Y. July 31, 2007)..................................3

*Blecker v. Lazard Freres & Co.*,
  73 civ. 4057, 1974 WL 365 (S.D.N.Y. Jan. 18, 1974)............................................................9

*Borochoff v. Glaxosmithkline PLC*,
  246 F.R.D. 201 (S.D.N.Y. 2007) ................................................................................15, 16, 19

*Buettgen v. Harless*,
  263 F.R.D. 378 (N.D. Tex. 2009) ...............................................................................11, 16, 17

*In re Cardinal Health, Inc. Sec. Litig.*,
  226 F.R.D. 298 (S.D. Ohio 2005) .........................................................................................13

*In re Cavanaugh*,
  306 F.3d 726 (9th Cir. 2002) ....................................................................................2, 7, 8, 20

*In re Cendant Corp. Litig.*,
  264 F.3d 201 (3d Cir. 2001).....................................................................................2, 3, 7, 11

*In re Cont'l Sec. Litig.*,
  82 C 4712, 1984 U.S. Dist. LEXIS 17778 (N.D. Ill. 1984).....................................................10

*In re DaimlerChrysler AG Sec. Litig.*,
  216 F.R.D. 291 (D. Del. 2003) ........................................................................................17, 19

*Eichenholtz v. Verifone Holdings, Inc.*,
   07-cv-6140, 2008 WL 3925289 (N.D. Cal. Aug. 22, 2008) ...............................................11, 18

*In re eSpeed, Inc. Sec. Litig.*,
   232 F.R.D. 95 (S.D.N.Y. 2005) ...................................................................................................3

*Fishbury, Ltd. v. Connetics Corp.*,
   No. 06 Civ. 11496(SWK), 2006 WL 3711566 (S.D.N.Y. Dec. 14, 2006) ...........................21

*Freudenberg v. ETrade Fin. Corp.*,
   07 Civ. 8538, 2008 WL 2876373 (S.D.N.Y. July 16, 2008) ..................................................21

*In re Fuwei Films Sec. Litig.*,
   247 F.R.D. 432 (S.D.N.Y. 2008) .................................................................................................4

*Hawk Indus., Inc. v. Bausch & Lomb, Inc.*,
   59 F.R.D. 619 (S.D.N.Y. 1973) ............................................................................................9, 10

*Hevesi v. Citigroup Inc.*,
   366 F.3d 70 (2d Cir. 2003).........................................................................................................20

*Johnson v. Celotex Corp.*,
   899 F.2d 1281 (2d Cir. 1990).......................................................................................................1

*Kamerman v. Steinberg*,
   113 F.R.D. 511 (S.D.N.Y. 1986) .................................................................................................9

*Kaplan v. Gelfond*,
   240 F.R.D. 88 (S.D.N.Y. 2007) ...............................................................................................3, 4

*Koenig v. Benson*,
   117 F.R.D. 330 (E.D.N.Y. 1987) .................................................................................................9

*Landry v. Price Waterhouse Chartered Accountants*,
   123 F.R.D. 474 (S.D.N.Y. 1989) ...............................................................................................19

*Lax v. First Merchs. Acceptance Corp.*,
   No. 97-C-9715, 1997 WL 461036 (N.D. Ill. Aug. 11, 1997) ...............................................4-6

*Levitt v. Rogers*,
   257 Fed. App'x 450, 452 (2d Cir. 2007)......................................................................................3

*In re McKesson HBOC, Inc. Sec. Litig.*,
   97 F. Supp. 2d 993 (N.D. Cal. 1999) .........................................................................................13

*Morrison v. Nat'l Austl. Bank*,
   No. 08-1191, 2010 WL 2518523 (U.S. June 24, 2010) ........................................................18

*In re Network Assocs., Inc. Sec. Litig.*,
   76 F. Supp. 2d 1017 (N.D. Cal. 1999) ..................................................................................15

*Olsen v. N.Y. Cmty. Bancorp, Inc.*,
   233 F.R.D. 101 (E.D.N.Y. 2005) ..........................................................................................22

*In re Parmalat Sec. Litig.*,
   04 MD 1653, 2008 WL 3895539 (S.D.N.Y. Aug. 21, 2008) ................................................17

*Police & Fire Ret. Sys. of Detroit v. SafeNet, Inc.*,
   No. 06 Civ. 5797 (PAC), 2007 U.S. Dist. LEXIS 97959 (S.D.N.Y. Feb. 21, 2007) ............ 4-6

*In re Royal Ahold N.V. Sec. & ERISA Litig.*,
   219 F.R.D. 343 (D. Md. 2003) ..............................................................................................17

*Reimer v. Ambac Fin. Group, Inc.*,
   No. 08 Civ. 411(NRB), 2008 WL 2073931 (S.D.N.Y. May 9, 2008) ......................................4

*Ruggiero v. Am. Bioculture, Inc.*,
   56 F.R.D. 93 (S.D.N.Y. 1972) ................................................................................................9

*In re SLM Corp. Sec. Litig.*,
   258 F.R.D. 112 (S.D.N.Y. 2009) ..........................................................................................14

*Schlesinger v. Reservists Comm. to Stop the War*,
   418 U.S. 208 (1974) ..............................................................................................................19

*Smith v. Suprema Specialties, Inc.*,
   206 F. Supp. 2d 627 (D.N.J. 2002) ......................................................................................13

*Sofran v. LaBranche & Co.*,
   220 F.R.D. 398 (S.D.N.Y. 2004) ............................................................................................7

*Steinberg v. Ericsson LM Tel. Co.*,
   07 civ 9615, 2008 WL 1721484 (S.D.N.Y. Apr. 11, 2008) ..................................................15

*Stull v. Baker*,
   410 F. Supp. 1326 (S.D.N.Y. 1976) ....................................................................................8, 9

*In re Surebeam Corp. Sec. Litig.*,
   No. 03 CV 1721 JM(POR), 2003 WL 5159061 (S.D. Cal. Jan. 5, 2004) ..............................19

*In re Telxon Corp. Sec. Litig.*,
   67 F. Supp. 2d 803 (N.D. Ohio 1999)...................................................................14

*Varghese v. China Shenghuo Pharm. Holdings, Inc.*,
   589 F. Supp. 2d 388 (S.D.N.Y. 2008)....................................................................4

*In re Vivendi Universal, S.A.*,
   605 F. Supp. 2d 570 (S.D.N.Y. 2009)...................................................................11

*In re Vivendi Universal, S.A. Sec. Litig.*,
   242 F.R.D. 76 (S.D.N.Y. 2007) .............................................................................16

*Vladimir v. Bioenvision, Inc.*,
   No. 07 Civ. 6416 (SHS), 2007 WL 4526532 (S.D.N.Y. Dec. 21, 2007).............................3, 5

*Weinberg v. Atlas Air Worldwide Holdings, Inc.*,
   216 F.R.D. 248 (S.D.N.Y. 2003) ..........................................................................21

*Weiss v. Friedman, Billings, Ramsey Group, Inc.*,
   No. 05 Civ. 4617(RJH), 2006 WL 197036 (S.D.N.Y. Jan. 25, 2006) ...................................4, 5

*W.R. Huff Asset Mgmt. Co. v. Deloitte & Touche LLP*,
   549 F.3d 100 (2d Cir. 2008)............................................................................. 11-14

*Zylstra v. Safeway Stores, Inc.*,
   578 F.2d 102 (5th Cir. 1978) ...............................................................................10

## DOCKETED CASES

*Borochoff v. Glaxosmithkline*,
   No. 07 Civ 5574 (LLS) ........................................................................................19

*Central Laborers' Pension Fund v. Blankfein*,
   Index No. 60036/2010 (N.Y. Sup. Ct. Mar. 5, 2010) .............................................8

*In re Discovery Labs. Sec. Litig.*,
   No. 06-cv-1820-SD (E.D. Pa. Aug. 21, 2006) .....................................................17

## STATUTES

15 U.S.C. § 78u-4(a)(3) *et seq.* ............................................................... *passim*

Arkansas Teacher Retirement System ("ATRS"), West Virginia Investment Management Board, and Plumbers and Pipefitters National Pension Fund (collectively, the "Pension Funds") respectfully submit this memorandum of law in opposition to the competing motions for consolidation,[1] appointment as lead plaintiff, and approval of selection of lead counsel.[2]

## I.    INTRODUCTION

The Private Securities Litigation Reform Act of 1995 ("PSLRA") provides that the "court shall adopt a presumption that the most adequate plaintiff" is the movant, or group of movants, that "has the largest financial interest in the relief sought by the class" and "otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure."   15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).   The Pension Funds are the only proposed lead plaintiff that satisfies ***both*** prongs of the PSLRA's test.

The other movants not only have smaller losses than the Pension Funds, they also fail to satisfy the PSLRA's typicality and adequacy requirements.   For example, the IIG is comprised of two foreign entities hobbled by standing and res judicata defenses.   *See infra* § II.B.2.   In addition, the IIG selected counsel "tainted by [a] conflict of interest" that "cast[s] genuine and serious doubt on that plaintiff's willingness or ability to perform the functions of lead plaintiff."

---

[1]  A seventh action, styled *Halman Aldubi Group v. Goldman Sachs Group, Inc.*, Civ. No. 1:10-cv-4918, (S.D.N.Y.), was filed on June 24, 2010 — just one day before the lead plaintiff deadline here. Like the six other actions cited in the Pension Funds' opening lead plaintiff motion ("Pension Funds Opening Mem.," Dkt. #19), *Halman* names Goldman Sachs Group Inc. ("Goldman Sachs" or the "Company") and certain of its officers and/or directors as defendants, and involves similar factual and legal issues, namely, whether Plaintiffs purchased various Goldman Sachs securities at artificially inflated prices as a result of Defendants' allegedly false and misleading statements and whether Defendants' conduct violates the Securities Exchange Act of 1934 (the "Exchange Act").   Thus, *Halman* should be consolidated with the six other related filed actions for the reasons discussed in detail in the Pension Funds' Opening Mem. at Section III.A.

[2]    The competing movants are: (1) Montana Board of Investments, Metzler Investment GmbH ("Metzler"), and Sampension KP Livsforsikring A/S ("Sampension") (collectively, the "Institutional Investor Group" or "IIG"); (2) Pablo Elizondo; and (3) Tikva Bochner.

*In re Cavanaugh*, 306 F.3d 726, 733 (9th Cir. 2002); *In re Cendant Corp. Litig.*, 264 F.3d 201, 265 (3d Cir. 2001).  Specifically, the IIG's proposed lead counsel, Grant & Eisenhofer, P.A. ("G&E"), is sole lead counsel in the shareholder derivative action brought ***on behalf of*** Goldman Sachs – the ***defendant*** here.  *See infra* § II.B.1.  Finally, the two remaining movants, Mr. Elizondo and Ms. Bochner, two individual investors, have financial interests that are significantly smaller than the Pension Funds' losses.

Because none of the other movants satisfy the PSLRA's test, none are entitled to the "most adequate plaintiff" presumption.  Their motions should be denied.  The Pension Funds should be appointed Lead Plaintiff.

## II.    ARGUMENT

"In appointing a lead plaintiff, the court's first duty is to identify the movant that is presumptively entitled to that status."  *Cendant*, 264 F.3d at 262.  The "process begins with the identification of the movant with 'the largest financial interest in the relief sought by the class.'"  *Id.*;[3] *Cavanaugh*, 306 F.3d at 729 ("the district court must consider the ***losses*** allegedly suffered by the various plaintiffs").  "Once the court has identified the movant with 'the largest financial interest in the relief sought by the class,' it should then turn to the question whether ***that movant*** 'otherwise satisfies the requirements of Rule 23 . . . and is thus the presumptively most adequate plaintiff."  *Cendant*, 264 F.3d at 262; *Cavanaugh*, 306 F.3d at 730 (same).  In the final step, "other plaintiffs [have] an opportunity to rebut the presumptive lead plaintiff's showing that it satisfies Rule 23's typicality and adequacy requirements."  *Id.* at 730; 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

---

[3]  All emphases are added and internal citations are omitted, unless otherwise noted.

Importantly, "the **only** basis on which a court may compare plaintiffs competing to serve as lead is the size of their financial stake in the controversy.  Once it determines which plaintiff has the biggest stake, the court must appoint that plaintiff as lead, unless it finds that [it] does not satisfy the typicality or adequacy requirements." *Id.* at 732; *Cendant*, 264 F.3d at 268.

The Pension Funds are the only movant entitled to the PSLRA's most adequate plaintiff presumption.

### A.    The Pension Funds Have Triggered the "Most Adequate Plaintiff" Presumption

#### 1.    The Pension Funds Have the Largest Financial Interest

The Second Circuit has said that district courts "must be mindful of the statutory language  of the PSLRA, which makes clear that there is a rebuttable presumption in favor of the plaintiff with the largest financial interest in the relief sought by the class . . . ." *Levitt v. Rogers*, 257 Fed. App'x 450, 452 (2d Cir. 2007).  Here, the Pension Funds undeniably have suffered the largest losses based on their investment in Goldman Sachs securities:

| MOVANT | LIFO LOSS[4] | FIFO LOSS |
|--------|-----------|-----------|
| **Pension Funds** | **$14.3 million** | **$18.5 million** |
| IIG | 13.1 million | 14.2 million |
| Pablo Elizondo | 1.7 million | 1.7 million |
| Tikva Bochner | 138,325 | 138,325 |

While the PSLRA "does not define how a party's financial interest should be determined," some courts within this Circuit have utilized a four-factor test. *See In re Bausch &*

---

[4] FIFO and LIFO are the accounting methodologies used by courts to calculate losses. *See, e.g., Vladimir v. Bioenvision, Inc.*, No. 07 Civ. 6416 (SHS), 2007 WL 4526532, at *5 (S.D.N.Y. Dec. 21, 2007); *Bhojwani v. Pistiolis*, No. 06 Civ. 13761 (CM), 2007 WL 2197836, at *7 (S.D.N.Y. July 31, 2007); *Kaplan v. Gelfond*, 240 F.R.D. 88, 94 n.7 (S.D.N.Y. 2007); *In re eSpeed, Inc. Sec. Litig.*, 232 F.R.D. 95, 100-01 (S.D.N.Y. 2005).  "Under FIFO, stocks which were acquired first are assumed to be sold first for loss calculation purposes." *Vladimir*, 2007 WL 4526532, at *5.  "Under LIFO, stocks which were acquired most recently are assumed to be sold first." *Id.*

*Lomb Inc. Sec. Litig.*, 244 F.R.D. 169, 172 (W.D.N.Y. 2007) (Payson, Mag. J.) (citing *Lax v. First Merchs. Acceptance Corp.*, No. 97-C-9715, 1997 WL 461036, at *5 (N.D. Ill. Aug. 11, 1997) and *In re Olsten Corp. Sec. Litig.*, 3 F. Supp. 2d 286, 295 (E.D.N.Y. 1998)).   The *Lax* factors include: (1) the total number of shares purchased during the class period; (2) the net shares purchased during the class period; (3) the net funds expended during the class period; and (4) the approximate losses suffered.   *See Police & Fire Ret. Sys. of Detroit v. SafeNet, Inc.*, No. 06 Civ. 5797 (PAC), 2007 U.S. Dist. LEXIS 97959, at *5 (S.D.N.Y. Feb. 21, 2007) (citing *Lax*, 1997 WL 461036, at *5).   The Pension Funds have the largest financial interest in two of the four metrics under this rubric and, notably, most district courts, including this Court, "***place the most emphasis on the last of the four factors: the approximate loss suffered*** by the movant:"

| MOVANT | TOTAL SHARES PURCHASED | NET SHARES PURCHASED | NET EXPENDITURES | LIFO LOSS | FIFO LOSS |
|---|---|---|---|---|---|
| **Pension Funds** | **715,015** | **112,488** | **$25 million**[5] | **$14.3 million** | **$18.5 million** |
| IIG | 581,054 | 149,078 | 33 million | 13.1 million | 14.2 million |
| Pablo Elizondo | 26,500 | 26,500 | 4.3 million | 1.7 million | 1.7 million |
| Tikva Bochner | 5,200 | (100) | 134,525 | 138,325 | 138,325 |

*Kaplan*, 240 F.R.D. at 93.[6]

---

[5]   Exhibit C to the Declaration of Stefanie J. Sundel ("Sundel Decl.") (Dkt. #20-4), submitted with the Pension Funds' Opening Mem., inadvertently contained a typographical error relating to ATRS's net expenditures.   ATRS's net expenditures are $15,019,839, not $55,683,299.   A corrected chart of the Pension Funds' losses in securities of Goldman Sachs is respectfully submitted herewith as Exhibit A to the accompanying Declaration of Christopher J. Keller ("Keller Decl.").

[6]   *See also In re Fuwei Films Sec. Litig.*, 247 F.R.D. 432, 437 (S.D.N.Y. 2008) (same); *Varghese v. China Shenghuo Pharm. Holdings, Inc.*, 589 F. Supp. 2d 388, 395 (S.D.N.Y. 2008) ("The fourth factor, however, is the ***most important*** . . . ."); *Reimer v. Ambac Fin. Group, Inc.*, No. 08 Civ. 411(NRB), 2008 WL 2073931, at *3 (S.D.N.Y. May 9, 2008) ("The fourth factor is viewed as the ***most important***."); *Kuriakose v. Federal Home Loan Mortgage Co.*, 08-cv-7281, 2008 WL 4974839 (S.D.N.Y. Nov. 24, 2008) (same); *Weiss v. Friedman, Billings, Ramsey Group, Inc.*, No. 05 Civ. 4617(RJH), 2006 WL 197036, at *1 (S.D.N.Y. Jan. 25, 2006) (same).

Because district courts focus on losses as largely outcome determinative, the IIG may attempt to portray the seven-figure difference separating the Pension Funds from the IIG as "negligible," and/or posit that some of the other *Lax* factors should be elevated in importance here.  Both arguments lack merit.  In fact, in *Weiss* a movant that lacked the largest financial interest attempted such an approach and "urge[d] the Court to hold that the $121,231 difference in loss between itself and [another fund] is negligible, and instead to take note of the remaining *Lax* factors . . . ."  2006 WL 197036, at *3 (footnote omitted).  Judge Holwell rejected that argument finding that it was disingenuous to suggest that differences greater than $100,000 are "negligible."  *Id.*; *see also Vladimir*, 2007 WL 4526532, at *6 (holding that a $95,000 difference is not "negligible").[7]

Like the second-place challenger in *Weiss*, the IIG will be hard pressed to "direct[] the Court to any case where a plaintiff who did not have the greatest actual loss was found to have the greatest financial interest based on the remaining *Lax* factors."  2006 WL 197036, at *3; *see also In re Bally Total Fitness Sec. Litig.*, No. 04-C-3530, 2005 WL 627960, at *4 (N.D. Ill. Mar. 15, 2005) ("[S]ome of the lead plaintiff candidates who are in the middle of the pack in terms of losses . . . contend that we should also examine factors such as the number of shares purchased," but "[w]e believe that the best yardstick by which to judge 'largest financial interest' is the amount of loss, period.").  This is particularly so here, because the net shares factor "diminishes in importance upon the realization that" – as the *Gold* complaint and the IIG both acknowledge –

---

[7]    In addition, any attempt by the IIG to exploit this Court's language in *SafeNet* that a "$40,000 difference" was not outcome determinative is inapposite.  In *SafeNet*, the difference was not determinative because one of the movants "claimed losses [that might have been] uncollectible or at least subject to unique defenses in that [the investor] may have sold most of its shares before SafeNet announced corrective measures."  2007 U.S. Dist. LEXIS 97959, at *6-7.  Here, notably, IIG member Metzler sold most of its Goldman Sachs stock before and between the partial disclosures alleged in the various complaints.

"partial corrective disclosures were reaching investors on a periodic basis . . . ."[8]  *Weiss*, 2006 WL 197036, at *4.  Because this is not a single disclosure case, the net-shares-purchased factor is not outcome determinative.

Ultimately, even assuming *arguendo* that the other *Lax* factors are somehow relevant, the Pension Funds prevail on half of the *Lax* factors, including the "most important" one.  Indeed, the Pension Funds purchased almost **20 percent more shares** and suffered **$4 million more in FIFO losses** than the IIG.  Because these other "statistics do not advance the ball," "the best yardstick by which to judge 'largest financial interest' is the amount of loss, period."  *Bally*, 2005 WL 627960, at *4.

The Pension Funds have suffered the largest losses as a result of Defendants' misconduct and, therefore, possess the largest financial interest in the relief sought by the Class.

### 2.    The Pension Funds Satisfy the Rule 23 Requirements

As demonstrated in their opening brief, the Pension Funds readily meet the typicality and adequacy requirements of Rule 23.  *See* Pension Funds Opening Mem. at 6-8.  Indeed, the "legal claims of the [Pension Funds] are typical of the proposed class and thus satisfy the Rule 23 typicality requirement as it is incorporated into the PSLRA."  *SafeNet*, 2007 U.S. Dist. LEXIS 97959, at *8.  Furthermore, no doubt exists as to the Pension Funds' adequacy as its "interests are not antagonistic to one another; they have a record of prior consultation with each other; and each alleges significant damages due" to the Defendants' misconduct.  *Id.* at *10; *see also* Decl. of H. Craig Slaughter, Ex. D to the Sundel Decl. at ¶3 (noting that "[b]efore filing [their] lead

---

[8]  According to the *Gold* complaint and the IIG's own memorandum, partial disclosures began reaching the putative class here on August 27, 2008 and continued through November 19, 2008, with the full extent of Goldman Sachs' misconduct remaining hidden until a final series of disclosures in April and June 2010.  *See Gold* Complaint, ¶¶ 80-85; IIG Opening Mem. at 4-6 (Dkt. #16).

plaintiff motion, [the members of Pension Funds] discussed [their] shared objectives in serving as lead plaintiff, the benefits of collaborating, and protocols for managing the litigation" and that they "implemented communication procedures to enable [them] to confer via phone and/or email on short notice to ensure that the Pension Funds are able to independently communicate and make timely decisions") (Dkt. #20-4).  Finally, the Pension Funds also selected qualified counsel to represent the Class.  *See* Pension Funds Opening Mem. at 8-9.

Because the Pension Funds have the largest financial interest and satisfy the Rule 23 requirements at this stage, the Pension Funds are the presumptive lead plaintiff.   "[O]nce the presumption is triggered, the question *is not* whether another movant might do a better job of protecting the interests of the class than the presumptive lead plaintiff; instead, the question is whether anyone can *prove* that the presumptive lead plaintiff will not do a 'fair[] and adequate[]' job."  *Cendant*, 264 F.3d at 268 (stressing that the "inquiry *is not* a relative one") (first emphasis in original); *Cavanaugh*, 306 F.3d at 732 ("So long as the plaintiff with the largest losses satisfies the typicality and adequacy requirements, [it] is entitled to lead plaintiff status, even if the district court is convinced that some other plaintiff would do a better job."); 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II) (presumption rebuttable only upon "proof"); *see also Sofran v. LaBranche & Co.*, 220 F.R.D. 398, 403-04 (S.D.N.Y. 2004) (emphasizing that the PSLRA requires proof of inadequacy and not mere speculation).

### B.    The IIG's Members Have Significant Defects Precluding their Appointment as Lead Plaintiff

Following the PSLRA's sequential process, the district court should not consider the IIG's motion because the Pension Funds are "both willing to serve and satisf[y] the requirements of Rule 23."  *Cavanaugh*, 306 F.3d at 732; *Cendant*, 264 F.3d at 268.  Nonetheless, even if the

Court were to consider the IIG's motion, the Court would be confronted with a movant group fraught with infirmities that preclude its appointment as lead plaintiff.

### 1.      The IIG's Counsel Is Materially Conflicted

"[O]ne of a lead plaintiff's most important functions is to 'select and retain' lead counsel . . . ." *Id.* at 265; 15 U.S.C. § 78u-4(a)(3)(B)(v).  As such, "one of the best ways for a court to ensure that [the lead plaintiff] will fairly and adequately represent the interests of the class is to inquire whether the movant has demonstrated a willingness and ability to select competent class counsel . . . ." *Id.* at 265.  "Thus, a court might conclude" that a movant "could not surmount the threshold adequacy inquiry if it . . . intended to select as lead counsel a firm that was plainly incapable of undertaking the representation . . . ." *Id.*  Indeed, if the movant "has selected as counsel a . . . lawyer who has a conflict of interest, this too may bear on the plaintiff's adequacy." *Cavanaugh*, 306 F.3d at 733.  Here, the IIG's selection of counsel who are conflicted renders the IIG inadequate.

G&E, one of the IIG's proposed lead counsel, is currently serving as sole lead counsel in the pending shareholder derivative case **on behalf of** Goldman Sachs.  *See* Dkt. Sheet, *Central Laborers' Pension Fund v. Blankfein*, Index No. 60036/2010 (N.Y. Sup. Ct. Mar. 5, 2010) (the "Derivative Action") (attached as Keller Decl. Ex. B); *see also* Stip. & Order to Appoint Lead Pls. & Lead Counsel (Mar. 8, 2010) (attached as Keller Decl. Ex. C, Derivative Action Dkt. #21).  In fact, G&E recently filed a motion to dismiss its own case and for an award of $5 million in attorneys' fees for its derivative representation of Goldman Sachs, which Goldman Sachs is currently opposing.  *See* Mem. of Law in Supp. of Pls.' Mot. to Dismiss & for an Award of Attys' Fees & Reimbursement of Litig. Expenses in Derivative Action (Apr. 8, 2010) (attached

as Keller Decl. Ex. D, Derivative Action Dkt. #24).[9]  G&E also entered into a Stipulation for the Production and Exchange of Confidential Information with Goldman Sachs on June 9, 2010.  *See* Stipulation & Order (attached as Keller Decl. Ex. E, Derivative Action Dkt. #50).  Clearly, G&E's simultaneous role as derivative counsel ***on behalf of*** Goldman Sachs and as proposed lead counsel ***against*** Goldman Sachs here creates a material conflict of interest.

Indeed, "it is difficult to understand how an attorney can properly represent the interests of a corporation and its present shareholders in a derivative action brought on their behalf, and, at one and the same time, properly represent its present and/or former shareholders in a class action against the corporation without compromising the independence of professional judgment and loyalty to these two groups of clients with potentially conflicting interests." *Koenig v. Benson*, 117 F.R.D. 330, 334 (E.D.N.Y. 1987) (quoting *Stull*, 410 F. Supp. at 1336-37).[10]  The essence of the conflict is as follows:

> [C]o-counsel is bound to pursue ***two actions*** to the best of his ability and as vigorously as possible.  ***If both are successful***, one action would result in a recovery for the corporation; the other would result in a detriment to the corporation.  It is difficult to see how counsel could retain his independence of professional judgment and loyalty to his ***clients and their interests in both suits***.

---

[9]  G&E's request to dismiss the derivative action may also be cause for concern.  *Stull v. Baker*, 410 F. Supp. 1326, 1337 (S.D.N.Y. 1976) ("I cannot help wondering whether this dismissal would have been as willingly entered into if there were not a substantial settlement fund in the class action upon which the presently pending fee application could rest.  It is obviously preferable that the Court not be placed in the difficult position of having to determine, without the assistance of highly motivated advocates in adversary roles, whether the interests of the corporation are being sacrificed in favor of the class, or ***vice-versa***.").

[10]  *See also Kamerman v. Steinberg*, 113 F.R.D. 511, 516 (S.D.N.Y. 1986) ("Prosecution of both a derivative and class action by plaintiffs . . . ***presents an impermissible conflict of interest***."); *Blecker v. Lazard Freres & Co.*, 73 civ. 4057, 1974 WL 365, at *1 (S.D.N.Y. Jan. 18, 1974) ("The Court agrees with plaintiffs that if Mr. Bernstein (plaintiffs' counsel in *Bernstein*) represented the class action plaintiffs in *Herbst* as well as the derivative plaintiff in *Bernstein*, a ***serious question of conflict of interest*** would arise."); *Ruggiero v. Am. Bioculture, Inc.*, 56 F.R.D. 93, 95 (S.D.N.Y. 1972) ("there is a substantial question as to whether the attorneys for the Freed plaintiffs can represent them in the derivative suit and the class action without ***violating the Canons of Ethics***").

*Hawk Indus., Inc. v. Bausch & Lomb, Inc.*, 59 F.R.D. 619, 624 (S.D.N.Y. 1973) (citing *Ruggiero*,

56 F.R.D. 93).

The *Hawk* analysis is applicable to this Action.  Specifically, the conflicting interests here

include the following:

- Parties in Interest:  The securities lead plaintiff (and its counsel) represents the putative class, which includes *former shareholders*, against Goldman Sachs.   Derivative plaintiffs (and their counsel) must all be present shareholders as they are *fiduciaries charged with protecting the interests of Goldman Sachs*.

- Privilege:  Derivative plaintiffs (and their counsel), as a result of their fiduciary relationship to Goldman Sachs, are entitled to privileged information.   *G&E entered into a Stipulation and Order for the Production and Exchange of Confidential Information with Goldman Sachs* on June 9, 2010.

- Class Certification:  This Action is subject to the requirements of Rule 23(a) of the Federal Rules Civil Procedure, which requires, in part, a showing of lead plaintiff's *adequacy of representation*, meaning any conflicts of interest will undoubtedly be raised as a basis for denying class certification.

In short, "there are potential conflicts of interest which make it inadvisable for the same

attorneys to represent the plaintiffs in the class action and the derivative plaintiff in the

shareholders' suit."  *In re Cont'l Sec. Litig.*, 82 C 4712, 1984 U.S. Dist. LEXIS 17778, at *1

(N.D. Ill. 1984) (noting that "conflict is particularly troublesome as far as settlement negotiations

are concerned").[11]  The Class here deserves nothing less than absolute loyalty.  If G&E is

approved as lead counsel here, it will be attempting to simultaneously serve two masters – i.e.,

serving as a fiduciary to both the Company and the Class.  As such, the IIG cannot meet its

required showing of adequacy given its selection of G&E as proposed lead counsel.

---

[11]   *See also Zylstra v. Safeway Stores, Inc*., 578 F.2d 102, 103-04 (5th Cir. 1978) (finding that ethical questions regarding conflicts and Rule 23 "are inextricably intertwined").

### 2.     As a German Investment Manager, Metzler Is Subject to Unique Standing and Res Judicata Defenses

It is axiomatic that a lead plaintiff candidate must "make a threshold showing of typicality [and] adequacy." *Cendant*, 264 F.3d at 267; 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc). IIG member Metzler has not even tried to evidence its ability to meet these requirements. Indeed, Metzler is plagued by ***two*** inherent defects that are incurable: (1) it is an investment manager that lacks standing and a timely assignment of claims; ***and*** (2) it is subject to unique res judicata defenses as it is formed under and governed by German law.  In short, Metzler's "status raises complex and novel issues of law which would require extensive factual and foreign legal analysis." *Baydale v. Am. Express Co*., No. 09 civ. 3016, 2009 WL 2603140, at *3 (S.D.N.Y. Aug. 14, 2009).  As Judge Pauley recognized in a similar situation, appointing an entity like Metzler would result in "a ***needless litigation sideshow***" that "can be circumvented at this early stage by selecting another lead plaintiff." *Id.*[12]

#### a.     Metzler Did Not Evidence its Standing

Investment managers like Metzler must demonstrate Article III standing to pursue claims on behalf of the funds they manage.  *See W.R. Huff Asset Mgmt. Co. v. Deloitte & Touche LLP*, 549 F.3d 100 (2d Cir. 2008).  Metzler's certification identifies what appear to be ***twelve separate funds*** that purportedly purchased Goldman Sachs stock:

---

[12]   One of Metzler's co-movants, a Danish entity called Sampension, may similarly be distracted by standing and res judicata issues.  *See, e.g., In re Vivendi Universal, S.A.*, 605 F. Supp. 2d 570, 582 (S.D.N.Y. 2009) ("Danish investment companies Danske and Nordea Invest do not fall within the *Huff* exception and therefore do not have standing to bring suit."); *Buettgen v. Harless*, 263 F.R.D. 378, 382-83 (N.D. Tex. 2009) (declining to appoint Swiss entity as lead plaintiff because of res judicata concerns); *Eichenholtz v. Verifone Holdings, Inc.*, 07-cv-6140, 2008 WL 3925289, at *10 n.8 (N.D. Cal. Aug. 22, 2008) (declining to appoint Israeli entity as lead plaintiff because of res judicata concerns).

| MI-FONDS 178/ENVIA AG | MI-FONDS 208/AL-M | MI-FONDS 250/AEKH |
|---|---|---|
| MI-FONDS 255/EKIBA | MI-FONDS 338/AIRBUS | MI-FONDS 344/EADS |
| MI-FONDS 376/KVBW | MI-FONDS 415/ERK | MI-FONDS F26/ZVKRW_Co |
| MI-FONDS 710/RWS-Wachstumfonds-MI | MI-FONDS F21/KVKD_WMAM | MI-FONDS 705/Metzler Wachstum International |

Unfortunately, Metzler failed to timely demonstrate that it has standing under German law to assert claims on behalf of the twelve distinct MI-FONDS (or the MI-FONDS' investors) .

In *Huff*, defendants challenged Huff Asset Management's constitutional standing to sue on behalf of the funds it managed in a Rule 12(b)(6) motion to dismiss.  The district court held that Huff Asset Management's status as attorney-in-fact satisfied the requirements of constitutional standing.  The Second Circuit reversed, noting that "Huff's power-of-attorney is not purported to be a valid assignment and does not confer a legal title to the claims it brings." 549 F.3d at 108.  "While Huff enjoys the authority to make some decisions concerning litigation, ***it does not have an ownership stake in any claims its clients might pursue against defendants***.'"  *Id.* at 109.  In short, the mere grant of a "power-of-attorney . . . to serve as an agent of its clients and to conduct litigation on behalf of its clients . . . cannot serve as a basis for Article III standing."  *Id*.

Here, Metzler's certification is silent as to whether Metzler – as opposed to the MI-FONDS or the MI-FONDS' investors who actually suffered losses and have a financial interest in the relief sought by the Class – was validly granted the requisite power and authority under governing German law to bring suit on behalf of the various MI-FONDS or the MI-FONDS' investors.  *See* Metzler's Certfication, Dkt. #17-2.  As such, Metzler is even more precariously situated than the investment manager in *Huff*, which had at least lawfully obtained a power-of-attorney.

Nevertheless, even if Metzler claims to be "attorney-in-fact" for the twelve separate MI-FONDS (or the MI-FONDS' investors) – which it does not – as explained in *Huff*, "attorney-in-fact" status is an insufficient basis for Article III standing.  To possess Article III standing, Metzler must have ***both*** legal title and ownership of the twelve separate MI-FONDS' (and the MI-FONDS' investors') claims ***and*** "demonstrate an 'injury-in-fact.'"  *Huff*, 549 F.3d at 107.  It was Metzler's burden to timely demonstrate that it had assignments ***and*** that those assignments are indisputably valid under German law.  *See id.* at 107-08 (describing an insufficient assignment).  ***Metzler did not do so***.  Consequently, Metzler does not possess constitutional standing to pursue the claims in the matter and cannot be appointed as lead plaintiff in this Action.[13]

Moreover, the Court should reject any *ex post facto* attempt by Metzler to cure its failure or substantiate the validity of its claimed assignments.  In *In re Bard Assocs., Inc*., No. 09-6243, 2009 WL 4350780 (10th Cir. Dec. 2, 2009), an individual investor challenged an investment manager's standing because, like Metzler here, the investment manager "did not have assignments of its clients' claims."  *Id.* at *1.  "In response, [the investment manager] secured

---

[13]   Even assuming that Metzler did have full discretionary investment authority over the funds, the investment manager, Metzler – as opposed to the twelve MI-FONDS and the MI-FONDS' investors – lacks a "financial interest in the relief sought by the class."  15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb); *see also In re Cardinal Health, Inc. Sec. Litig*., 226 F.R.D. 298, 311 (S.D. Ohio 2005) (finding asset manager with investment authority lacks standing to assert securities fraud claims on behalf of its clients); and *In re McKesson HBOC, Inc. Sec. Litig.*, 97 F. Supp. 2d 993, 997 (N.D. Cal. 1999) (finding that financial interest is "directly tied" to potential recovery).  For example, if this case were to yield a 100 percent recovery for the class, Metzler ***itself*** would not be entitled to recover anything.  *See, e.g.*, *Smith v. Suprema Specialties, Inc.*, 206 F. Supp. 2d 627, 634-36 (D.N.J. 2002) (finding investment advisor was not entitled to lead plaintiff status because it did not suffer the loss it claimed).  Metzler failed to timely provide any competent evidence (i.e., investment contracts between itself and its clients granting attorney-in-fact authority) that it possesses valid authority under German law to claim its numerous clients' and/or affiliated investment funds' investment losses in this case.  *See id*.  Defendants would no doubt persuasively argue that Metzler does not itself possess a financial interest in the outcome of this litigation. 15 U.S.C. § 78u-4(a)(3)(B)(iii).

valid assignments from all of its 152 clients" and "supplement[ed] its lead-plaintiff motion. Nonetheless, the district court denied [the investment manager's] request to serve as lead plaintiff and appointed [another movant group] instead, concluding that the PSLRA's strict time limits precluded it from considering assignments made *after* the filing of [the investment manager's] lead plaintiff motion." *Id.* On appeal, the Tenth Circuit found no error in the district court's adoption of a "bright line rule requiring lead plaintiff movants to establish Article III standing by the time the lead plaintiff motions are due, that is, 'not later than 60 days after the date on which [. . .] notice is published,' 15 U.S.C. § 78u-4(a)(3)(A)(i)(II)." *Id.* at *3; *see also In re Telxon Corp. Sec. Litig.*, 67 F. Supp. 2d 803, 818 (N.D. Ohio 1999) ("The PSLRA is unequivocal and allows for no exceptions" and "precludes consideration of . . . any other pleading . . . filed *after* the sixty (60) day window has closed.") (emphasis in original).

Even if the Court allowed Metzler leave to *un*timely prove it has valid assignments of claims from the twelve MI-FONDS, Metzler *still* could not be appointed as lead plaintiff. The reason is simple: the mere fact that Metzler needs assignments of claims renders it subject to unique defenses and inadequate to serve as lead plaintiff. In *In re Imax Sec. Litig.*, 06 civ. 6128, 2009 WL 1905033 (S.D.N.Y. June 29, 2009), Judge Buchwald initially appointed an asset manager as lead plaintiff. *Id.* at *1. Following the Second Circuit's decision in *Huff*, Judge Buchwald replaced the asset manager as lead plaintiff *even though* the asset manager subsequently obtained assignments from the funds on whose behalf it had moved as lead plaintiff. *Id.* at *2. In so holding, Judge Buchwald recognized that despite the tardy assignments, the asset manager now "faces unique legal issues that other class members do not." *Id.* at *3 (noting that such issues "could ultimately severely prejudice the class, either at the class certification stage or on some subsequent appeal"); *see also In re SLM Corp. Sec. Litig.*, 258

F.R.D. 112, 116 (S.D.N.Y. 2009) (holding that because of *Huff*, an asset manager should be replaced as lead plaintiff even though it received belated assignments of claims because it would be subject to unique defenses).  Saddling the Class with such risks at the outset of the litigation is not warranted here where there is another movant (i.e., the Pension Funds), that not only has a large financial interest in the relief sought by the Class, but is willing and able to serve as lead plaintiff.[14]

In sum, Metzler has not demonstrated – timely or otherwise – that it has standing to pursue claims on behalf of the MI-FONDS.  This standing defect is not curable by *ex post facto* assignments.  As such, Metzler cannot serve as lead plaintiff.

### b.      Metzler Is Subject to Unique Res Judicata Defenses

Even ignoring Metzler's fundamental standing defect, as a German entity, Metzler is "subject to unique defenses that render [it] incapable of adequately representing the class."  15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(bb).  Specifically, there is a "risk that [German] courts would not give the Court's judgment res judicata effect . . . ."  *Steinberg v. Ericsson LM Tel. Co.*, 07 civ. 9615, 2008 WL 1721484, at *1 (S.D.N.Y. Apr. 11, 2008) (declining to reconsider order denying lead plaintiff status to group of institutional investors, one of which was a German entity) (Patterson, J.).  Indeed, Metzler is well-aware of this risk, as it was previously rejected as a lead plaintiff on the same grounds in *Borochoff v. Glaxosmithkline PLC*, 246 F.R.D. 201, 203 (S.D.N.Y. 2007).

---

[14]  If the Court is not persuaded by the reasoning of other judges in this District, it may be prudent in light of Metzler's serious defects to permit limited discovery regarding Metzler's standing, qualifications, background, and ability to serve as a lead plaintiff in this complex class action.  *See In re Network Assocs., Inc. Sec. Litig.*, 76 F. Supp. 2d 1017, 1027 (N.D. Cal. 1999) (discovery "prove[d] illuminating" in assessing the viability of a foreign investment advisor as lead plaintiff); 15 U.S.C. § 78u-4(a)(3)(B)(iv) (permitting discovery into the adequacy of other movants).

Simply stated, the res judicata problem "boils down to the fact that if this Court's judgment on the merits does not protect a prevailing Defendant against relitigation in [Germany], nor grants a prevailing [German] Plaintiff an enforceable damage judgment, then for those litigants a class action is not 'superior to other available methods for the fair and efficient adjudication of the controversy.'"  *Buettgen*, 263 F.R.D. at 382; *In re Vivendi Universal, S.A. Sec. Litig.*, 242 F.R.D. 76, 92-93 (S.D.N.Y. 2007).

Judge Friendly's seminal opinion in *Bersch v. Drexel Firestone, Inc.*, 519 F.2d 974 (2d Cir. 1975), directed the district court on remand to "eliminate from the class action all purchasers other than persons who were residents or citizens of the United States" because "***Germany*** . . . would not recognize a United States judgment in favor of the defendant as a bar to an action by their own citizens . . . ."  *Id.* at 996-97.  Similarly, in *Vivendi*, Judge Holwell analyzed whether a foreign judgment would be recognized in Germany.  242 F.R.D. 76.  In that case, involving a motion for class certification, experts agreed "that there is no decision by a German court as to whether a judgment in a U.S. class action would be recognized" under German law.  *Id.* at 104. After analyzing expert declarations on the issue, Judge Holwell excluded German investors from the class because the court determined that German courts would not give res judicata effect to the U.S. court's judgments:

> Taking the parties' expert affidavits as a whole, the Court is left with the distinct impression that the formalities of German law may well preclude the recognition of a judgment in the instant case.  Indeed, plaintiffs' expert concludes only that "one cannot rule out a U.S. class action settlement or judgment . . . will be recognized or enforced in Germany."  This candid opinion is insufficient on its face and leads the Court to conclude that plaintiffs have not shown a probability that German courts will give res judicata effect to a judgment in this case.

*Id.* at 105.

Of particular note, *Vivendi* was recently applied at the lead plaintiff stage in *Borochoff* where Judge Stanton rejected a lead plaintiff motion filed by a group of German investors –

*including Metzler* – reasoning that "[i]f this Court's judgment on the merits" does not "protect[] a prevailing defendant against relitigation in Germany, . . . then for those litigants a class action is not 'superior to other available methods for the fair and efficient adjudication of the controversy.'. . .  Rather, it is a waste," and the presence of German investors in the class "may inflict burdens on the administration of the action."  *Id.*  While acknowledging that the lead plaintiff stage was "not the proper occasion to determine whether German [investors] will be in the class[,] *prudence cautions that the arguments for its exclusion are substantial*, and in light of that risk it would be improvident to appoint the German Institutional Investor Group as lead plaintiff at this point."  *Id.* at 205 (footnote omitted); *see also In re Royal Ahold N.V. Sec. & ERISA Litig.*, 219 F.R.D. 343, 352 (D. Md. 2003) (refusing to appoint a German investor as lead plaintiff because it "might be eliminated from the class at the certification stage because a judgment would not be enforceable").

"It appears there is no formal treaty between [Germany] and the United States requiring either jurisdiction to recognize and enforce judgments.  Thus, entrusting [Metzler] with the responsibility of prosecuting a case where the lead plaintiff might be plagued with res judicata issues jeopardizes the interests of the entire class if Defendants['] res judicata arguments prevail."  *Buettgen*, 263 F.R.D. at 382-83.  In addition, like many other foreign countries, Germany does not "have its own class action equivalent."  *See, e.g.*, *Eichenholtz*, 2008 WL 3925289, at *10 n.8 (rejecting Israeli movant as lead plaintiff).  As such, "it is unclear if this litigation would be given res judicata effect" in Germany.  *Id.*; *see also In re Discovery Labs. Sec. Litig.*, No. 06-cv-1820-SD, slip op. at 2 (E.D. Pa. Aug. 21, 2006) (denying reconsideration of lead plaintiff motion of Luxembourgian movant that did not "alla[y] our concerns that a

judgment in its favor could be of questionable res judicata effect in foreign courts") (attached as Keller Decl. Ex. F).[15]

 If appointed lead plaintiff, the Pension Funds will strongly advocate for the interests of *all* victims of Defendants' misconduct, including foreign purchasers like Metzler.  However, the Pension Funds cannot turn a blind eye to the strong likelihood that if appointed lead plaintiff, Metzler will be materially distracted from the duties it owes to the Class by defending itself against a res judicata quagmire at every stage of this lawsuit (including motion to dismiss, class certification, summary judgment, and trial).  This is particularly so in the wake of the U.S. Supreme Court's decision just weeks ago in *Morrison v. Nat'l Austl. Bank*, No. 08-1191, 2010 WL 2518523 (U.S. June 24, 2010).  While Goldman Sachs is undeniably a U.S. corporation and its stock is undoubtedly traded on a U.S. exchange, it remains to be seen whether, and to what degree, district courts will seize upon Justice Scalia's language rejecting "the notion that the Exchange Act reaches conduct in this country affecting exchanges *or transactions abroad* . . . : The probability of incompatibility with the other countries' applicable laws is so obvious that if Congress intended such foreign application it would have addressed the subject of conflicts with foreign laws and procedures."  *Id.* at *2.  "Like the United States, foreign countries regulate their domestic securities exchanges and securities transactions occurring within their territorial

---

[15] Pragmatically, the "fitness of [Metzler] to be lead plaintiff is further compounded by language barriers, esoteric United States securities laws and problems inherent in communicating across continents." *Eichenholtz*, 2008 WL 3925289, at *10 & n.8 (specifically noting that the "entity's physical distance from this forum may create practical difficulties that may make it difficult for it to be the class representative"). "Since individuals at [Metzler] may have to testify at trial, it could be difficult for them to attend a long trial in its entirety." *Id.*; *see also In re DaimlerChrysler AG Sec. Litig.*, 216 F.R.D. 291, 301 (D. Del. 2003) (noting that there was a significant likelihood that foreign courts will not recognize and enforce a United States judgment, and therefore, defendants may be subject to multiple and potentially inconsistent adjudications in foreign countries"); *In re Parmalat Sec. Litig.*, 04 MD 1653, 2008 WL 3895539, at *3 (S.D.N.Y. Aug. 21, 2008) (same).

jurisdiction.  And the regulation of other countries often differs from ours as to what constitutes fraud, what disclosures must be made, what damages are recoverable, what discovery is available in litigation, what individual actions may be joined in a single suit, what attorney's fees are recoverable, and many other matters."  *Id.* at *12 (noting amicus filing by Federation of German Industries, among others, "complain[ing] of the interference with foreign securities regulation that application of § 10(b) abroad would produce").

"To have standing to sue as a class representative it is essential that a plaintiff must be a part of that class . . . ."  *Schlesinger v. Reservists Comm. to Stop the War*, 418 U.S. 208, 216 (1974).  While "[t]his is not the proper occasion to determine whether [Metzler] will be in the class[,] prudence cautions that the arguments for its exclusion are substantial, and in light of that risk it would be improvident to appoint [Metzler] as lead plaintiff at this point."  *Borochoff*, 246 F.R.D. at 205 (footnote omitted); *see also DaimlerChrysler*, 216 F.R.D. at 301 (noting that class certification may be inappropriate where "obstacles" exist due to the inclusion of foreign class members).[16]  It would be unfair to the Class to entrust Metzler with the responsibility of prosecuting a case, as that would mean the lead plaintiff would be plagued by complex res judicata issues.  The IIG's motion should be denied.[17]

---

[16]  A voluntary promise by Metzler that it (or the MI-FONDS) will agree to remain bound by any judgment of this Court does nothing to alter this fact.  *See Borochoff v. Glaxosmithkline*, No. 07 Civ. 5574 (LLS) Mem. Endorsement at 1 (S.D.N.Y. Nov. 27, 2007) (finding statement that proposed lead plaintiff agrees "to be bound by all rulings of the Court . . . does not (nor could it) even purport to bind . . . other investors . . . where their court may not enforce a United States class action judgment") (internal quotation marks omitted) (attached as Keller Decl. Ex. G) .

[17]  "[W]hether these defenses will be successful is of no matter.  The fact that plaintiffs will be subject to such defenses renders their claims atypical of other class members."  *Landry v. Price Waterhouse Chartered Accountants*, 123 F.R.D. 474, 476 (S.D.N.Y. 1989).  Indeed, courts regularly refuse to appoint a lead plaintiff movant when "there is at least a potential that [the movant] will be subject to unique defenses."  *In re Surebeam Corp. Sec. Litig.*, No. 03 CV 1721 JM(POR), 2003 WL 5159061, at *22 (S.D. Cal. Jan. 5, 2004) (Miller, J.); *Bally*, 2005 WL 627960, at *6 ("the PSLRA . . . provides that we ask

**C.    The Individual Investors Do Not Have the Largest Financial Interest and There Is No Need to Splinter this Action into Sub-classes**

The two remaining movants – Mr. Elizondo and Ms. Bochner – claim *smaller* losses than the Pension Funds by many millions of dollars.  Consequently, the Court may only consider their motions "*if and only if* [the Pension Funds are] found inadequate or atypical."  *Cavanaugh*, 306 F.3d at 730.  Because the Pension Funds are "both willing to serve and satisf[y] the requirements of Rule 23," the Elizondo and Bochner motions should be denied.  *Id*. at 732.  Both Mr. Elizondo and Ms. Bochner acknowledge this plain fact.

On July 9, 2010, Mr. Elizondo filed a notice "recogniz[ing] that he does not have the largest financial loss and support[ing t]he Pension Funds' Motion for Lead Plaintiff and approval of their selection of Lead Counsel as they have the largest financial loss of in excess of $18.5 million." (footnote omitted).  *See* Elizondo Response, Dkt. #21.  Ms. Bochner's *counsel*, however, has adopted a different tact, insinuating that while Ms. Bochner is not the presumptive lead plaintiff, the Pension Funds somehow will not act in the best interests of all Goldman Sachs investors, including those investors who traded in options, if the Pension Funds do not cave to Ms. Bochner's *counsel's* demand for a co-lead counsel role.  Decl. of Marion P. Rosner, Ex. A, Dkt. #23-2. Because the Pension Funds did not entertain Ms. Bochner's *counsel's* overture, Ms. Bochner's *counsel* has threatened to improperly splinter the Action to secure a role for itself.  Such lawyer-driven machinations are not in the Class's best interests and should not be countenanced.

Even overlooking the impropriety of counsel's demands, Ms. Bochner's position is factually and legally untenable in the Second Circuit.  Here, Ms. Bochner both asks the Court to

---

simply whether [a movant] is likely to be 'subject to' . . . unique defense[s, not] that the defense is likely to succeed").

consolidate her complaint with all others while simultaneously seeking appointment as lead plaintiff on behalf of an options sub-class. *See* Bochner Opp. Mem., Dkt. #22. This is not the law. *See Hevesi v. Citigroup Inc.*, 366 F.3d 70, 82 (2d Cir. 2003) ("Nothing in the PSLRA indicates that district courts must choose a lead plaintiff with standing to sue on every available cause of action."). As such, at this stage, it is not necessary to appoint individual lead plaintiffs for each sub-class of investors.

"It is well established that the lead plaintiff's claims do not have to be identical to the other class members' claims and in fact, the idea that there should [be] multiple Lead Plaintiffs with standing to sue on all possible causes of action has been rejected by the Southern District [of New York]." *Weinberg v. Atlas Air Worldwide Holdings, Inc.*, 216 F.R.D. 248, 253 (S.D.N.Y. 2003). Indeed, "requests for splintering the action or appointing multiple Lead Plaintiffs to represent specialized interests, especially in light of the common facts and legal issues here, would undermine the purpose of the PSLRA." *Id.* at 254. Similarly, Judge Sweet stated that "the fact that plaintiffs might have different types of securities does not require a separate class or co-lead plaintiffs because lead plaintiffs need not satisfy all elements of standing with respect to the entire lawsuit under the PSLRA." *Freudenberg v. E*Trade Fin. Corp.*, 07 Civ. 8538, 2008 WL 2876373, at *6 (S.D.N.Y. July 16, 2008).

In fact, Judge Kram rejected a virtually identical argument by an options holder like Ms. Bochner in *Fishbury, Ltd. v. Connetics Corp.*, No. 06 Civ. 11496(SWK), 2006 WL 3711566 (S.D.N.Y. Dec. 14, 2006). In *Fishbury*, an options trader argued that the presumptive lead plaintiff was not adequate because it did not purchase options. Judge Kram rejected this argument, finding that "[i]t is well settled law in this Circuit that the lead plaintiff in a securities class action need not have standing to sue on all causes of action raised in the underlying class

complaint." *Id.* at *4.  An option-trader's "speculation about potential class standing problems should not be resolved by the appointment of multiple lead plaintiffs . . . but by the appointment, if necessary and desirable, of additional class representatives as the litigation proceeds." *Id.*  In *Fishbury*, just as is the case here, the options trader "failed to make any concrete showing of a conflict of interest between the presumptive lead plaintiff and stock-option purchasers, relying instead on mere speculation about future standing or class-certification issues . . . ." *Id.*  Such a failure to proffer evidence does not rebut the presumption that the Pension Funds are the most adequate lead plaintiff.  *See Olsen v. N.Y. Cmty. Bancorp, Inc.*, 233 F.R.D. 101, 108 (E.D.N.Y. 2005) ("there is no precedent under which the Court is required to appoint separate lead plaintiffs for different claims").

Accordingly, at this stage, it is not necessary to appoint individual lead plaintiffs for each sub-class of investors.  Appointing a niche plaintiff will fracture the litigation, making it more difficult for the lead plaintiff to manage the litigation, and may well hurt investors in the long-run. Consequently, Ms. Bochner's request should be denied.

## III.    CONCLUSION

The IIG has a smaller financial interest than the Pension Funds, it selected counsel with a material conflict of interest, and its members are subject to standing and res judicata defenses. The remaining movants, including Ms. Bochner, have significantly smaller financial interests than the Pension Funds, and their motions should also be denied.  In contrast, the Pension Funds have satisfied all of the PSLRA's requirements, and are, presumptively, the "most adequate plaintiff[s]."  The Pension Funds' motion should be granted.

DATED:  July 12, 2010                    Respectfully submitted,

                                           */s/ Christopher J. Keller*
                                         Christopher J. Keller
                                         Eric J. Belfi
                                         Alan I. Ellman
                                         Stefanie J. Sundel
                                         **LABATON SUCHAROW LLP**
                                         140 Broadway, 34th Floor
                                         New York, NY  10005
                                         Telephone: (212) 907-0700
                                         Facsimile: (212) 818-0477
                                         ckeller@labaton.com
                                         ebelfi@labaton.com
                                         aellman@labaton.com
                                         ssundel@labaton.com

                                         *Counsel for Arkansas Teacher Retirement System*
                                         *and Proposed Lead Counsel for the Class*

                                         Samuel H. Rudman
                                         David A. Rosenfeld
                                         **ROBBINS GELLER RUDMAN**
                                         **  & DOWD LLP**
                                         58 South Service Road, Suite 200
                                         Melville, NY  11747
                                         Telephone: (631) 367-7100
                                         Facsimile: (631) 367-1173
                                         srudman@rgrdlaw.com
                                         drosenfeld@rgrdlaw.com

                                         *Counsel for West Virginia Investment*
                                         *Management Board, and Plumbers and*
                                         *Pipefitters National Pension Fund,*
                                         *and Proposed Lead Counsel for the Class*