**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ILENE RICHMAN, Individually and on Behalf of All Others Similarly Situated,<br><br>　　　　　Plaintiffs,<br><br>　　v.<br><br>GOLDMAN SACHS GROUP, INC., LLOYD C. BLANKFEIN, DAVID A. VINIAR and GARY D. COHN,<br><br>　　　　　Defendants. | Civil Action No.  1:10 CIV 3461 |

(caption continued on subsequent pages)

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT
OF THE MOTION OF THE INSTITUTIONAL INVESTOR
GROUP FOR APPOINTMENT AS LEAD PLAINTIFF**

| | |
|---|---|
| HOWARD SORKIN, Individually and on Behalf of All Others Similarly Situated,<br><br>       Plaintiffs,<br><br>   v.<br><br>GOLDMAN SACHS GROUP, INC., LLOYD C. BLANKFEIN, DAVID A. VINIAR and GARY D. COHN,<br><br>       Defendants. | Civil Action No.  1:10 CIV 3493 |
| DR. EHSAN AFSHANI, On Behalf of Himself and All Others Similarly Situated,<br><br>       Plaintiffs,<br><br>   v.<br><br>GOLDMAN SACHS GROUP, INC., LLOYD C. BLANKFEIN, DAVID A. VINIAR and GARY D. COHN,<br><br>       Defendants. | Civil Action No. 1:10 CIV 3616 |

| | |
|---|---|
| LOUIS GOLD, Individually and on Behalf of All Others Similarly Situated,<br><br>        Plaintiffs,<br><br>   v.<br><br>GOLDMAN SACHS GROUP, INC., LLOYD C. BLANKFEIN, DAVID A. VINIAR and GARY D. COHN,<br><br>        Defendants. | No. 1:10 CV 4786 |
| THOMAS DRAFT, Individually and on Behalf of All Others Similarly Situated,<br><br>        Plaintiffs,<br><br>   v.<br><br>GOLDMAN SACHS GROUP, INC., LLOYD C. BLANKFEIN, DAVID A. VINIAR, GARY D. COHN and SARAH E. SMITH,<br><br>        Defendants. | No. 1:10 CV 4812 |

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ................................................................................................................ ii

PRELIMINARY STATEMENT ........................................................................................................ 1

ARGUMENT ....................................................................................................................................... 2

I.   THE INSTITUTIONAL INVESTOR GROUP HAS THE LARGEST
     FINANICAL INTEREST IN THE LITIGATION ............................................................... 2

II.  THE INSTITUTIONAL INVESTOR GROUP'S COUNSEL IS NOT
     CONFLICTED ........................................................................................................................ 6

III. METZLER IS NOT SUBJECT TO ANY UNIQUE DEFENSES .................................... 8

     A.   METZLER HAS STANDING TO SUE ............................................................................. 8

     B.   METZLER IS NOT SUBJECT TO UNIQUE DEFENSES .................................................... 9

CONCLUSION ................................................................................................................................... 10

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Angel Investors, LLC v. Garrity*,
   216 P. 3d 944 (Utah 2009) ................................................................................................6

*Blecker v. Lazard Freres & Co.*,
   73. Civ. 4057, 1974 WL 365 (S.D.N.Y. Jan. 18, 1974) ...................................................7

*Borochoff v. GlaxosmithKline PLC*,
   246 F.R.D. 201 (S.D.N.Y. 2007) ..................................................................................2, 10

*Central Laborers' Pension Fund v. Blankfein*,
   No. 600036/2010 (N.Y. Sup. Ct. 2010) .........................................................................6, 7

*First Am. Bank and Trust by Levitt v. Frogel*,
   726 F. Supp. 1292 (S.D. Fla. 1989) ..................................................................................6

*Grace v. Rosenstock*,
   No. CV-85-2039, 1986 WL 2709 (E.D.N.Y. Mar. 6, 1986) .............................................6

*Hawk Indus., Inc. v. Bausch & Lomb, Inc.*,
   59 F.R.D. 619 (S.D.N.Y. 1973) ........................................................................................6

*In re Cable & Wireless, PLC Sec. Litig.*,
   217 F.R.D. 372 (E.D. Va. 2003) ....................................................................................4, 5

*In re Cont'l Sec. Litig.*,
   82 C 4712, 1984 U.S. Dist. LEXIS 17778 (N.D. Ill. Apr. 9, 1984) ..................................6

*In re Corinthian Colls. Inc. S'holder Litig.*,
   No. 04-CV-5025 (C.D. Cal. 2004) ....................................................................................9

*In re Critical Path, Inc.*,
   156 F. Supp. 2d 1102 .........................................................................................................4

*In re Doral Fin. Corp. Sec. Litig.*,
   414 F. Supp. 2d 398 (S.D.N.Y. 2006) ...............................................................................5

*In re eSpeed, Inc. Sec. Litig.*,
   232 F.R.D. 95 (S.D.N.Y. 2005) .........................................................................................5

*In re Fuwei Films Sec. Litig.*,
   247 F.R.D. 432 (S.D.N.Y. 2008) .......................................................................................5

*In re General Motors Corp. Sec. Litig.*,
    No. 2:06-md-1749-GER (E.D. Mich. Dec. 2, 2008)..................................................................9

*In re the Mills Corp.*,
    No. Civ. A. 1:06-77(GEL), 2006 WL 2035391 (S.D.N.Y. May 30, 2006) ..........................3, 4

*In re Molson Coors Brewing Co. Sec. Litig.*,
    233 F.R.D. 147 (D. Del. 2005) ..........................................................................................9, 10

*In re Network Assocs.*,
    76 F. Supp. 2d 1017 (N.D. Cal. 1999) ....................................................................................4

*In re Vivendi Universal, S.A.*,
    242 F.R.D. 76 (S.D.N.Y. 2007) .............................................................................................10

*In re Vivendi Universal, S.A. Sec. Litig.*,
    605 F. Supp. 2d 570 (S.D.N.Y. 2009)..................................................................................8, 9

*Kamerman v. Steinberg*,
    113 F.R.D. 511 (S.D.N.Y. 1986) .............................................................................................6

*Kaplan v. Gelfond*,
    240 F.R.D. 88 (S.D.N.Y. 2008) ...............................................................................................5

*Koenig v. Benson*,
    117 F.R.D. 330 (E.D.N.Y. 1987) .............................................................................................6

*Mass. Laborers' Annuity Fund v. Encysive Pharm., Inc.*,
    No. 06-3022, slip op. (S.D. Tex. Mar. 20, 2007) ...................................................................10

*Morrison v. National Australia Bank, Ltd.*,
    130 S. Ct. 2869 (2010)...........................................................................................................10

*Olsen v. New York Cmty. Bancorp., Inc.*,
    233 F.R.D. 101 (E.D.N.Y. 2005) .............................................................................................9

*Police & Fire Retirement System of the City of Detroit v. SafeNet, Inc.*,
    06-cv-5797, 2007 U.S. Dist. LEXIS 97959 (S.D.N.Y. Feb. 21, 2007) (Crotty, J.) ...............1, 4

*Reimer v. Ambac Fin. Group, Inc.*,
    No. 08 Civ. 411 (NRB), 2008 WL 2073931 (S.D.N.Y May 9, 2008)......................................5

*Ruggiero v. Am. Bioculture, Inc.*,
    56 F.R.D. 93 (S.D.N.Y. 1972) .................................................................................................7

*Ruland v. InfoSonics Corp.*,
    No. 06CV1231 BTMWMC, 2006 WL 3746716 (S.D. Cal. Oct. 23, 2006) ............................4

*Security Police and Fire Professionals of America Retirement Fund v. Blankfein*,
 No. 650740/2009 (N.Y. Sup. Ct. 2009) ....................................................................................7

*Sgalambo v. McKenzie*,
 -- F.R.D. --, No. 09 Civ. 10087(SAS), 2010 WL 1222062 (S.D.N.Y. Mar. 29, 2010) ...........10

*Varghese v. China Shenghuo Pharm. Holdings, Inc.*,
 589 F. Supp. 2d 388 (S.D.N.Y. 2008).......................................................................................5

*Vladimir v. Bioenvision, Inc.*,
 No. 07 Civ. 6416 (SHS)(AJP), 2007 WL 4526532 (S.D.N.Y. Dec. 21, 2007) .........................5

*W.R. Huff Asset Management Co. v. Deloitte & Touche LLP*,
 549 F.3d 100 (2d Cir. 2008)..................................................................................................8, 9

*Weinberg v. Atlas Air Worldwide Holdings, Inc.*,
 216 F.R.D. 248 (S.D.N.Y. 2003) ..........................................................................................7, 8

*Weiss v. Friedman, Billings, Ramsey Group, Inc.*,
 No. 05-CV-04617(RJH), 2006 WL 197036 (S.D.N.Y. Jan. 25, 2006)..................................3, 6

*Weisz v. Calpine Corp.*,
 No. 4L02-CV-1200, 2002 WL 32818827 (N.D. Cal. Aug. 19, 2002).......................................4

*Welmon v. Chicago Bridge & Iron Co. N.V.*,
 No. 06-CV-01283 (JES), slip. op. (S.D.N.Y. May 11, 2006)....................................................9

**OTHER AUTHORITIES**

Fed. R. Civ. P. 23................................................................................................................................2

## PRELIMINARY STATEMENT

The Institutional Investor Group[1] has the largest financial interest under the Private Securities Litigation Reform Act ("PSLRA") and this Court's holding in *Police & Fire Retirement System of the City of Detroit v. SafeNet, Inc.*, 06-cv-5797, 2007 U.S. Dist. LEXIS 97959 (S.D.N.Y. Feb. 21, 2007) (Crotty, J.) ("*SafeNet*"). Indeed, the Pension Fund Group concedes that the Institutional Investor Group has a larger financial interest measured under two of the *Lax* factors considered by courts. Moreover, one of the Pension Fund Group's three members—West Virginia Investment Management Board ("West Virginia")—is a **net seller** that made money from the fraud throughout most of the Class Period and cannot be considered for appointment as lead plaintiff.[2] When West Virginia is properly excluded, the Institutional Investor Group has a significantly larger financial interest than the Pension Fund Group under all four of the *Lax* factors, including financial loss. Even if West Virginia's transactions in Goldman stock are included, however, the Institutional Investor Group *still* has a financial interest that is **33% larger** than the Pension Fund Group under two *Lax* factors—net purchases and net expenditures—considered by many courts to provide the most accurate and objective assessment of financial interest. Moreover, even when West Virginia is included, the difference between the losses incurred by the two groups is *de minimis*.

Recognizing the Institutional Investor Group's larger financial interest and presumptive status as Lead Plaintiff, the Pension Fund Group resorts to unsubstantiated attacks on one member of the Institutional Investor Group and its chosen counsel. Such speculative arguments—premised on errors of fact and law—fall far short of the ***proof*** required by the

---

[1] The Institutional Investor Group is comprised of the Montana Board of Investments ("Montana BOI"), Metzler Investment GmbH ("Metzler"), and Sampension KP Livsforsikring A/S ("Sampension").

[2] The other members of the Pension Fund Group are the Plumbers & Pipefitters National Pension Fund ("Pipefitters") and the Arkansas Teachers Retirement System ("Arkansas Teachers").

PSLRA to rebut the presumption entitling the Institutional Investor Group to appointment as Lead Plaintiff.

Indeed, the Pension Fund Group's contentions appear to be an attempt to distract from the real dispute between the parties, and reveal the weakness of its motion. For example, the Pension Fund Group insinuates that the Institutional Investor Group is inadequate because one of its two proposed lead counsel, Grant & Eisenhofer, P.A. ("Grant & Eisenhofer"), served as counsel in a separate derivative action involving wholly unrelated claims regarding executive compensation practices at Goldman that was largely resolved prior to the filing of the initial complaint in this case. Grant & Eisenhofer's role in a matter that has essentially concluded—involving claims that have no connection to the fraud here—poses no conflict whatsoever to the firm serving as Co-Lead Counsel. The remainder of Pension Fund Group's opposition brief rehashes arguments against Metzler that have been repeatedly rejected by numerous courts. Metzler—which has been appointed as Lead Plaintiff in numerous actions and achieved successful results in that role—satisfies the adequacy and typicality requirements of Rule 23, has established its Article III standing, and has committed to vigorously pursuing the claims of the Class. For all these reasons, the Institutional Investor Group respectfully requests that it be appointed as Lead Plaintiff and its motion otherwise granted.

## ARGUMENT

### I. THE INSTITUTIONAL INVESTOR GROUP HAS THE LARGEST FINANICAL INTEREST IN THE LITIGATION

The Institutional Investor Group has a larger financial interest than does the Pension Fund Group, regardless of whether Wesst Virginia is excluded as a net seller. But the law is clear that a net seller such as West Virginia cannot serve as Lead Plaintiff. *Borochoff v. GlaxosmithKline PLC*, 246 F.R.D. 201, 205 (S.D.N.Y. 2007) (refusing to appoint "net seller"

because "it does not adequately represent the proposed class of purchasers"); *In re the Mills Corp.*, No. Civ. A. 1:06-77(GEL), 2006 WL 2035391, at *3 (S.D.N.Y. May 30, 2006) (rejecting net seller that asserted largest loss).

The Pension Fund Group does not dispute that West Virginia is a net seller. Instead, the Pension Fund Group claims that the number of net shares is immaterial here because there were partial disclosures of the fraud at Goldman, suggesting that West Virginia was *not* a net seller as of the earlier partial disclosure dates. PFG Opp. at 4.[3] Not so. In fact, West Virginia was a net seller as of 7 out of the 9 dates on which the filed complaints allege that partial disclosures of the alleged fraud reached the market, meaning that West Virginia had sold more shares than it had purchased—and had arguably profited from the fraud—at nearly every relevant point during the class period. Indeed, as of five of those dates, including the first partial disclosure on September 9, 2008, West Virginia sold between 27,700 to 32,600 more shares than it had purchased, revealing the tremendous benefit it received from selling Goldman shares at inflated prices.[4] *See* Net Shares Chart, attached as Ex. A to the Reply Declaration of Salvatore J. Graziano ("Graziano Reply Decl."). Moreover, West Virginia also had *net gains* on its transactions in Goldman securities as of 5 of the 9 partial disclosure dates, meaning that on the days when news of the Goldman fraud first reached investors, West Virginia had actually made money in its trading of Goldman securities by selling more shares than it purchased. *See* Net Expenditures Chart,

---

[3] "PFG Opp." refers to the Pension Funds' Mem. in Opp'n to Competing Mots. for Appt. as Lead Pl. (Dkt. #24); "IIG Opp." refers to Mem. in Further Supp. Institutional Investor Group for Appt. Lead Pl. (Dkt. #26).

[4] By contrast, in *Weiss v. Friedman, Billings, Ramsey Group, Inc.*, No. 05-CV-04617(RJH), 2006 WL 197036 (S.D.N.Y. Jan. 25, 2006), relied on by the Pension Fund Group, the number of net shares factor was not given as much weight because the successful movant had purchased 83.4% of its shares *prior* to the initial partial disclosure, and sold those shares following revelations of the fraud. *Id.* at *4. Here, West Virginia had *sold* 27,700 more shares than it had purchased and had reaped $3.9 million in net proceeds through its trading in Goldman securities as of the first partial disclosure. *See* Chart Comparing the Institutional Investor Group's and the Pension Fund Group's Net Shares and Net Expenditures Through Pleaded Partial Disclosures, Graziano Reply Decl., Ex. C.

Graziano Reply Decl., Ex. B.[5] A movant with such trading infirmities—and who arguably benefited from the fraud—is not a suitable representative for the Class.

Even if West Virginia were to be included, the Institutional Investor Group's financial interest in this litigation far exceeds that of the Pension Fund Group. Specifically, the Institutional Investor Group purchased **33%** more net shares and expended **33%** more on a net basis than the Pension Fund Group—a substantial difference under two metrics considered by many courts to be "determinative" of financial interest.[6] The Pension Fund Group concedes that the Institutional Investor Group has the larger loss under those critical *Lax* factors, but contends that its loss (the fourth *Lax* factor), which is immaterially larger than the Institutional Investor Group's only if West Virginia is included, should somehow trump those factors.

Given this disparity on net shares and net expenditures, the Pension Fund Group's nominally larger LIFO loss cannot "dictate" the result in this case, especially considering that the group's mere 8% advantage is only achieved by including the trades of an inappropriate net seller.[7] *See SafeNet,* 2007 U.S. Dist. LEXIS 97959, at *6 (slightly larger loss could not "dictate" result because the opposing movant group had substantially larger financial interest as measured under remaining *Lax* factors); *In re the Mills Corp.*, 2006 WL 2035391, at *3 (rejecting net seller

---

[5] By contrast, none of the members of the Institutional Investor Group were net sellers or net gainers as of any of the partial disclosure dates pleaded in the filed complaints. *See* Graziano Reply Decl., Ex. C.

[6] *See, e.g., In re Cable & Wireless, PLC Sec. Litig.*, 217 F.R.D. 372, 375 n.4 (E.D. Va. 2003) (considering net shares purchased in assessing financial interest and appointing movant with largest net funds expended); *In re The Mills Corp.*, 2006 WL 2035391, at *3 (appointing as lead plaintiff the movant that asserted the largest net funds expended over objection of movant that asserted larger FIFO and LIFO losses); *Weisz v. Calpine Corp.*, No. 4L02-CV-1200, 2002 WL 32818827, at *7 (N.D. Cal. Aug. 19, 2002) (same); *In re Network Assocs.*, 76 F. Supp. 2d 1017, 1027 (N.D. Cal. 1999) (concluding that the number of net shares purchased was the best measure of financial interest as "the candidate with the most net shares purchased will normally have the largest potential damage recovery"); *In re Critical Path, Inc.*, 156 F. Supp. 2d 1102, 1108 (number of net shares purchased "determinative" of financial interest); *Ruland v. InfoSonics Corp.*, No. 06CV1231 BTMWMC, 2006 WL 3746716, at *6 (S.D. Cal. Oct. 23, 2006) (same).

[7] The Institutional Investor Group's opposition brief corrected an error in Montana BOI's financial interest calculations, but that correction was not reflected in the group's totals. To clarify, the Institutional Investor Group has LIFO losses of $13.2 million, not $13.4 million, and net expenditures of $33.4 million, not $33.6 million.

that asserted largest loss and appointing movant with largest net expenditures); *In re Doral Fin. Corp. Sec. Litig.*, 414 F. Supp. 2d 398, 403 (S.D.N.Y. 2006) (holding 17% difference in losses to be "roughly equal" and appointing movant with smaller loss).

Recognizing that the Institutional Investor Group has a significantly larger financial interest even when including West Virginia—including a ***33% larger*** financial interest under two of the most important *Lax* factors—the Pension Fund Group unsurprisingly attempts to switch gears to focus on FIFO losses. As the members of the Pension Fund Group are well aware, courts in this District overwhelmingly favor LIFO over FIFO. *See, e.g., In re eSpeed, Inc. Sec. Litig.*, 232 F.R.D. 95, 101 (S.D.N.Y. 2005) (unlike LIFO, FIFO has a tendency to "exaggerate losses"); *In re Doral Fin. Corp.*, 414 F. Supp. 2d at 403 n.7 (appointing West Virginia, explaining that FIFO "has fallen out of favor in this District"); *In re Cable & Wireless*, 217 F.R.D. at 379 (rejecting West Virginia as member of a group that used FIFO, "an unaccepted method of calculating its loss").

When properly focusing on LIFO, the 8% difference between the movants' losses is inconclusive of the parties' respective financial interest in this action, and the Court must turn to the remaining *Lax* factors.[8] As in *Safenet*, the Institutional Investor Group's substantially larger financial interest as measured under net shares purchased and net funds expended—a difference of over 33%—confirms it is the presumptively most adequate plaintiff and is entitled to

---

[8] The cases relied on by the Pension Fund Group to argue that only losses be considered are wholly inapposite. In each, the successful lead plaintiff movant asserted losses that were substantially greater, and in most cases multiples larger, than the competing movant's. *See, e.g., Kaplan v. Gelfond*, 240 F.R.D. 88, 93-94 (S.D.N.Y. 2008) (successful movant's losses were 7.5 times greater); *In re Fuwei Films Sec. Litig.*, 247 F.R.D. 432, 437 (S.D.N.Y. 2008) (successful movant's losses were three times greater than next two movants' combined); *Varghese v. China Shenghuo Pharm. Holdings, Inc.*, 589 F. Supp. 2d 388, 395 (S.D.N.Y. 2008) (successful movant's losses between two to four times greater); *Reimer v. Ambac Fin. Group, Inc.*, No. 08 Civ. 411 (NRB), 2008 WL 2073931, at *3 (S.D.N.Y May 9, 2008) (between 7.5 and 11 times greater). Even in cases where there were small dollar amounts between the movants' losses, the actual percentage difference was quite substantial and, in any case, far greater than the 8% discrepancy here. *See, e.g., Vladimir v. Bioenvision, Inc.*, No. 07 Civ. 6416 (SHS)(AJP), 2007 WL 4526532

appointment as Lead Plaintiff under the PSLRA. Accordingly, the Institutional Investor Group has the largest financial interest and should be appointed as Lead Plaintiff.

## II. THE INSTITUTIONAL INVESTOR GROUP'S COUNSEL IS NOT CONFLICTED

Unable to establish the largest financial interest in this litigation, the Pension Fund Group resorts to baseless attacks on the Institutional Investor Group's counsel. Specifically, the Pension Fund Group contends that Grant & Eisenhofer—one of the Institutional Investor Group's counsel—cannot represent Goldman shareholders in this case because of its representation of Goldman shareholders in a derivative action, *Central Laborers' Pension Fund v. Blankfein*, No. 600036/2010 (N.Y. Sup. Ct. 2010)—a case in which the plaintiffs moved to dismiss the substantive claims nearly three months ago. Even if this case were ongoing, however, a number of courts have held that a conflict does not arise merely because a law firm is litigating both derivative and direct actions involving the same company.[9] Further, the cases cited by the Pension Fund Group are inapposite as they address the situation where a law firm seeks to represent plaintiffs in both a derivative and direct action involving the ***same*** transaction and/or factual issues.[10]

---

(S.D.N.Y. Dec. 21, 2007) ($76,000 difference was four-and-a-half times larger); *Weiss*, 2006 WL 197036, at *3 ($121,000 difference represented 15% discrepancy).

[9] *See, e.g., First Am. Bank and Trust by Levitt v. Frogel*, 726 F. Supp. 1292 (S.D. Fla. 1989) (shareholder could properly represent a shareholder class and derivative claim); *Grace v. Rosenstock*, No. CV-85-2039, 1986 WL 2709 (E.D.N.Y. Mar. 6, 1986) (approving plaintiffs' simultaneous prosecution of individual, derivative, and class claims); *Angel Investors, LLC v. Garrity*, 216 P. 3d 944, 953 (Utah 2009) (holding "conflict of interest" arises only when a "shareholder cannot act in the best interest of the corporation or similarly situated shareholders").

[10] *See, e.g., Kamerman v. Steinberg*, 113 F.R.D. 511, 516 (S.D.N.Y. 1986) (denying class certification because two named plaintiffs were simultaneously pursuing "shareholder derivative action ***arising out of these same transactions***") (emphasis added); *Hawk Indus., Inc. v. Bausch & Lomb, Inc.*, 59 F.R.D. 619, 624 (S.D.N.Y. 1973) (precluding one law firm from representing a shareholder class that was simultaneously litigating a derivative lawsuit, but allowing its co-counsel to continue to represent the class); *In re Cont'l Sec. Litig.*, 82 C 4712, 1984 U.S. Dist. LEXIS 17778, at *1 (N.D. Ill. Apr. 9, 1984) (disqualifying counsel from "***simultaneously*** representing plaintiffs in the class action and in the derivative action") (emphasis added); *Koenig v. Benson*, 117 F.R.D. 330, 334 (E.D.N.Y. 1987) (denying plaintiff's motion to be appointed class representative because both plaintiff and its counsel filed a derivative suit relating to the same issues in direct action); *Ruggiero v. Am. Bioculture, Inc.*, 56

Contrary to the Pension Fund Group's insinuation, the *Central Laborers'* derivative action—which involved a challenge to Goldman's compensation practices during the 2009 fiscal year that has no factual or legal bearing on the fraud claims asserted here—was resolved before any of the direct securities fraud class actions were filed.[11]  Specifically, immediately after Goldman's announcement on January 21, 2010 that it was reforming its compensation practices, rendering the action moot, the plaintiff shareholders informed the court on January 22, 2010 that they would move to dismiss the derivative case.  *See* Graziano Reply Decl., Ex. D.  The plaintiffs motion to dismiss and for an award of attorneys' fees—which Goldman has opposed—is the only issue remaining in the case.[12]  The first of the securities fraud class actions pending before the Court was filed on April 20, 2010, several months later.  Given this clear-cut chronology of events, there can be no doubt that Grant & Eisenhofer is free of conflict and is a proper advocate for Goldman shareholders' direct claims.  *See, e.g., Weinberg v. Atlas Air Worldwide Holdings, Inc.*, 216 F.R.D. 248, 256 (S.D.N.Y. 2003) (dismissing argument that movant and counsel were inadequate to serve as lead in PSLRA action, as their withdrawal from derivative action rendered any potential conflict "moot").[13]  The distasteful suggestion that the firm dismissed *Central Laborers*' action in order to seek a role in this action should be rejected out of hand.[14]

---

F.R.D. 93, 95 (S.D.N.Y. 1972) (rejecting class certification where plaintiffs alleged derivative and direct claims based on the same transactions).

[11] *See Security Police and Fire Professionals of America Retirement Fund v. Blankfein*, No. 650740/2009 (N.Y. Sup. Ct. 2009), Shareholder Derivative Complaint, dated December 14, 2009, ¶1.

[12]  As noted in the second sentence of the derivative plaintiffs' brief seeking an award of attorneys' fees, attached as Ex. D to the Pension Fund Group's own opposition declaration (Dkt. #25-4), "[b]y present motion, Plaintiffs seek an Order dismissing this consolidated Action as moot."

[13] *See also Blecker v. Lazard Freres & Co.*, 73. Civ. 4057, 1974 WL 365, *1 (S.D.N.Y. Jan. 18, 1974) (no conflict existed because firm withdrew from direct action "two days prior to the institution of the [derivative] action").

[14] Even assuming, *arguendo*, that the final matters to be resolved in the derivative action gave rise to some conflict, the fact that the Institutional Investor Group is represented jointly by both Grant & Eisenhofer and Bernstein Litowitz Berger & Grossmann LLP is more than sufficient to alleviate any concern regarding the representation of the Class in this case.  Under such a joint leadership structure, it is inconceivable that the interests of the Institutional

### III. METZLER IS NOT SUBJECT TO ANY UNIQUE DEFENSES

#### A. METZLER HAS STANDING TO SUE

In addition to mounting factually incorrect challenges to the Institutional Investor Group's counsel, Pension Fund Group falsely asserts that Metzler is "an investment manager that lacks standing and a timely assignment of claims." PFG Opp. at 11.

Metzler unquestionably has standing to sue in its own name because, unlike an "investment manager," Metzler owns the accounts in which it purchased the Goldman shares at issue in this litigation. Specifically, Metzler is an investment company organized under German law as a Kapitalanlagegesellschaft or "KAG." As a KAG, Metzler owns and manages the twelve funds identified in the Metzler Certification and makes investments in those segregated accounts in its "own name" and for the "economic benefit" of the funds. German Investment Act of 15 December 2003 ("German Investment Act"), §§ 9(1) and 11(2). Thus, under the German Investment Act, a KAG operates like a trust, and only a KAG such as Metzler has the authority to make investment decisions for the investment funds that it manages and to sue to recover any losses incurred by those funds.

Because of these factors, a court in this district has already held that German investment companies like Metzler have standing to sue for losses suffered by its funds under management, without any need for assignments of claims. *See In re Vivendi Universal, S.A. Sec. Litig.*, 605 F. Supp. 2d 570 (S.D.N.Y. 2009). After examining the holding in *W.R. Huff Asset Management Co. v. Deloitte & Touche LLP*, 549 F.3d 100 (2d Cir. 2008) and weighing expert testimony, the *Vivendi* court acknowledged the standing of the German investment companies to sue, holding that a KAG was not a mere investment manager and that "plaintiffs who are KAGs qualify under

---

Investor Group and the Class would be subordinated to, or otherwise prejudiced by, Grant & Eisenhofer's prior role as an advocate for Goldman shareholders in the *Central Laborers* action.

the *Huff* exception…[as] statutory authority, independent of the fund rules, grants the KAGs exclusive authority to sue on behalf of the funds." *Vivendi*, 605 F. Supp. 2d at 578.

### B. METZLER IS NOT SUBJECT TO UNIQUE DEFENSES

Finally, the Pension Fund Group speculates that Metzler—which has served as a court-appointed Lead Plaintiff in multiple actions under the PSLRA—is subject to a "unique defense" based on the "risk" that German courts might not give a judgment of this Court *res judicata* effect. PFG Opp. at 15.[15] The Pension Fund Group is wrong.

As set forth in the Institutional Investor Group's opposition papers, German investors such as Metzler have been appointed lead plaintiff in numerous cases under the PSLRA. IIG Opp. at 15-6.[16] Significantly, Metzler itself has been appointed as Lead Plaintiff in *five* different securities class actions, and has successfully represented shareholder classes in that role.[17] Remarkably, one member of the Pension Fund Group, Pipefitters, and its counsel here, Robbins Geller Rudman & Dowd LLP ("Robbins Geller"), have made the exact same arguments to disqualify Metzler in numerous prior cases and have been unsuccessful in each. For example, the court in *In re Molson Coors Brewing Company* rejected the very same argument lodged by

---

[15] In a footnote, the Pension Fund Group asserts that Metzler's co-movant, Sampension, "may similarly be distracted by standing and *res judicata* issues" but does not elaborate on this argument except to cite *Vivendi* for the proposition that "Danish investment companies Danske and Nordea Invest do not fall within the *Huff* exception and therefore do not have standing to bring suit." (PFG Opp. at n. 12). As evident from the Joint Declaration (at ¶4), Sampension is *not* an investment company, but a pension fund created for the benefit of local government employees and workers in the graphical arts industry, and thus has direct claims and as much standing to sue as any of the pension funds comprising the Pension Fund Group.

[16] Significantly, one of the Public Fund Group's counsel, Labaton Sucharow, represented a German entity, Deka Investment GmbH, in *In re General Motors Corp. Sec. Litig.*, MDL No. 1749 (E.D. Mich.). At the time of settlement, Labaton affirmatively argued to the court in seeking approval of the settlement and a settlement class that Deka Investment GmbH (and other lead plaintiffs) had fully and adequately represented the class. *See* Lead Pls.' Mot. for (I) Final Approval of Settlement and (II) Class Certification for Settlement Purposes, at 28, *In re General Motors Corp. Sec. Litig.,* No. 2:06-md-1749-GER (E.D. Mich. Dec. 2, 2008), Reply Graziano Decl., Ex. E.

[17] *See In re Molson Coors Brewing Co. Sec. Litig.*, 233 F.R.D. 147 (D. Del. 2005); *Olsen v. New York Cmty. Bancorp., Inc.*, 233 F.R.D. 101, 109 (E.D.N.Y. 2005); *Welmon v. Chicago Bridge & Iron Co. N.V.*, No. 06-CV-01283 (JES) (S.D.N.Y. May 11, 2006); *In re Corinthian Colls. Inc. S'holder Litig.,* No. 04-CV-5025 (C.D. Cal. Nov. 1, 2004); *South Ferry LP #2 v. Killinger,* No. 2:04-CV-01599 (W.D. Wa. Nov. 30, 2004).

Pipefitters and Robbins Geller over five years ago that they resurrect against Metzler here. After noting Robins Geller's prior attempts at the same argument, the *Molson* court held that the Pipefitters' contention that a German court would not give *res judicata* effect to a U.S. judgment was a "red herring" and mere "conjecture," and that the defense was not unique to Metzler but "would apply to any and all members of the putative class." *Molson*, 233 F.R.D. at 153.[18]

The cases in which foreign plaintiffs have been rejected at the lead plaintiff or class certification stage on *res judicata* grounds are distinguishable because those cases involve transactions on foreign exchanges and the concern that foreign courts might view judgments rendered by U.S. courts as over-reaching.[19] Here, in contrast, Metzler's claims arise from transactions in Goldman securities on the New York Stock Exchange ("NYSE") which, following the Supreme Court's decision in *Morrison v. National Australia Bank, Ltd.*, 130 S. Ct. 2869 (2010), renders any speculation regarding the propriety of this Court's judgment particularly inappropriate. *See* IIG Opp. at 17-18 & n.10.[20]

## CONCLUSION

For the above reasons, and those set forth in its prior submissions, the Institutional Investor Group respectfully requests that the Court grant its motion.

Dated: July 22, 2010  
      New York, New York

Respectfully submitted,

**BERNSTEIN LITOWITZ BERGER**
**& GROSSMANN LLP**

By: /s/ Salvatore J. Graziano

---

[18] *See also Mass. Laborers' Annuity Fund v. Encysive Pharm., Inc.*, No. 06-3022, slip op., at 10 (S.D. Tex. Mar. 20, 2007) (rejecting *res judicata* argument because the foreign investor "affirmed that it and its funds will be bound by any judgment or other order in this case").

[19] *Cf. In re Vivendi Universal, S.A.*, 242 F.R.D. 76, 81 (S.D.N.Y. 2007) (involving German purchasers of shares of a French company traded on the Paris bourse); *Borochoff v. Glaxosmithkline*, 246 F.R.D. 201, 203 (S.D.N.Y. 2007) (involving German investors who purchased shares of a British company traded on the London stock exchange).

[20] *See also Sgalambo v. McKenzie*, -- F.R.D. --, No. 09 Civ. 10087(SAS), 2010 WL 1222062, at *4 (S.D.N.Y. Mar. 29, 2010) (holding reliance on *Borochoff* "misplaced" because foreigners' claims involved U.S.-listed securities).

Salvatore J. Graziano
Gerald H. Silk
Avi Josefson
Michael D. Blatchley
1285 Avenue of the Americas
New York, NY 10019
Telephone: (212) 554 1400
Facsimile: (212) 554 1444

**BERNSTEIN LITOWITZ BERGER**
  **& GROSSMANN LLP**
Blair A. Nicholas
12481 High Bluff Drive
Suite 300
San Diego, CA 92130
Telephone: (858) 793-0070
Facsimile: (858) 793-0323

*Counsel for the Institutional Investor Group
and Proposed Co-Lead Counsel for the Class*

**GRANT & EISENHOFER P.A.**
Jay W. Eisenhofer
Geoffrey C. Jarvis
Hung G. Ta
485 Lexington Ave 29th Floor
New York, New York 10017
Tel: (646) 722-8500
Fax: (646) 722-8501

*Counsel for the Institutional Investor Group
and Proposed Co-Lead Counsel for the Class*

**BARRACK, RODOS & BACINE**

Leonard Barrack
Daniel E. Bacine
M. Richard Komins
Two Commerce Square
2001 Market Street
Suite 3300
Philadelphia, PA 19103
Telephone: (215) 963-0600
Facsimile:  (212) 963-0838

**BARRACK, RODOS & BACINE**
A. Arnold Gershon

11

William J. Ban
1350 Broadway
Suite 1001
New York, NY 10018
Telephone: (212) 688-0782
Facsimile: (212) 688-0783

*Additional Counsel for Montana Board of Investments*

**BARROWAY TOPAZ KESSLER
   MELTZER & CHECK, LLP**
Sean M. Handler
280 King of Prussia Road
Radnor, PA 19087
Telephone: (610) 667-7706
Facsimile: (610) 667-7056

*Additional Counsel for Sampension KP Livsforsikring A/S*