**Ex. E**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

IN RE GENERAL MOTORS CORP.
SECURITIES AND DERIVATIVE
LITIGATION

MDL No. 1749
Master Case No. 06-md-1749
Hon. Gerald E. Rosen
This Document Relates to:
2:06-cv-12258-GER
2:06-cv-12259-GER

_____ /

## LEAD PLAINTIFFS' MOTION FOR (I) FINAL APPROVAL OF SETTLEMENT AND (II) CERTIFICATION OF THE CLASS FOR SETTLEMENT PURPOSES

**GRANT & EISENHOFER P.A.**
Jay W. Eisenhofer
James J. Sabella
Brenda F. Szydlo
485 Lexington Avenue, 29th Floor
New York, NY 10017
(646) 722-8500
jsabella@gelaw.com

**LABATON SUCHAROW LLP**
Jonathan M. Plasse
Richard T. Joffe
Bruce E. Stanton
140 Broadway
New York, NY 10005
(212) 907-0700
jplasse@labaton.com

*Co-Lead Counsel for Lead Plaintiffs*

**ELWOOD SIMON & ASSOCIATES**
Elwood S. Simon
355 S. Old Woodward Avenue, Suite 250
Birmingham, MI  48009
(248) 646-9730
esimon@esimon-law.com

**DIAZ REUS & TARG LLP**
Alexander Reus
100 SE Second Street, Suite 2610
Miami, FL 33131
(786) 235-5000
areus@drrt.com

*Counsel for Plaintiffs*

Lead Plaintiffs, Deka Investment GmbH ("Deka Investment") and Deka International

S.A., Luxembourg ("Deka International") ("Deka" or "Lead Plaintiffs"), respectfully submit this

motion pursuant to Rule 23 of the Federal Rules of Civil Procedure for a entry of an Order

(i) certifying the Class for settlement purposes, and (ii) approving the settlement Lead Plaintiffs

reached with all Defendants.

After an extensive mediation conducted by Honorable Layn R. Phillips and Honorable

Thomas R. Brett, a proposed settlement (the "Settlement") has been reached resolving Lead

Plaintiffs' claims for $303,000,000 in cash. Pursuant to the terms of the Settlement, Defendants

have has already paid $164,500,000 in cash into an interest bearing escrow account being held

for the benefit of the Class, and the remaining $138,500,000 will be paid into escrow on January

5, 2009. For the reasons discussed in Lead Plaintiffs' accompanying memorandum of law and

the Joint Declaration of James J. Sabella and Jonathan M. Plasse, it is respectfully submitted that

the relief sought herein should be granted.

Dated: December 2, 2008            Respectfully submitted,

**GRANT & EISENHOFER P.A.**        **LABATON SUCHAROW LLP**

By _____/s/ James J. Sabella_____      By _____/s/ Jonathan M. Plasse_____
Jay W. Eisenhofer                        Jonathan M. Plasse
James J. Sabella                          Richard T. Joffe
Brenda F. Szydlo                       Bruce E. Stanton
485 Lexington Avenue, 29th Floor     140 Broadway
New York, NY 10017                   New York, NY 10005
(646) 722-8500                        (212) 907-0700
jsabella@gelaw.com                jplasse@labaton.com

*Co-Lead Counsel for Lead Plaintiffs*

**ELWOOD SIMON & ASSOCIATES**

**DIAZ REUS & TARG LLP**

By    /s/ Elwood S. Simon
Elwood S. Simon
355 S. Old Woodward Avenue, Suite 250
Birmingham, MI 48009
(248) 646-9730
esimon@esimon-law.com

By    /s/ Alexander Reus
Alexander Reus
100 SE Second Street, Suite 2610
Miami, FL 33131
(786) 235-5000
areus@drrt.com

*Counsel for Plaintiffs*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

IN RE GENERAL MOTORS CORP.
SECURITIES AND DERIVATIVE
LITIGATION

MDL No. 1749
Master Case No. 06-md-1749
Hon. Gerald E. Rosen
This Document Relates to:
2:06-cv-12258-GER
2:06-cv-12259-GER

_____ /

## LEAD PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR (I) FINAL APPROVAL OF SETTLEMENT AND (II) CERTIFICATION OF THE CLASS FOR SETTLEMENT PURPOSES

**GRANT & EISENHOFER P.A.**
Jay W. Eisenhofer
James J. Sabella
Brenda F. Szydlo
485 Lexington Avenue, 29th Floor
New York, NY 10017
(646) 722-8500
jsabella@gelaw.com

**LABATON SUCHAROW LLP**
Jonathan M. Plasse
Richard T. Joffe
Bruce E. Stanton
140 Broadway
New York, NY 10005
(212) 907-0700
jplasse@labaton.com

*Co-Lead Counsel for Lead Plaintiffs*

**ELWOOD SIMON & ASSOCIATES**
Elwood S. Simon
355 S. Old Woodward Avenue, Suite 250
Birmingham, MI 48009
(248) 646-9730
esimon@esimon-law.com

**DIAZ REUS & TARG LLP**
Alexander Reus
100 SE Second Street, Suite 2610
Miami, FL 33131
(786) 235-5000
areus@drrt.com

*Counsel for Plaintiffs*

## STATEMENT OF ISSUES PRESENTED

Pursuant to Local Rule 7.1(c)(2), Lead Plaintiffs identify the following issues presented:

1.   Whether the Court should grant final approval of the Settlement as fair, adequate, and reasonable.

2.   Whether the Court should grant final certification of the Class it preliminarily certified for purposes of receiving the benefits of the Settlement; and

3.   Whether the Court should approve the Plan of Allocation.

## STATEMENT OF CONTROLLING
### OR MOST APPROPRIATE AUTHORITY

Pursuant to Local Rule 7.1(c)(2), Lead Plaintiffs identify the following controlling or most appropriate authority for the relief sought:

FED. R. CIV. P. 23

*In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508 (E.D. Mich. 2003)

*In re Delphi Corp. Sec., Deriv. & "ERISA" Litig.*, 248 F.R.D. 483 (E.D. Mich. 2008)

*Int'l Union, UAW v. Ford Motor Co.*, Nos. 05-74730 & 06-10331, 2006 U.S. Dist. LEXIS 70471 (E.D. Mich. July 13, 2006), *aff'd by UAW v. GMC*, 497 F.3d 615 (6th Cir. 2007)

*In re Rio Hair Naturalizer Prods. Liab. Litig.*, MDL No. 1055, 1996 U.S. Dist. LEXIS 20440 (E.D. Mich. Dec. 20, 1996) (Rosen, J.)

*UAW v. GMC*, 497 F.3d 615 (6th Cir. 2007)

ii

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ........................................................................................................v

PRELIMINARY STATEMENT ..................................................................................................1

BACKGROUND OF THE SETTLEMENT.................................................................................4

    A.    Lead Plaintiffs' Bases for Recommending the Settlement ......................................4

    B.    The Settlement Terms ..............................................................................................5

ARGUMENT ...............................................................................................................................6

I.      THE SETTLEMENT IS FAIR, REASONABLE AND ADEQUATE,
       AND SHOULD BE APPROVED ........................................................................................6

    A.    Standards for Approval of Class Action Settlements ..............................................6

    B.    Notice Was Disseminated as Ordered......................................................................7

    C.    The Settlement Satisfies the Sixth Circuit's Criteria for
        Final Approval .........................................................................................................8

        1.    Likelihood of Success on the Merits Weighed Against the
            Amount and Form of the Relief Offered in the Settlement
            Supports Approval ......................................................................................9

            a.    The Settlement Provides Exceptional Relief ...................................9

            b.    Uncertainty of Success on the Merits ...........................................11

                (i)    The Court Had Yet To Decide the Motions to Dismiss.....11

                (ii)    No Governmental Case Has Been Brought .......................11

                (iii)    Risks Inherent in Securities Litigation..............................11

                (iv)    Risks of Trial and Appeal .................................................13

        2.    Risks, Expense, and Delay of Further Litigation.......................................14

        3.    Judgment of Experienced Counsel Who Have Competently
            Evaluated the Strength of Their Proofs Supports Approval ......................16

a. Judgment of Counsel..........................................................16

b. Judgment of the Special Master...................................16

4. Amount of Discovery Completed and Character of Evidence
Uncovered Supports Approval..............................................16

5. The Settlement Is Fair to Unnamed Class Members .................19

6. Just One Class Member Has Objected, Without Basis,
to the Settlement .........................................................................20

7. The Settlement Is the Product of Arm's-Length
Negotiations as Opposed to Collusive Bargaining ....................21

8. The Settlement Is Consistent With the Public Interest ..............22

II.     THE PLAN OF ALLOCATION SHOULD BE APPROVED .........................23

III.    CERTIFICATION OF THE CLASS FOR SETTLEMENT PURPOSES
IS PROPER AND WARRANTED.....................................................................26

A.      Prerequisites of Rule 23(a) Are Satisfied.............................................26

1. The Class Is Sufficiently Numerous .........................................26

2. There Are Common Questions of Law and Fact .......................27

3. The Class Representatives' Claims Are Typical of
Those of the Class......................................................................27

4. The Class Representatives Have and Will Continue to
Fairly and Adequately Protect the Interests of the Class ...........28

B.      The Proposed Class Satisfies the Prerequisites of Rule 23(b)(3) .........29

1. Common Legal and Factual Questions Predominate.................29

2. A Class Action Is Superior to Other Methods of Adjudication ................30

CONCLUSION..........................................................................................................................31

## TABLE OF AUTHORITIES

Page

Cases

*Affiliated Ute Citizens of Utah v. United States,*
    406 U.S. 128 (1972)...................................................................................................................31

*Amchem Prods., Inc. v. Windsor,*
    521 U.S. 591 (1997).............................................................................................................28, 29

*Backman v. Polaroid Corp.,*
    910 F.2d 10 (1st Cir. 1990)........................................................................................................14

*Basic Inc. v. Levinson,*
    485 U.S. 224 (1988)...................................................................................................................31

*Bittinger v. Tecumseh Prods. Co.,*
    123 F.3d 877 (6th Cir. 1997) ....................................................................................................26

*Brotherton v. Cleveland,*
    141 F. Supp. 2d 894 (S.D. Ohio 2001) ....................................................................................20

*Bryant v. Universal Servs., Inc.,*
    No. 99-2944, 2000 U.S. Dist. LEXIS 7619 (E.D. La. May 24, 2000)......................................22

*Garst v. The Franklin Life Ins. Co.,*
    No. 97-C-0074-S, 1999 U.S. Dist LEXIS 22666 (N.D. Ala. June 15, 1999) ....................17, 18

*Granada Investments, Inc. v. DWG Corp.,*
    962 F.2d 1203 (6th Cir. 1992) .................................................................................................8, 9

*Hicks v. Stanley,*
    No. 01 Civ. 0071 (RJH), 2005 WL 2757792 (S.D.N.Y. Oct. 24, 2005)..................................21

*In re Am. Med. Sys.,*
    75 F.3d 1069 (6th Cir. 1996) ....................................................................................................28

*In re Aetna Inc. Sec. Litig.,*
    MDL No. 1219, 2001 U.S. Dist. LEXIS 68 (E.D. Pa. Jan. 4, 2001) ........................................15

*In re Blech Sec. Litig.,*
    187 F.R.D. 97 (S.D.N.Y. 1999) ...............................................................................................30

*In re Broadwing, Inc. ERISA Litig.,*
    No. 1:02-cv-00857, 2006 U.S. Dist. LEXIS 72609 (S.D. Ohio Oct. 5, 2006) ......13, 15, 16, 20

*In re Cardizem CD Antitrust Litig.*,
    218 F.R.D. 508 (E.D. Mich. 2003) ............................................................................... *passim*

*In re Delphi Corp. Sec., Deriv. & "ERISA" Litig.*,
    248 F.R.D. 483 (E.D. Mich. 2008) ............................................................................... *passim*

*In re F&M Distribs., Inc. Sec. Litig.*,
    No. 95-CV-71778,1999 U.S. Dist. LEXIS 11090 (E.D. Mich. June 29, 1999)......................10

*In re Ikon Office Solutions, Inc.*,
    194 F.R.D. 166 (E.D. Pa. 2000).......................................................................................11, 24

*In re Indep. Energy Holdings PLC Sec. Litig.*,
    No. 00 Civ. 6689 (SAS), 2003 U.S. Dist. LEXIS 17090 (S.D.N.Y. Sept. 29, 2003) ........21, 22

*Int'l Union, UAW v. Ford Motor Co.*,
    Nos. 05-74730 & 06-10331, 2006 U.S. Dist. LEXIS 70471 (E.D. Mich. July 13,
    2006), *aff'd by UAW v. GMC*, 497 F.3d 615 (6th Cir. 2007) ......................................... *passim*

*In re Inter-Op Hip Prosthesis Liab. Litig.*,
    204 F.R.D. 359 (N.D. Ohio 2001) ...................................................................................29, 31

*In re KMart Corp. Sec. Litig.*,
    No. 95-CS-75584-DT, 1996 U.S. Dist. LEXIS 22609 (E.D. Mich. Dec. 16, 1996) ...26, 27, 30

*In re MicroStrategy, Inc. Sec. Litig.*,
    148 F. Supp. 2d 654 (E.D. Va. 2001) .....................................................................................24

*In re Oracle Sec. Litig.*,
    No. C-90-0931-VRW, 1994 U.S. Dist. LEXIS 21593 (N.D. Cal. June 16, 1994) .................24

*In re Painewebber Ltd. P'ship Litig.*,
    171 F.R.D. 104 (S.D.N.Y. 1997) ....................................................................................23, 24

*In re Prudential Ins. Co. of Am. Sales Practices Litig.*,
    177 F.R.D. 216 (D.N.J. 1997)..............................................................................................7, 9

*In re Revco Sec. Litig.*,
    142 F.R.D. 659 (N.D. Ohio 1992) ...........................................................................................30

*In re Rio Hair Naturalizer Prods. Liab. Litig.*,
    MDL No. 1055, 1996 U.S. Dist. LEXIS 20440 (E.D. Mich. Dec. 20, 1996).....................6, 21

*In re Telectronics Pacing Systems, Inc.*,
    137 F. Supp. 2d 985 (S.D. Ohio 2001) ...................................................................................14

*In re Warner Communics. Sec. Litig.*,
    618 F. Supp. 735 (S.D.N.Y. 1985), *aff'd*, 798 F.2d 35 (2d Cir. 1986)....................................12

*Kogan v. AIMCO Fox Chase, L.P.,*
  193 F.R.D. 496 (E.D. Mich. 2000) ...................................................................................16

*Malchman v. Davis,*
  761 F.2d 893 (2d Cir. 1985)...........................................................................................21

*Maley v. Del Global Techs. Corp.,*
  186 F. Supp. 2d 358 (S.D.N.Y. 2002)............................................................................24

*New England Health Care Employees Pension Fund v. Fruit of the Loom, Inc.,*
  234 F.R.D. 627 (W.D. Ky. 2006).....................................................................................21

*Phillips Petroleum Co. v. Shutts,*
  472 U.S. 797 (1985)........................................................................................................31

*Robbins v. Koger Props.,*
  116 F.3d 1441 (11th Cir. 1997) ......................................................................................14

*Rombach v. Chang,*
  355 F.3d 164 (2d Cir. 2004).............................................................................................30

*Schwartz v. TXU Corp.,*
  No. 3:02-CV-2243-K, 2005 WL 3148350 (N.D. Tex. Nov. 8, 2005) .....................................23

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.,*
  127 S. Ct. 2499 (2007)..............................................................................................13, 31

*UAW v. GMC,*
  497 F.3d 615 (6th Cir. 2007) ............................................................................................7

*In re Warner Communics. Sec. Litig.,*
  618 F. Supp. 735 (S.D.N.Y. 1985), *aff'd,* 798 F.2d 35 (2d Cir. 1986) ....................................12

*Williams v. Vukovich,*
  720 F.2d 909 (6th Cir. 1983) ..........................................................................................16

Statutes and Rules

15 U.S.C. § 78u-4(a)(7) ........................................................................................................7, 8

Rule 10b-5, 17 C.F.R. § 240.10b-5..........................................................................................13, 30

FED. R. CIV. P. 23(a).............................................................................................26, 27, 28

FED. R. CIV. P. 23(b)(3) ..........................................................................................................29

FED. R. CIV. P. 23(e)............................................................................................................6, 7, 8

<u>Miscellaneous</u>

John C. Coffee, Jr., *Gatekeeper Failure and Reform: The Challenge of Fashioning
Relevant Reforms*, 84 B.U. L. Rev. 301 (2004) ...............................................13, 14

Cornerstone Research, *Securities Class Action Settlements: 2007 Review and Analysis*............10

Manual for Complex Litigation (Ann. 4th ed.) § 21.62 Commentary (2005) (West) ...........22

## PRELIMINARY STATEMENT

On September 23, 2008, the Court preliminarily approved a $303 million cash settlement of the claims asserted in this class action (the "Settlement").[1] Lead Plaintiffs, Deka Investment GmbH ("Deka Investment") and Deka International S.A., Luxembourg ("Deka International") ("Deka" or "Lead Plaintiffs")[2] respectfully submit this Memorandum of Law in support of their motion for (i) final approval of the Settlement, and (ii) certification of the Class for settlement purposes.[3]

The proposed settlement should be approved, because, clearly, it is procedurally fair, substantively fair, and in the interest of the settling parties as well as the public.

The settlement process was procedurally fair, with negotiations occurring at arms length and without collusion. The possibility of settlement was not even discussed by the parties until this Court, on its own initiative, appointed a mediator with the authority to mediate a settlement. Moreover, all settlement discussions were conducted under the supervision, and with the assistance, of that experienced mediator, Honorable Layn R. Phillips, U.S.D.J. (Ret.), working with the Honorable Thomas R. Brett, U.S.D.J. (Ret.).

---

[1] Order for Preliminary Approval and for Notice and Hearing, Sept. 23, 2008, Docket No. 92 ("Preliminary Approval Order").

[2] Capitalized terms not defined herein shall have the meaning ascribed to such terms in the Stipulation and Agreement of Settlement dated Sept. 16, 2008 and filed with the Court on Sept. 17, 2008 (the "Stipulation").

[3] Co-Lead Counsel are simultaneously submitting Co-Lead Counsel's Memorandum of Law in Support of Motion For Award of Attorneys' Fees and Reimbursement of Expenses (the "Fee Memorandum"), as well as the Joint Declaration of Jonathan M. Plasse and James J. Sabella in Support of Proposed Class Action Settlement and an Application For An Award of Attorneys' Fees and Reimbursement of Litigation Expenses (the "Joint Declaration"). The Joint Declaration describes, *inter alia*, the history of the Action from filing through the submission of the Settlement to the Court; the nature of the claims asserted in the Action; the motion practice and discovery undertaken in the Action; the negotiations leading to the Settlement, the value of the Settlement to the Class, as compared to the risks and uncertainties of continued litigation. The Fee Memorandum discusses, *inter alia*, the legal standards for approval of the request for attorneys' fees and reimbursement of expenses in this Circuit and the fairness of the request for fees and the reimbursement of expenses. Rather than repeating the matters set forth in the Joint Declaration and the Fee Memorandum, Co-Lead Counsel respectfully refer the Court to those documents.

The settlement also is substantively fair, including to absent class members. The Settlement Fund is $303 million, which represents one of the largest two dozen securities settlements ever obtained on behalf of shareholders, and, as a percentage of the shareholders' claimed damages, is well within the historical range of court approved recoveries. Moreover, this settlement was obtained without the shareholders having to risk or wait for resolution of the Defendants' fiercely litigated motions to dismiss the complaint, and despite the absence of any parallel litigation by the Government such as, in many other cases with sizable recoveries, provides support for the shareholders' claims.

Finally, given the precarious financial condition of General Motors, and the pivotal importance of General Motors to certain sectors of our national economy, the risks to all parties and the public of continuing this litigation far outweigh the possibility that continued litigation would result in a better recovery for the class.

In the Preliminary Approval Order, the Court preliminarily certified, for purposes of effecting the Settlement, a Rule 23(b)(3) class consisting of all persons and entities who purchased or otherwise acquired GM Securities, including GM Securities purchased or otherwise acquired in any non-U.S. offering or on any non-U.S. exchange or market, during the period April 13, 2000-March 30, 2006, and who suffered damages thereby, including all persons and entities who acquired shares of GM common and preferred stock in the secondary market, all persons or entities who acquired GM debt securities in the secondary market or pursuant to a registration statement or prospectus, and all persons who purchased or wrote (sold) exchange-traded options on GM common stock (the "Class" or "Class Members").[4]  The Court also

---

[4]  Excluded from the Class are (i) any Defendant; (ii) any member of the family of any of the Individual Defendants; (iii) any subsidiary of any Defendant, and any entity in which any Individual Defendant has a controlling interest; (iv) any director or officer of GM; any director or officer of GMAC who is an employee of GM; and any partner of
*(Cont'd)*

2

appointed Lead Plaintiffs as class representatives, for settlement purposes, and Co-Lead Counsel

as class counsel. *Id.* The Court then ordered that notice be disseminated to the Class; set

December 8, 2008 as the deadline for Class Members to submit objections to the Settlement and

the Fee and Expense Application, or to request exclusion from the Class; and set a final approval

hearing date of December 22, 2008. *Id.*

As directed by this Court in its Preliminary Approval Order, the Court-appointed Claims

Administrator for the Settlement, Epiq Systems, disseminated over 829,124 copies of the Notice

by first class mail to potential Class Members, caused the publication notice to be published in

*The Wall Street Journal*, *The Financial Times* and *The Detroit Free Press*, and over the *PR*

*Newswire*, and uploaded the relevant Settlement materials onto the Settlement website and

established a telephone response system. *See* Affidavit of Rachel Braun-Wnorowski.

The Notice stated that the deadline for Class Members to file objections or request

exclusion is the close of business on December 8, 2008. As of today, 34 potential Class

Members, representing less than 7000 shares of GM common stock (approximately .00125% of

the estimated 560 million shares of GM common stock outstanding at the end of the Class

Period) and $97,085.50 face value of bonds have sought to exclude themselves from the

Settlement. ***Further, only a single Class Member, out of the hundreds of thousands that***

***received notice of the proposed Settlement, has objected to any aspect of the Settlement, and***

***that objection is completely baseless (see* Point II(C)(6), *infra*).**

This overwhelmingly positive response of Class Members confirms the appropriateness

of certification of this Action, the sufficiency of the Settlement Notice, and the fact that the

Deloitte & Touche; or (v) the legal representatives, heirs, successors and assigns of any such excluded party. Also excluded from the Class are any putative members of the Class who exclude themselves from the Settlement by timely requesting exclusion in accordance with the requirements set forth in the Notice.

Settlement is fair, reasonable and adequate, and in the best interest of the Class. In light of the approving response of the Class, Lead Plaintiffs submit that the Settlement is fair, reasonable and adequate and warrants final approval by the Court.

Further, as demonstrated by the arguments set forth below, and based on the Declaration that Special Master Phillips filed with the Court ("Phillips Decl."), the Declaration of Franz-Josef Obermann of Deka Investment, one of the Lead Plaintiffs ("Obermann Decl."), and the Joint Declaration, certification of the Class for settlement purposes and approval of the Settlement are entirely appropriate.

Accordingly, Lead Plaintiffs respectfully request that the Court finally certify for settlement purposes the Class it preliminarily certified for purposes of settlement and grant final approval of the Settlement.

## BACKGROUND OF THE SETTLEMENT[5]

### A. Lead Plaintiffs' Bases for Recommending the Settlement

Lead Plaintiffs have developed an in-depth understanding of the strength and weaknesses of their claims in this action. This understanding is based on: (i) Co-Lead Counsel's extensive investigation of Lead Plaintiffs' claims, including interviews with former GM employees, and the review of all of the publicly available information concerning GM and Deloitte and their transactions; (ii) review of over 120,000 pages of documents produced by GM and Deloitte; (iii) retention of and consultation with accounting and financial experts and advisers; (iv) research of the applicable law; (v) opposing motions to dismiss filed by all Defendants; (vi) exchange of several sets of mediation briefs, and (vii) substantive settlement negotiations,

---

[5] Rather than setting forth at length the factual and procedural history of the Action, Lead Plaintiffs incorporate herein the descriptions set forth in ¶¶ 9-25 of the Joint Declaration, and respectfully refer the Court thereto.

which occurred over a period of several months, including three days of face-to-face mediation sessions and numerous telephonic discussions.  The mediation proceedings that resulted in this Settlement were conducted by Judge Phillips, the Court-appointed Special Master, along with Judge Thomas R. Brett, both former federal judges and experienced mediators of complex securities cases.[6]

As a result of these efforts, Lead Plaintiffs and Co-Lead Counsel have more than sufficient information to recommend the Settlement to the Court for final approval.

**B.      The Settlement Terms**

Lead Plaintiffs have achieved a very significant settlement on behalf of the Class: a recovery of $303,000,000 in cash (the "Settlement Amount").  The Settlement Amount represents a significant percentage of the Class's maximum amount of damages potentially recoverable.  As explained in detail below, the Settlement represents an excellent recovery for Class members, and is among the larger settlements ever obtained in a securities case. Accordingly, Lead Plaintiffs believe that the Settlement is fair, reasonable, adequate and in the best interests of the Class.[7]

---

[6] This Court appointed Judge Phillips "Special Master" pursuant to Federal Rule of Civil Procedure 53 by Order of October 16, 2007 (Docket No. 75).  Judge Phillips was granted power to impose non-contempt sanctions under Rule 53(c) and also to conduct any evidentiary hearings necessary to facilitating settlement.  The Court also authorized Judge Phillips to utilize the services of the Hon. Thomas R. Brett in the settlement proceedings.  The details of Judge Phillips' and Judge Brett's roles and involvement in the mediation sessions, as well as Judge Phillips' opinions about the Settlement, are fully set forth in the Phillips Declaration.

[7] The seven additional Named Plaintiffs/Class Representatives are also strongly supportive of the Settlement. *See* the Declarations of Claudia Polvani, Costantino Forlano, J. Bryan Dewell, Dan Cleveland, Mark and Ruth Koppelman, Max Marcus Katz, and Karl Stacker on behalf of Frankfurt Trust Investment GmbH, which are submitted herewith.

# ARGUMENT

I.   **THE SETTLEMENT IS FAIR, REASONABLE AND ADEQUATE,**
     **AND SHOULD BE APPROVED**

On September 23, 2008, the Court preliminarily approved the Settlement as sufficiently

fair, reasonable and adequate to warrant providing notice to Class Members. As directed in the

Court's Preliminary Approval Order, the Claims Administrator disseminated copies of the Notice

to potential Class Members. In response to the Notice, only a *de minimis* number of Class

members opted out, and just one Class member has objected to the terms of the Settlement. This

reaction indicates overwhelming Class support for the Settlement. Lead Plaintiffs now

respectfully request the Court's final approval.

### A.   **Standards for Approval of Class Action Settlements**

It is well-settled that the law favors the voluntary settlement of class action litigation.

*Int'l Union, UAW v. Ford Motor Co.*, Nos. 05-74730 & 06-10331, 2006 U.S. Dist. LEXIS 70471

(E.D. Mich. July 13, 2006), *aff'd by UAW v. GMC*, 497 F.3d 615 (6th Cir. 2007); *In re Rio Hair*

*Naturalizer Prods. Liab. Litig.*, MDL No. 1055, 1996 U.S. Dist. LEXIS 20440, at *35 (E.D.

Mich. Dec. 20, 1996) (there is a "public policy encouraging comprehensive settlement of class

actions and multi-party litigation"). In reviewing a class action settlement, the Court's role is

limited to determining whether the terms proposed are fair, reasonable, and adequate to those

affected. FED. R. CIV. P. 23(e); *In re Delphi Corp. Sec., Deriv. & "ERISA" Litig.,* 248 F.R.D.

483, 496 (E.D Mich. 2008); *Ford Motor Co.*, 2006 U.S. Dist. LEXIS 70471, at *59. "In making

this determination, the Court considers whether the interests of the class as a whole are better

served if the litigation is settled rather than pursued." *Delphi,* 248 F.R.D. at 496; *In re Cardizem,*

218 F.R.D. 508, 522 (E.D. Mich. 2003). As recognized by this Court:

> In assessing the settlement, the Court must determine whether it falls within the
> range of reasonableness, not whether it is the most favorable possible result in the

litigation. An appropriate range of reasonableness recognizes the uncertainties of
law and fact in any particular case and the concomitant risks and costs necessarily
inherent in taking any litigation to completion. Under this standard, a just result is
often no more than an arbitrary point between competing notions of
reasonableness.

*Delphi,* 248 F.R.D. at 496 (quoting *Ford Motor Co.*, 2006 U.S. Dist. LEXIS 70471, at *58-61).

The Court enjoys broad discretion in approving a class action settlement. *Id.* In
exercising this discretion, the Court may consider briefs, declarations, and arguments of counsel.
While it must conduct a fairness hearing, the Court need not conduct a full evidentiary hearing.
In order to approve the Settlement, the Court need only determine, after holding a hearing, that
the Settlement is fair, adequate, and reasonable, as well as consistent with the public interest.
*Id.*; *Cardizem,* 218 F.R.D. at 522.

### B.     Notice Was Disseminated as Ordered

Before a settlement may be finally approved, notice must be sent "in a reasonable manner
to all class members whom the settlement would bind. The notice must be reasonably calculated
under the circumstances to apprise interested parties of the pendency of the action and afford
them an opportunity to present their objections." *UAW v. GMC*, 497 F.3d 615, 629 (6th Cir.
2007) (internal quotation marks and citations omitted); *see* FED. R. CIV. P. 23(e)(1)(B). "[D]ue
process does not require actual notice, but rather a good faith effort to provide actual notice." *In
re Prudential Ins. Co. of Am. Sales Practices Litig.*, 177 F.R.D. 216, 231 (D.N.J. 1997).

In the Preliminary Approval Order (Docket No. 92) and its subsequent Order concerning
the modified form of notice (Docket Item 97), the Court approved the form and content of the
notice and publication notice, and the method for dissemination of notice. The Court specifically
found that the notices met the requirements of Rule 23, 15 U.S.C. §78u-4(a)(7), and due process;
constituted the best notice practicable under the circumstances; and constituted due and sufficient
notice to all persons and entities entitled thereto. *Id.*

7

As stated in the Joint Declaration, notice was disseminated in the form and manner as directed by the Preliminary Approval Order and the Subsequent Order. Joint Decl. ¶¶ 43-45. Accordingly, Lead Plaintiffs respectfully request a finding that the notices and their dissemination satisfy the requirements of Federal Rule of Civil Procedure 23, 15 U.S.C. §78u-4(a)(7), and due process; constitute the best notice practicable under the circumstances, and constitute due and sufficient notice to all persons and entities entitled thereto.

**C.     The Settlement Satisfies the Sixth Circuit's Criteria for Final Approval**

The standard for reviewing a class action settlement in the Sixth Circuit, as in other circuits, is whether the proposed settlement is fair, reasonable and adequate. *Delphi,* 248 F.R.D. at 496; *see Ford Motor Co.*, 2006 U.S. Dist. LEXIS 70471, at *59; *see also* FED. R. CIV. P. 23(e). As this Court has recognized, courts in the Sixth Circuit consider eight criteria in deciding whether to approve a class action settlement:

> (a) the likelihood of success on the merits weighed against the amount and form of the relief offered in the settlement; (b) the risks, expense, and delay of further litigation; (c) the judgment of experienced counsel who have competently evaluated the strength of their proofs; (d) the amount of discovery completed and the character of the evidence uncovered; (e) whether the settlement is fair to the unnamed class members; (f) objections raised by class members; (g) whether the settlement is the product of arm's length negotiations as opposed to collusive bargaining; and (h) whether the settlement is consistent with the public interest.

*Delphi,* 248 F.R.D. at 496; *Cardizem,* 218 F.R.D. at 522; *see also Ford Motor Co.*, 2006 U.S. Dist. LEXIS 70471, at *62-63. "The Court may choose to consider only those factors that are relevant to the settlement at hand and may weigh particular factors according to the demands of the case." *Delphi*, 248 F.R.D. at 496 (quoting *Ford Motor Co.*, 2006 U.S. Dist. LEXIS 70471, at *62-63); *see also Granada Investments, Inc. v. DWG Corp.,* 962 F.2d 1203, 1205-06 (6th Cir. 1992) ("the district court enjoys wide discretion in assessing the weight and applicability of these factors.").

8

As demonstrated below, each of the eight criteria weighs in favor of the approval of the Settlement. Indeed, in the judgment of Co-Lead Counsel, a more favorable result would be difficult even if this case were litigated through trial and the inevitable post-trial motions and appeals. As such, the Settlement certainly satisfies the relevant criteria, thereby warranting this Court's approval.

### 1. Likelihood of Success on the Merits Weighed Against the Amount and Form of the Relief Offered in the Settlement Supports Approval

In evaluating the Settlement, the Court should first weigh Lead Plaintiffs' likelihood of success on the merits against the amount and form of the relief offered by the Settlement. *Delphi,* 248 F.R.D. at 496. In assessing this factor, the Court should balance the *immediacy* and *certainty* of a recovery against the continuing risks of litigation. *Id.; see also In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 148 F.3d at 317; *Ford Motor Co.*, 2006 U.S. Dist. LEXIS 70471, at *64 (continued litigation involves substantial risks to each side.). That Lead Plaintiffs might have recovered more if the case had been fully litigated "'is no reason not to approve the settlement.'" *Ford Motor Co.*, 2006 U.S. Dist. LEXIS 70471, at *65 (quoting *Priddy v. Edelman*, 883 F.2d 438, 447 (6th Cir. 1989)); *see Granada,* 962 F.2d at 1206 (same). "Courts recognize that settlements are not crafted to secure the full value of the loss claimed by plaintiffs." *Ford Motor Co.*, 2006 U.S. Dist. LEXIS 70471, at *66. As shown below, this factor clearly supports approval of the Settlement.

### a. The Settlement Provides Exceptional Relief

The Settlement provides Class Members with a cash recovery of $303 million. This is an exceptional result by any measure. Lead Plaintiffs' damages expert had estimated that total damages in this case were approximately $4.7 billion. Defendants damages consultant strongly contested Plaintiffs' analysis, and estimated class-wide damages at significantly lower amounts.

As Defendants' estimate was provided in the context of the confidential Mediation and Defendants have not authorized Lead Plaintiffs to disclose such figure, it cannot be disclosed here. Thereafter, after giving credit to the strongest criticisms raised by Defendants, Lead Plaintiffs' expert reduced his damages estimate to about $3.5 billion. Using this intermediate damage figure, the settlement amounts to almost 9% of total damages.

This recovery thus equals or surpasses the average range of recoveries obtained in securities fraud class action settlements. *See Delphi*, 248 F.R.D. at 497 (observing that the average securities fraud class action settles for between 3% and 15% of the damages suffered by the class). *See also In re F&M Distributors, Inc. Sec. Litig.*, No. 95-CV-71778, 1999 U.S. Dist. LEXIS 11090, at *16-17 (E.D. Mich. June 29, 1999) (citing authorities estimating average recoveries at 7-11%, 12%, and 25% of claimed damages). Moreover, as the size of the claimed damages grows, the size of the percentage recovery usually diminishes, so that this settlement is at least several times larger than the median recovery for cases with a similar amount of claimed damages. *See* Cornerstone Research, *Securities Class Action Settlements: 2007 Review and Analysis*, at 6. Thus, the Settlement provides the Class with an outstanding recovery.

In addition to its size and proportion of potential recovery, the Settlement provides a tremendous benefit to the Class, as it comes relatively early in the course of this action –before this Court issued a decision on Defendants' motions to dismiss. The timely receipt of settlement proceeds enhances the value of the Settlement to the Class. *See Delphi,* 248 F.R.D. at 497-98; *Cardizem*, 218 F.R.D. at 525. For Lead Plaintiffs and Co-Lead Counsel to resolve the action at this relatively early stage, honoring the time value of the Class members' money, and conserving judicial resources, renders the Settlement an excellent result.

b.  **Uncertainty of Success on the Merits**

While Lead Plaintiffs believe they would ultimately have succeeded at trial, their success is far from guaranteed.  Indeed, the fairness, adequacy and reasonableness of the Settlement become even more evident when considering the risks inherent in any securities fraud class action and the particular circumstances of this case:

(i)  **The Court Had Yet To Decide the Motions to Dismiss**

The Court has yet to issue a decision on Defendants' motions to dismiss.  While Lead Plaintiffs are confident of the strength of their claims, there was substantial risk that the Court would narrow the claims and reduce the potential damages recoverable, or perhaps even dismiss certain claims or defendants in their entirety.

(ii)  **No Governmental Case Has Been Brought**

This risk was enhanced by the fact that neither the Department of Justice nor the Securities and Exchange Commission has brought any cases against any of the Defendants herein based on the circumstances alleged in the Complaint.  This fact suggests that had discovery proceeded, the facts might not have turned out to support Lead Plaintiffs' claims.  At a minimum, it meant that Lead Plaintiffs would have to develop all of the evidence and theories on their own, without the benefit of being able to "piggyback" on any SEC or DOJ pleadings.

(iii)  **Risks Inherent in Securities Litigation**

As in every complex case of this kind, Lead Plaintiffs would face certain obstacles to recovery if litigation were to continue.  Post-PSLRA rulings make it clear that the risk of no recovery has increased substantially since the PSLRA was adopted in 1995.  *See, e.g., In re Ikon Office Solutions, Inc.,* 194 F.R.D. 166, 194-95 (E.D. Pa. 2000) (the PSLRA "substantially alters the legal standards applied to securities fraud claims in ways that generally benefit defendants rather than plaintiffs").

11

Here, without the Settlement, Lead Plaintiffs would face certain legal hurdles to recovery as the action proceeds. For instance, to establish liability under Section 10(b) of the Exchange Act, Lead Plaintiffs would bear the burden of proving, *inter alia,* that (1) the alleged misrepresentations caused damage to the Class (loss causation), and (2) Defendants acted with scienter.

First, Defendants have maintained throughout this litigation that Lead Plaintiffs could not establish loss causation, arguing that the drops in GM's stock price on which Lead Plaintiffs relied were not fraud-related, but were caused by other factors, such as GM's deteriorating financial condition, a general downturn in the automotive industry, and/or the bankruptcy filing by Delphi. Deloitte, independently, argued that its statements regarding the fairness of GM's financial statements could not be connected to some or all of the allegedly relevant corrections in GM's stock price. While Lead Plaintiffs believe that they could satisfy the requirements for proving loss causation, they recognize that there exists some risk that this Court or a jury could conclude that the damages to the Class are smaller than Lead Plaintiffs' damages expert would assert. *See In re Warner Communics. Sec. Litig.*, 618 F. Supp. 735, 744-45 (S.D.N.Y. 1985), *aff'd*, 798 F.2d 35 (2d Cir. 1986) (approving settlement where "it is virtually impossible to predict with any certainty which [expert] testimony would be credited, and ultimately, which damages would be found to have been caused by actionable, rather than the myriad nonactionable factors such as general market conditions"). While Section 11 does not require a plaintiff to establish loss causation, Lead Plaintiffs would face similar issues with respect to their Section 11 claims in response to Defendants' affirmative defense of lack of causation.[8]

---

[8] Moreover, regarding one of the categories of alleged misstatements responsible for one of the largest portions of shareholder damages, Defendants continue to argue that the truth was disclosed even before shareholders could have suffered any damages.

Second, on the Rule 10b-5 claims, Lead Plaintiffs would have had to prove that Defendants acted with scienter in knowingly misrepresenting GM's financial results. In their motions to dismiss, Defendants contended that Lead Plaintiffs had not satisfied the stringent PSLRA pleading standard. While Lead Plaintiffs believe that the Supreme Court's holding in *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 127 S. Ct. 2499 (2007), lowers the Sixth Circuit's scienter standard, and that they have compelling evidence of scienter, Lead Plaintiffs recognize that establishing such at the summary judgment or trial stages posed additional risks to Lead Plaintiffs' Section 10(b) claims.[9]

### (iv)    Risks of Trial and Appeal

The mere prospect of trial necessarily involves the risk that Lead Plaintiffs would obtain little or no recovery. *Cardizem,* 218 F.R.D. at 523. "Experience proves that, no matter how confident trial counsel may be, they cannot predict with 100% accuracy a jury's favorable verdict," particularly in complex securities litigation. *Id.* (citing cases where plaintiffs suffered a directed verdict after lengthy trial or recovered only nominal damages).

Once at trial, Lead Plaintiffs would face the risks of establishing liability posed by conflicting testimony and evidence. For instance, proof of damages in securities litigation requires complex expert testimony. The jury could choose to reject Lead Plaintiffs' expert's testimony or methodology in favor of Defendants' expert's model. *See In re Broadwing, Inc. ERISA Litig.*, No. 1:02-cv-00857, 2006 U.S. Dist. LEXIS 72609, at *9 (S.D. Ohio Oct. 5, 2006) ("Acceptance of expert testimony is always far from certain, no matter how qualified the expert, inevitably leading to a 'battle of the experts.'"). The Settlement avoids such risks. *Id.*

---

[9] Such risks would be especially great regarding Defendant Deloitte. *See, e.g.*, John C. Coffee, Jr., *Gatekeeper Failure and Reform: The Challenge of Fashioning Relevant Reforms*, 84 B.U. L. Rev. 301, 321 (2004) (stating that,

*(Cont'd)*

Finally, after years of litigation, Defendants would likely appeal any trial victory obtained on behalf of the Class, creating further uncertainty and significant delay. Thus, the risks of having the verdict reversed would remain. *See, e.g., Robbins v. Koger Props.,* 116 F.3d 1441 (11th Cir. 1997) (reversing plaintiff's jury verdict of $81 million for securities fraud); *Backman v. Polaroid Corp.,* 910 F.2d 10 (1st Cir. 1990) (reversing judgment for class). Even if Lead Plaintiffs survived the appeals, Defendants would have successfully delayed the resolution of this action for a number of years.

### 2.  Risks, Expense, and Delay of Further Litigation

In evaluating a proposed class settlement, the Court weighs the risks, expense, and delay the plaintiffs would face if they continued to prosecute the litigation through trial and appeal against the amount of recovery provided to the class in the proposed settlement. *Cardizem,* 218 F.R.D. at 523. Courts have consistently held that the expense and possible duration of litigation are major factors to be considered in evaluating the reasonableness of a settlement. *See, e.g., In re Telectronics Pacing Systems, Inc.,* 137 F. Supp. 2d 985, 1013 (S.D. Ohio 2001) (settlement serves laudable goal of eliminating costs and time attendant to continued litigation). For class actions in particular, courts view settlement favorably because it "avoids the costs, delays, and multitudes of other problems associated with them." *Id.* at 1013 (citation omitted).

If not for the Settlement, this action would have continued to be fiercely contested by the parties. Defendants, represented by well-respected, experienced, and highly capable counsel, have demonstrated a commitment to defend the case through and beyond trial, if necessary. The

---

because of recent changes to the law making it harder to hold auditors liable for securities fraud, "the settlement value of cases against auditors has gone way down").

expense of continued litigation would be substantial.[10] The parties would have to complete a lengthy, extensive and time-consuming discovery program involving a review and analysis of additional documents, take depositions of dozens of witnesses across the United States, and complete very expensive and time intensive expert discovery. Inevitably, Defendants would file motions for summary judgment. Assuming Lead Plaintiffs' claims survived those motions, any trial would run at least several weeks, and involve numerous attorneys, witnesses, and experts; the introduction of voluminous documentary and deposition evidence; vigorously contested motions; and the expenditure of enormous amounts of judicial and counsel resources.

As noted above, even if successful at trial, there would inevitably be an appeal, which would deny the Class any recovery for years. Taking into account the likelihood of appeal, absent the Settlement, this action likely would have continued for years despite the efforts of the Court and the parties to speed up the process. Avoiding this unnecessary expenditure of time and resources clearly benefits all parties and the Court. *See Ford Motor Co.*, 2006 U.S. Dist. LEXIS 70471, at *70 ("The costs and uncertainty of lengthy and complex litigation weigh in favor of settlement."); *In re Aetna Inc. Sec. Litig.*, MDL No. 1219, 2001 U.S. Dist. LEXIS 68, at *22 (E.D. Pa. Jan. 4, 2001) ("The risk of delay could have deleterious effects on any future recovery due to the time value of money.").

The risk of delay is particularly acute in this case because of GM's precarious financial condition. During the period when the mediation was being conducted, and in the period since, the press is filled with reports that GM is experiencing severe financial difficulties. If the action were to continue for additional years, there is the very real risk that GM might be in bankruptcy or otherwise in such weakened financial condition that it would not be in a position to pay

---

[10] In complex securities litigation, a plaintiff's expenses will reduce any recovery obtained for the Class. *In re*

*(Cont'd)*

15

whatever judgment might eventually be sustained against it. *Cf. Delphi*, 248 F.R.D. at 497

("such a solid settlement is a particularly excellent result in light of the significant risk to any

ultimate recovery for the Securities Class created by [the defendant's] Bankruptcy Proceeding").

 In sum, the Settlement secures for the Class an *immediate* benefit, undiminished by

further expenses and without the delay, risk and uncertainty of continued litigation.  As this

Court recognized in *Cardizem*, "the certain and immediate benefits to the Class represented by

the Settlement outweigh the possibility of obtaining a better result at trial, particularly when

factoring in the additional expense and long delay inherent in prosecuting this complex litigation

through trial and appeal." *Cardizem,* 218 F.R.D. at 525.  Undoubtedly, this factor supports

approval of the Settlement.

**3.**   **Judgment of Experienced Counsel Who Have Competently<br>Evaluated the Strength of Their Proofs Supports Approval**

**a.**   **Judgment of Counsel**

 In evaluating a class action settlement, the Court also considers the opinion of

experienced counsel regarding the merits of the settlement.  *Delphi*, 248 F.R.D. at 498;

*Cardizem,* 218 F.R.D. at 525.  Indeed, as observed by the Sixth Circuit, "[t]he court should defer

to the judgment of experienced counsel who has competently evaluated the strength of his

proofs." *Williams v. Vukovich*, 720 F.2d 909, 922-23 (6th Cir. 1983); *Kogan v. AIMCO Fox

Chase, L.P.,* 193 F.R.D. 496, 502 (E.D. Mich. 2000) (recognizing that the view of experienced

counsel favoring the settlement is entitled to great weight).

 Lead Plaintiffs' counsel have extensive experience in handling class action cases, *see*

Sabella Decl. Exh. 3; Plasse Decl. Exh. 3, and especially in working with experts to evaluate

damages to the Class.  In connection with the Settlement, Lead Counsel have devoted their

---

*Broadwing, Inc. ERISA Litig.*, 2006 U.S. Dist. LEXIS 72609, at *12.

considerable skill and experience in negotiating a highly favorable recovery for the Class after,
once again, thoroughly investigating and analyzing the claims alleged in this action, retaining
and working with experts in evaluating damages to the Class and engaging in extensive, arm's-
length negotiations to reach the Settlement. Based upon this experience and information, Co-
Lead Counsel undoubtedly made an informed judgment regarding the Settlement, and believe it
is fair, reasonable, and adequate. Thus, this factor favors approval of the Settlement. *See Ford
Motor Co.*, 2006 U.S. Dist. LEXIS 70471, at *72 ("Under the law [Co-Lead Counsel's]
collective judgment in favor of the Settlement is entitled to considerable weight.").

### b. Judgment of the Special Master

Lead Counsel have benefited greatly from the added insight of Judge Phillips and Judge
Brett, former federal judges and prominent mediators of complex securities actions, who
presided over the settlement negotiations and substantially contributed to reaching the resulting
settlement agreements. Judge Phillips has declared that the Settlement was reached at arm's-
length through hard-fought negotiations, and is an excellent result given all the facts and
contrasting legal analyses at issue in this case. Phillips Decl. ¶¶ 9, 19. This, too, favors approval
of the Settlement.

### 4. Amount of Discovery Completed and Character of Evidence Uncovered Supports Approval

The amount of discovery conducted is a factor that exists so that the parties and the Court
have adequate information in order to evaluate the relative positions of the parties. *Ford Motor
Co.*, 2006 U.S. Dist. LEXIS 70471, at *73. The Court need only have before it sufficient facts to
intelligently approve or disapprove the settlement. *Id*; *see Garst v. The Franklin Life Ins. Co.*,
No. 97-C-0074-S, 1999 U.S. Dist LEXIS 22666 (N.D. Ala. June 15, 1999) ("Comprehensive
discovery is not necessary, 'only some reasonable amount of discovery is required.'"). "In

evaluating a proposed settlement, the Court need not possess sufficient 'evidence to decide the merits of the issue, because the compromise is proposed in order to avoid further litigation.'" *Ford Motor Co.*, 2006 U.S. Dist. LEXIS 70471, at *72-73. (citation omitted)

As set forth in the Joint Declaration, Co-Lead Counsel conducted a thorough investigation of the factual allegations, providing Co-Lead Counsel and Lead Plaintiffs with sufficient knowledge and understanding to evaluate the Settlement. Co-Lead Counsels' efforts included: (i) conducting extensive legal and factual investigations, including developing numerous confidential sources of non-public information, into the events and circumstances underlying the claims in the Complaint; (ii) obtaining and reviewing GM's regulatory filings, press releases and other relevant documents; (iii) thoroughly researching the law pertinent to the claims against Defendants and potential defenses thereto; (iv) consulting with accounting experts concerning Defendants' alleged accounting manipulations and violations of generally accepted accounting principles; (v) consulting with economic experts to analyze the drops in GM's stock price and to estimate the damages to the Class; (vi) engaging in the review of approximately 120,000 pages of documents produced by GM and Deloitte in response to targeted requests made by Plaintiffs for purposes of the settlement negotiations; and (vii) engaging in substantive, complex, and intensive arm's-length settlement negotiations and mediations with Defendants under the supervision of Judge Phillips and Judge Brett. Joint Decl. ¶¶ 4,31-32, 34-37.

As a result of these efforts and the information obtained by them, Co-Lead Counsel and Lead Plaintiffs were well-equipped with a comprehensive factual basis with which to assess the strengths and weaknesses of their claims and positions on liability and damages. Given the extensive factual development of this action, there is no question that Lead Plaintiffs and Co-Lead Counsel were in an excellent position to negotiate a settlement for the Class, well within

the range of reasonableness. Additionally, Lead Plaintiffs and Co-Lead Counsel articulated the pertinent facts and analyses to Judge Phillips in a mediation brief and reply brief, which established the factual foundation for Lead Plaintiffs' negotiating position. Based on those mediation briefs, and an intense negotiation among the settling parties, Judge Phillips developed an informed opinion that the Settlement is fair, reasonable, and adequate and in the best interest of the Class. Phillips Decl. ¶¶ 1, 19. This factor weighs in favor of approval.

### 5.    The Settlement Is Fair to Unnamed Class Members

The Court also considers whether the Settlement is fair to absent class members. *Delphi*, 248 F.R.D. at 498. "This factor assesses whether the proposed settlement 'appear[s] to be the result of arm's-length negotiations between the parties and fairly resolves all claims which were, or could have been, asserted.'" *Id.* (quoting *Rio Hair*, 1996 U.S. Dist. LEXIS 20440, at *42 (quoting *Steiner v. Freuhauf Corp*, 121 F.R.D. 304, 306 (E.D. Mich. 1988)). As explained above, the parties reached the Settlement only after numerous and extensive mediation sessions with Judge Phillips. Without question, the Settlement resulted from arm's-length negotiations. Phillips Decl. ¶ 19.

Finally, and perhaps most significantly, as of today only 34 potential Class members have requested exclusion, representing less than 7,000 shares of GM common stock, representing a miniscule .00125% of the estimated 560 million shares of GM common stock outstanding at the end of Class Period, and bonds with a face value of $97,085.50. Declaration of Rachel Braun Wnorowski ¶ 21. These facts alone are persuasive evidence that the Class as a whole believes the Settlement is fair, just and reasonable. *Delphi*, 248 F.R.D. at 498-99. As described in the following section, the fairness of the Settlement to absent Class members is further underscored by the almost complete absence of objections from Class members. Thus, this factor also supports approval of the Settlement.

19

6.   **Just One Class Member Has Objected, Without Basis,**
     **to the Settlement**

In analyzing the Settlement, the Court also considers the class's reaction. *Brotherton v.*

*Cleveland,* 141 F. Supp. 2d 894, 906 (S.D. Ohio 2001). "A certain number of opt-outs and

objections are to be expected in a class action. If only a small number [of opt outs or objections]

are received, that fact can be viewed as indicative of the adequacy of the settlement." *Delphi,*

248 F.R.D. at 499 (quoting *Cardizem,* 218 F.R.D. at 527 (citing *In re NASDAQ Market-Making*

*Antitrust Litig.,* 187 F.R.D. 465, 478 (S.D.N.Y. 1998)); *see also Ford Motor Co.,* 2006 U.S. Dist.

LEXIS 70471, at *78 (concluding that 800 objectors out of 170,000 class members – less than

one half of one percent – constituted a "very small level of opposition," which "is another reason

to conclude that the Settlement is fair, reasonable, and adequate"); *Brotherton v. Cleveland,* 141

F. Supp. 2d 894, 906 (S.D Ohio 2001) ("a relatively small number of class members who object

is an indication of a settlement's fairness."); *Broadwing,* 2006 U.S. Dist. LEXIS 72609, at *18-

19 (providing that a small number of objectors is a good indication of the fairness of the

settlement).

Here, the reaction of the Class to the Settlement provides yet another compelling reason

for its approval. The Claims Administrator mailed over 829,124 copies of the Notice to potential

Class members. Declaration of Rachel Braun-Wnorowski ¶ 8. The Notice contained detailed

instructions for submitting objections. In response to the Notice, just a single Class Member has

objected to the Settlement, and his objection is baseless.[11] "That the overwhelming majority of

---

[11] The objection came in an October 28, 2008 letter to Judge Rosen from Ernest Lapp, Jr. Besides raising doubts
about Mr. Lapp's standing to object (based on the letter's failure to attach supporting documentation of GM
Securities Class Period trades), the objection is without merit. First, the thrust of the objection is that GM is paying
*too much,* not too little. As such, it is more in the nature of a derivative objection, on GM's behalf, than an
objection on behalf of the Class. Fairness to absent class members, and not fairness to the settling defendant
represented by counsel of its choosing, is what the court considers on a settlement approval motion. The court must
assume that GM's counsel has adequately considered fairness to GM. Objector Lapp also appears unaware that a
*(Cont'd)*

class members have elected to remain in the Settlement Class, without objection, constitutes the 'reaction of the class,' as a whole, and demonstrates that the Settlement is 'fair, reasonable, and adequate.'" *Cardizem,* 218 F.R.D. at 527. This factor weighs in favor of approval.

### 7. The Settlement Is the Product of Arm's-Length Negotiations as Opposed to Collusive Bargaining

Another factor the Court considers in evaluating the Settlement is whether it is the product of arm's-length negotiations. Without evidence to the contrary, the Court may conclusively presume the absence of fraud or collusion. *Delphi*, 248 F.R.D. at 501; *see also Rio Hair*, 1996 U.S. Dist. LEXIS 20440 at *43 ("Courts respect the integrity of and presume good faith in the absence of fraud or collusion in settlement negotiations, unless someone offers evidence to the contrary.").

The Settlement comes after three years of litigation and settlement negotiations did not even begin until, on its own initiative, the Court appointed a mediator. The subsequent settlement negotiations were intensive and were supervised and assisted, from beginning to end, by the mediators, Judge Phillips and Judge Brett. Judge Phillips' Declaration is persuasive evidence that the Settlement was hard-fought, arm's-length, and not collusive. Phillips Decl. ¶ 19. With Judge Phillips' and Judge Brett's supervision over every stage of the Settlement's negotiation, such negotiation may not be challenged as anything less than arm's-length. *See Hicks v. Stanley,* No. 01 Civ. 0071 (RJH), 2005 WL 2757792, at *5 (S.D.N.Y. Oct. 24, 2005) ("participation of a respected and neutral mediator 'gives [the court] confidence that [the negotiations] were conducted in an arms-length, non-collusive manner"); *In re Indep. Energy Holdings PLC Sec. Litig.*, No. 00 Civ. 6689, 2003 U.S. Dist. LEXIS 17090, at *13 (S.D.N.Y.

_____

substantial portion of GM's contribution to the Settlement is coming from insurance proceeds.

Sept. 29, 2003); *see also Bryant v. Universal Services, Inc.*, No. 99-2944, 2000 U.S. Dist. LEXIS

7619, at *7 (E.D. La. May 24, 2000). This factor weighs in favor of approving the Settlement.

*See* MANUAL FOR COMPLEX LITIGATION (Ann. 4th ed.) § 21.62 Commentary (2005) (West)

("presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached

in arm's-length negotiations between experienced, capable counsel after meaningful discovery");

*accord Malchman v. Davis*, 761 F.2d 893, 903 (2d Cir. 1985); *New England Health Care*

*Employees Pension Fund v. Fruit of the Loom, Inc.*, 234 F.R.D. 627, 632 (W.D. Ky. 2006).

### 8.     The Settlement Is Consistent With the Public Interest

The final factor the Court considers in evaluating the Settlement is whether the

Settlement is consistent with the public interest. Without question, this factor should be resolved

in the affirmative here.

The proposed Settlement puts to rest a high profile, hotly contested securities fraud

lawsuit involving allegations of massive fraud on the investing public. With this $303 million

cash recovery, which represents a significant percentage of the total damages that could be

expected to be recovered, it presents a certain benefit to tens of thousands of Class members

who, without the efforts of Lead Plaintiffs, faced the prospect of recovering nothing. This

recovery is certainly consistent with the public interest, as it provides a deterrent effect not only

against the actions of the Defendants herein, but also extending to other large companies and

accounting firms across the country. *Delphi*, 248 F.R.D. at 501-02 (acknowledging that "no

contravening public interest justifies deviating from the strong public interest in encouraging

settlement of complex class action litigation").

Additionally, the Settlement serves the public interest by conserving the resources of the

parties and the Court. *See Ford Motor Co.*, 2006 U.S. Dist. LEXIS 70471, at *78; *see also*

*Cardizem,* 218 F.R.D. at 530 ("[T]here is a strong public interest in encouraging settlement of

complex litigation and class action suits because they are 'notoriously difficult and unpredictable' and settlement conserves judicial resources.") (citation omitted). Without the Settlement, the litigation would have continued for many more months or years, consuming the resources of this Court and the Court of Appeals despite the best efforts of the parties and judiciary to expedite the process.

The fact that the Settlement allows an important U.S. automobile company such as GM to put this matter behind it is in the public interest. In light of GM's precarious financial position, the public interest is advanced by a Settlement that allows GM and the GM Individual Defendants to pay for a large portion of the Settlement through insurance, as well as to avoid the further costs and uncertainties that protracted litigation would present. *Cf. Delphi*, 248 F.R.D. at 501-02 (settlement is in the public interest where it allows a defendant with thousands of employees whose retirement security is at risk to "return[ ] to a more solid financial condition without the cloud of substantial litigation hanging over it").

Like the prior seven factors, this factor, too, accordingly supports approval of the Settlement.

## II.     THE PLAN OF ALLOCATION SHOULD BE APPROVED

"[T]here is no rule that settlements benefit all class members equally, ... as long as the settlement terms are rationally based on legitimate considerations." *In re Painewebber Ltd. P'ship Litig.*, 171 F.R.D. 104, 131 (S.D.N.Y. 1997); *see Schwartz v. TXU Corp.*, No. 3:02-CV-2243-K, 2005 WL 3148350, at *23 (N.D. Tex. Nov. 8, 2005) ("a class action settlement need not necessarily treat all class members equally").

"[W]hen real and cognizable differences exist between the likelihood of ultimate success for different plaintiffs, it is appropriate to weigh distribution of the settlement ... in favor of plaintiffs whose claims comprise the set that was more likely to succeed." *Painewebber*, 171

F.R.D. at 133 (internal quotation marks omitted). It is "reasonable to allocate more of the settlement to class members with stronger claims on the merits." *In re Oracle Sec. Litig.*, No. C-90-0931-VRW, 1994 U.S. Dist. LEXIS 21593, at *3-4 (N.D. Cal. June 16, 1994). Therefore, plans of allocation are routinely approved that "sensibly makes interclass distinctions based upon, *inter alia*, the relative strengths and weaknesses of class members' individual claims and the timing of the purchases of the securities at issue." *In re MicroStrategy, Inc. Sec. Litig.*, 148 F. Supp. 2d 654, 669 (E.D. Va. 2001); *see also In re Ikon Office Solutions, Inc. Sec. Litig.*, 194 F.R.D. at 184.

Importantly, "[a]n allocation formula need only have a reasonable, rational basis, particularly if recommended by experienced and competent class counsel." *Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 367 (S.D.N.Y. 2002) (internal quotation marks omitted).

In developing the Plan of Allocation in conjunction with their damages expert, Dr. Scott Hakala, Co-Lead Counsel considered numerous factors, such as: (1) the time period in which a GM security was purchased; (2) whether a security was purchased or acquired on the open market, or as a result of some other type of transaction, such as pursuant to a registration statement or prospectus; (3) whether the security was held until the end of the Class Period (March 30, 2006), or whether it was sold during the Class Period, and if so, when it was sold; (4) the relative strength of the claims available to a Class Member; and (5) the estimated amount of artificial inflation in the price of GM securities at different times during the Class Period attributable to Defendants' alleged false and misleading statements, as calculated by Dr. Hakala. *See* Declaration of Dr. Scott Hakala. To take these factors into account, the Plan of Allocation applies weighting factors which are incorporated into artificial inflation tables. *Id.*

24

For example, Dr. Hakala calculated the amount of artificial inflation in the daily closing market prices for GM common stock during 16 different portions of the Class Period. *See* Tables 1-4 of the Plan of Allocation. Similarly with respect to GM's bonds, Dr. Hakala calculated the amount of artificial inflation in the daily closing market prices for the bonds during different portions of the Class Period and incorporated such information in the inflation per unit calculations. *See* Tables 6-10 of the Plan of Allocation. In computing artificial inflation, he considered price changes of GM common stock and bonds in regard to certain public announcements regarding GM and adjusted those price changes that were attributable to market forces unrelated to the alleged fraud.

The Plan of Allocation applies greater weights to purchases of bonds pursuant to registration statements or prospectuses, because such purchases give rise to claims under §§ 11 and 12 of the Securities Act, and those claims do not require proof of Defendants' scienter. Therefore, the Plan of Allocation applies a multiplier of 1.2 to the claims of investors in those bonds. Hakala Decl. ¶ 10.

With respect to purchases of other bonds and preferred stock, the Plan of Allocation takes into account certain defenses that Defendants had raised, such as their challenge as to standing, based on the fact that no plaintiffs named in the Complaint purchased these securities. For such securities, the Plan applies a downward multiplier (.8). *Id.* ¶ 12.

Because the Plan here does precisely what the law requires and "sensibly makes interclass distinctions based upon, *inter alia*, the relative strengths and weaknesses of class members' individual claims and the timing of the purchases of the securities at issue," *MicroStrategy*, 148 F. Supp. 2d at 669, it should be approved.

III. **CERTIFICATION OF THE CLASS FOR SETTLEMENT PURPOSES IS PROPER AND WARRANTED**

Lead Plaintiffs now request that the Court finally certify this action as a class action for settlement purposes. The proposed Class easily satisfies the prerequisites of Rule 23(a) and Rule 23(b)(3) of the Federal Rules of Civil Procedure. Accordingly, final certification of the Class for settlement purposes is appropriate.

D. **Prerequisites of Rule 23(a) Are Satisfied**

Certification is appropriate under Rule 23(a) if: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. FED. R. CIV. P. 23(a); *Delphi*, 248 F.R.D. at 493; *Cardizem,* 218 F.R.D. at 517.

1. **The Class Is Sufficiently Numerous**

Rule 23(a)(1) requires that members of the class be so numerous that joinder of all would be "impracticable." FED. R. CIV. P. 23(a)(1). The Court may assume that the numerosity requirement has been met in a securities class action involving purchasers of nationally traded securities. *See In re KMart Corp. Sec. Litig.*, No. 95-CS-75584-DT, 1996 U.S. Dist. LEXIS 22609, at *12 (E.D. Mich. Dec. 16, 1996). At the end of the Class Period, there were approximately 560 million shares of GM common stock and $32 billion of GM debt securities outstanding. Indeed, the Claims Administrator sent copies of the Notice to 829,124 potential class members or their nominees. Given this magnitude, the Class is unquestionably sufficiently numerous to satisfy Rule 23(a)(1). *See also Bittinger v. Tecumseh Prods. Co.,* 123 F.3d 877, 884 n.1 (6th Cir. 1997); *KMart*, 1996 U.S. Dist. LEXIS 22609, at *12.

26

2.    **There Are Common Questions of Law and Fact**

Rule 23(a)(2) requires commonality – that "there are questions of law or fact common to

the class." FED. R. CIV. P. 23(a)(2).  Commonality does not require that all questions of law or

fact be common.  Instead, commonality requires only *one* common question of law or fact;

accordingly, federal securities cases easily satisfy the commonality requirement of Rule 23(a)(2).

*Id.*  "Federal securities cases easily satisfy the commonality requirement of Rule 23(a)(2)."

*Delphi*, 248 F.R.D. at 493.

In the instant case, Lead Plaintiffs' claims, arising under the Exchange Act and/or the

Securities Act,  present many questions of law and fact common to all members of the Class,

including:

- Whether federal securities laws were violated by Defendants' acts as alleged in the Amended Complaint;

- Whether Defendants made false and misleading statements as described in the Amended Complaint;

- Whether Defendants acted with scienter with respect to the Exchange Act claims;

- Whether, during the Class Period, the market prices of GM's common stock and debt securities were artificially inflated due to the material misrepresentations and/or non-disclosures complained of; and

- To what extent the Class Members have sustained damages, and the proper measure thereof.

Accordingly, this action satisfies the commonality requirement of Rule 23(a)(2).

3.    **The Class Representatives' Claims Are Typical of Those of the Class**

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical

of the claims or defenses of the class." FED. R. CIV. P. 23(a)(3).  The test for typicality, like

commonality, is not demanding.  *Ford Motor Co.*, 2006 U.S. Dist. LEXIS 70471, at \*54; *see*

*KMart*, 1996 U.S. Dist. LEXIS 22609 at \*15.  "A plaintiff's claim is typical if it arises from the

same event or practice or course of conduct that gives rise to the claims of other class members."
*Delphi,* 248 F.R.D. at 494; *In re Am. Med. Sys.,* 75 F.3d 1069, 1082 (6th Cir. 1996). Here, the
injuries to Lead Plaintiffs and Class members are unquestionably attributable to the same
misrepresentations and omissions by Defendants, and liability for this conduct rests on the same
legal theories. Lead Plaintiffs, like all other Class members, suffered losses from their
transactions in GM securities during the Class Period. Thus, the proof Lead Plaintiffs would
present to establish their claims would also prove the claims of the rest of the Class. As such, the
Rule 23(a)(3) typicality requirement is satisfied.

### 4. The Class Representatives Have and Will Continue to Fairly and Adequately Protect the Interests of the Class

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect
the interests of the class." FED. R. CIV. P. 23(a)(4). The adequacy requirement tends to merge
with the commonality and typicality criteria of Rule 23(a). *Amchem Products, Inc. v. Windsor*,
521 U.S. 591, 626 n.20 (1997). The overlap exists because, "in the absence of typical claims, the
class representative has no incentives to pursue the claims of the other class members." *In re
Am. Med. Sys.,* 75 F.3d at 1083. The Court must measure the adequacy of representation by the
following two standards: (1) the representatives must have common interests with unnamed
members of the class, and (2) it must appear that the representatives will vigorously prosecute
the interests of the class through qualified counsel. *Ford Motor Co.,* 2006 U.S. Dist. LEXIS
70471, at *56.

Lead Plaintiffs and their counsel have prosecuted the Action zealously, and have
advanced the interests of the Class in obtaining a highly favorable resolution of this case for the
Class. *See* Phillips Decl. ¶¶ 1, 9, 19-20. In light of the foregoing, the Court should find that
Lead Plaintiffs and Co-Lead Counsel satisfy the adequacy requirement of Rule 23(a).

28

E.    **The Proposed Class Satisfies the Prerequisites of Rule 23(b)(3)**

Rule 23(b)(3) authorizes class certification if "the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." FED. R. CIV. P. 23(b)(3).

1.    **Common Legal and Factual Questions Predominate**

To ensure that a class action is more efficient than individual actions, Rule 23(b) requires that common issues predominate over those that are individualized. "[C]ommon issues need only predominate, not outnumber individual issues." *In re Inter-Op Hip Prosthesis Liab. Litig.*, 204 F.R.D. 359, 374-75 (N.D. Ohio 2001). The Rule 23(b)(3) predominance test is "readily met" in securities fraud cases. *Amchem*, 521 U.S. at 625; *see KMart*, 1996 U.S. Dist. LEXIS 22609, at *30. In determining whether common questions predominate, the Court's inquiry is directed towards the issue of liability. Where, as here, a single set of operative facts establishes liability, and "a single proximate cause applies to each potential class member and defendant," class certification is appropriate. *Inter-Op*, 204 F.R.D. at 375.

In this action, common questions have been the overwhelming focus of Lead Plaintiffs' investigation, claims, and allegations, and clearly predominate over any individual issues. The identical course of conduct by the Defendants forms the basis of all Class members' claims. As set forth above, there are numerous common issues of law and fact relating to Defendants' liability, the resolution of which clearly predominate over any individualized issues. Indeed, if Lead Plaintiffs and each of the Class members were to bring individual actions, they would each be required to prove the same wrongdoing by the Defendants again and again in order to establish liability. Moreover, the only possible individual issues in this action are reliance and

29

damages, which courts have uniformly held will not defeat class certification.[12] *See, e.g.,*

*KMart*, 1996 U.S. Dist. LEXIS 22609, at *30 (common issues predominate over any potential

individual issues of damages and reliance); *In re Revco Sec. Litig.*, 142 F.R.D. 659, 663-66 (N.D.

Ohio 1992). The predominance requirement of Rule 23(b)(3) is satisfied.

## 2. A Class Action Is Superior to Other Methods of Adjudication

Rule 23(b)(3) sets forth the following non-exhaustive factors to be considered in making

a determination of whether class certification is the superior method of litigation: "(A) the

interest of members of the class in individually controlling the prosecution . . . of separate

actions; (B) the extent and nature of any litigation concerning the controversy already

commenced by . . . members of the class; (C) the desirability . . . of concentrating the litigation

of the claims in the particular forum; and (D) the difficulties likely to be encountered in the

management of a class action."

Courts have concluded that the class action device in securities cases is usually the

superior method by which to redress injuries to a large number of individual plaintiffs. *See, e.g.,*

*In re Blech Sec. Litig.*, 187 F.R.D. 97, 107 (S.D.N.Y. 1999). Here, each of the Rule 23(b)(3)

factors demonstrates that a class action is clearly superior to other methods for adjudication of

the claims of numerous purchasers of GM securities.

No opt out individual actions have been brought based on the circumstances alleged in

the Complaint. This lack of any other related litigation confirms the superiority of the class

action device as a superior method of litigating this action. Moreover, concentrating the

litigation in a single forum is clearly desirable. Absent a class action certification, the Court

---

[12] Still further, there is no need for Plaintiffs to prove reliance regarding their claims under Section 11. *See, e.g.,*
*Rombach v. Chang*, 355 F.3d 164, 169 n.4 (2d Cir. 2004). And for claims under Rule 10b-5, reliance is presumed
*(Cont'd)*

would be faced with the potential burden of litigating tens of thousands of individual lawsuits, all of which would arise out of the same set of operative facts alleged in the Complaint. Also, because of the complexity of the claims asserted and the prohibitive expense of maintaining individual actions, denial of class certification here would effectively prevent most Class members from asserting their claims against the Defendants and render meaningless the causes of action provided under the federal securities laws.[13] This factor undoubtedly supports the certification of this action. *See Cardizem,* 218 F.R.D. at 519. Finally, any administrative difficulties in handling potential individual issues under the class action device are certainly less burdensome than problems that might arise in handling the claims in tens of thousands of separate actions.[14] This manageability factor, like the preceding three factors, also demonstrates the class action device is the superior method to litigate the claims alleged in this action.

## CONCLUSION

For the foregoing reasons, Lead Plaintiffs respectfully request that the Court enter the proposed Order and Final Judgment, which certifies this action as a Rule 23(b)(3) class action for settlement purposes, appoints Lead Plaintiffs as Class Representatives, appoints Co-Lead Counsel as Class Counsel, approves the Settlement as fair, reasonable, and adequate and in the best interest of the Class, and approves the Plan of Allocation.

---

based on fraud-on-the-market allegations, which were pled in the Complaint. *See Basic Inc. v. Levinson*, 485 U.S. 224, 247 (1988); *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128, 153-54 (1972).

[13] The Supreme Court has "long recognized that meritorious private actions to enforce federal antifraud securities laws are an essential supplement to criminal prosecutions and civil enforcement actions." *Tellabs,* 127 S. Ct. at 2504. Without certification of these actions, most individual claims would never be brought due to the sheer complexity and expense of this type of litigation. *See Inter-Op,* 204 F.R.D. at 377 (small monetary value of individual claims likely gives rise to negative value suits - which is the "most compelling rationale for finding superiority in a class action"); *see also Phillips Petroleum Co. v. Shutts,* 472 U.S. 797, 809 (1985) (recognizing that class actions allow pooling of claims uneconomical to litigate individually).

[14] In this settlement context, the Court need not inquire as to whether the case, if tried, would present management problems. *Cardizem,* 218 F.R.D. at 517.

Dated: December 2, 2008                           Respectfully submitted,

**GRANT & EISENHOFER P.A.**                        **LABATON SUCHAROW LLP**


By _____/s/ James J. Sabella_____                  By _____/s/ Jonathan M. Plasse_____
Jay W. Eisenhofer                                  Jonathan M. Plasse
James J. Sabella                                   Richard T. Joffe
Brenda F. Szydlo                                   Bruce E. Stanton
485 Lexington Avenue, 29th Floor                   140 Broadway
New York, NY 10017                                 New York, NY 10005
(646) 722-8500                                     (212) 907-0700
jsabella@gelaw.com                                 jplasse@labaton.com

*Co-Lead Counsel for Lead Plaintiffs*

**ELWOOD SIMON & ASSOCIATES**                      **DIAZ REUS & TARG LLP**


By _____/s/ Elwood S. Simon_____                   By _____/s/ Alexander Reus_____
Elwood S. Simon                                    Alexander Reus
355 S. Old Woodward Avenue, Suite 250              100 SE Second Street, Suite 2610
Birmingham, MI 48009                               Miami, FL 33131
(248) 646-9730                                     (786) 235-5000
esimon@esimon-law.com                              areus@drrt.com

*Counsel for Plaintiffs*

32

## CERTIFICATE OF SERVICE

I hereby certify that on this 2nd day of December, 2008, a copy of the foregoing **Lead Plaintiffs' Motion for (I) Final Approval of Settlement and (II) Certification of the Class for Settlement Purposes** was filed electronically with the United States District Court, Eastern District of Michigan, and notice will be sent by operation of the Court's electronic filing system to all ECF participants.

/s/ James J. Sabella