USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: March 25, 2011

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x

| | | |
|---|---|---|
| ILENE RICHMAN, Individually and on Behalf of All Others Similarly Situated, | : | 10 Civ. 03461 (PAC) |
| | : | |
| Plaintiff, | : | |
| | : | ECF Case |
| vs. | : | |
| | : | |
| GOLDMAN SACHS GROUP, INC., et al., | : | |
| | : | |
| Defendants. | : | |
| | : | |

------------------------------------------------------------------x

| | | |
|---|---|---|
| HOWARD SORKIN, Individually and on Behalf of All Others Similarly Situated, | : | 10 Civ. 03493 (PAC) |
| | : | |
| Plaintiff, | : | |
| | : | ECF Case |
| vs. | : | |
| | : | |
| GOLDMAN SACHS GROUP, INC., et al., | : | |
| | : | |
| Defendants. | : | |
| | : | |

------------------------------------------------------------------x

| | | |
|---|---|---|
| TIKVA BOCHNER, On Behalf of Herself and All Others Similarly Situated, | : | 10 Civ. 03595 (PAC) |
| | : | |
| Plaintiff, | : | |
| | : | ECF Case |
| vs. | : | |
| | : | |
| GOLDMAN SACHS GROUP, INC., et al., | : | |
| | : | |
| Defendants. | : | |
| | : | |

------------------------------------------------------------------x

[Caption continued on following page]

```
-----------------------------------------------------------------------x
DR. EHSAN AFSHANI, On Behalf of Himself and All    :    10 Civ. 03616 (PAC)
Others Similarly Situated,
                                                   :
              Plaintiff,
                                                   :    ECF Case
      vs.
                                                   :
GOLDMAN SACHS GROUP, INC., et al.,
                                                   :
              Defendants.
-----------------------------------------------------------------------x
LOUIS GOLD, Individually and on Behalf of All      :    10 Civ. 04786 (PAC)
Others Similarly Situated,
                                                   :    ECF Case
              Plaintiff,
                                                   :
      vs.
                                                   :
GOLDMAN SACHS GROUP, INC., et al.,
                                                   :
              Defendants.
-----------------------------------------------------------------------x
THOMAS DRAFT, Individually and on Behalf of All    :    10 Civ. 04812 (PAC)
Others Similarly Situated,
                                                   :    ECF Case
              Plaintiff,
                                                   :
      vs.
                                                   :
THE GOLDMAN SACHS GROUP, INC., et al.,
                                                   :
              Defendants.
-----------------------------------------------------------------------x
```

**MEMORANDUM AND ORDER Re: Securities Litigation**

HONORABLE PAUL A. CROTTY, United States District Judge:

Pending before this Court are six class actions[1] by purchasers of Goldman Sachs & Co. common stock[2] alleging that Goldman Sachs & Co., and various of its officers and directors, violated the

---

[1] The six class actions have a range of class periods, all of which fall within the 3-1/2 year class period alleged in the Gold complaint (10 Civ. 4786), beginning as of December 14, 2006; and ending as of June 9, 2010.  The seventh class action, Halman Aldubi Group v. Goldman Sachs, 10 Civ. 4918-UA, was voluntarily discontinued on October 18, 2010.

2

Securities Exchange Act of 1934 by making false and misleading statements in connection with the sale of a collateralized debt obligation ("CDO") security, titled ABACUS 2007 AC-1, in early 2007. The transaction is said to have been designed to aid one client who wanted to short the CDO while Defendants would sell the CDO to other clients. Further, the Defendants did not disclose that they received a Wells notice from the SEC in July, 2009, nor did they disclose that they responded to the notice as part of the SEC's ongoing investigations in the Fall, 2009. The SEC sued Goldman Sachs & Co. on April 16, 2010 "for making material misleading statements and discussions in connection with" ABACUS 2007 AC-1. Almost immediately, the price for Goldman Sachs & Co. common stock fell sharply. The stock fell further when the Department of Justice announced that it was commencing a criminal investigation. These disclosures are said to have caused the price of Goldman Sachs & Co.'s company stock to drop by 21% from $184.27 on April 15, 2010 to $145.20 on April 30, 2010.

The Private Securities Litigation Reform Act provides that if there is more than one action on behalf of a class with the same claim (as here), the Court shall first decide the motion to consolidate. 15 U.S.C. § 78 U-4(a)(3)(B)(ii). There is no doubt that these actions, which make nearly identical allegations, involve common questions of law and fact, should be consolidated pursuant to Federal Rule of Civil Procedure 42(a)(2). Plaintiffs have no substantive objections to consolidation;[3] and defendant concedes that the pending class actions should be consolidated.

Accordingly, the six class actions listed in the caption of this matter are consolidated.

Upon consolidation, the Court turns next to the determination of the question under the Private Securities Litigation Reform Act ("PSLRA"): who is the "most adequate plaintiff" to be appointed "as lead plaintiff for the consolidated action." 15 U.S.C. § 78 U-4(a)(3)(B)(ii).

---

[2] One of the proposed class actions, the Bochner complaint (10 Civ. 3595) involves put and call options for Goldman Sachs & Co. common stock, rather than the common stock itself. The allegations as to liability, and the need for discovery concerning those allegations, are identical to the other proposed class actions.

[3] Bochner opposes the Institutional Investors' motion to consolidate insofar as it excludes the claims of the put and call option for investors (see fn 2). But, even Bochner argues that her "action . . . be consolidated with the common stock actions because it involves common questions of law and fact and asserts essentially the same claims." Bochner does not oppose the Pension Funds motion to consolidate. (Bochner Memo, July 9, 2010, pg. 4-5).

The "most adequate plaintiff" is the "purported plaintiff class that the Court determines to be most capable of adequately representing the interests of the class." 15 U.S.C. § 78 U-4 (a)(3)(B)(i).

The PSLRA instructs the Court to presume that the most adequate plaintiff is the person or group of persons that:

>(aa) has either filed the complaint or made a motion in response to a notice under subparagraph (A)(i);
>
>(bb) in the determination of the Court who has the largest financial interest in the relief sought by the class; and
>
>(cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

There are a number of contenders for lead plaintiff status. The Court now turns to the application of the second factor as to who has the "largest financial interest." In determining the largest financial interest, courts have generally relied on the four Lax factors, so-called because they first appeared in Lax v. First Merchant Acceptance Corp., 1997 U.S. Dist. LEXIS 11866 (N.D. Ill., August 11, 1997). The four factors are:

>(1) the number of shares purchased;
>
>(2) the number of net shares purchased;
>
>(3) total net funds expended by the plaintiffs during the class period; and
>
>(4) the approximate losses suffered by the plaintiffs.

While the Lax factors are popular guides used to determine "the largest financial interest," the four Lax factors were first proposed by an applicant for lead plaintiff status and adopted by the Court without revision or analysis. See Webber, David H., "The Plight of the Individual Investors in Securities Actions," (2010), NYU Law and Economics Working Paper, Paper 216, pg. 21. The courts in this Circuit use these four factors, weigh them, balance them against one another, and then select the investor with "the largest financial interest. The Second Circuit has not established a definitive test. Nonetheless, a trend seems to be emerging that the Lax factors are properly ordered, so that the number

of shares purchased (Factor 1) is the least important and the loss suffered (Factor 4) is the most important.  The statute requires the selection of the class with the largest "financial interest."  The size of the loss (and the other Lax factors) are only a proxy—and an imperfect one—for determining this issue.

Some courts have opted for the largest loss, but how that loss is calculated varies depending on whether the FIFO or LIFO accounting method is chosen.  Southern District of New York courts have a very strong preference for the LIFO method in calculating loss.  Other courts have relied on net shares purchased during the class period as the primary indicator for "financial interest."

In many ways, the four factors overlap so that, for example, the plaintiff with the highest number of net shares purchased may well be the plaintiff with the highest potential damages recovery.  But this is not one of those cases.

There are numerous contenders for designation as lead plaintiffs.  They are the:

(1) Pension Group consisting of the Arkansas Teachers Retirement System; the West Virginia Investment Management Board; and the Plumbers and Pipefitters National Pension Group.  If selected as lead plaintiffs, the Pension Group seeks approval of its selection of Robbins Geller Rudman & Dowd, LLP and Labaton Sucharow, LLP, as lead counsel.

(2) Institutional Investors Group ("IIG") consisting of Montana Board of Investments; Metzler Investments GmbH; and Sampension KP Livsforsikring A/S.  If selected as lead plaintiffs, IIG seeks approval of its selection of Bernstein Litowitz Berger & Grossman, LLP and Grant & Eisenhofer, P.A., as lead counsel, as well as Barrack Rodos & Bacine, additional counsel for Montana Board of Investments, and Barroway Topaz Kessler Meltzer & Check, LLP, as additional counsel for Sampension KP Livsforsikring A/S.

(3) Bochner, an individual investor, who instituted her class action on behalf of persons who (i) sold Goldman put options or acquired common stock pursuant to the exercise of sold put options; and (ii) purchased Goldman call options or acquired Goldman common stock pursuant to the exercise of purchased call options.  If selected as lead plaintiff, Bochner seeks approval of her selection of Wolf Popper, LLP, as lead counsel.

(4) Pablo Elizondo seeks lead plaintiff status and approval of his selection of lead counsel.  Elizondo did not purchase Goldman Sachs stock until April 16, 2010, post-disclosures.  He would appear to be subject to unique defenses and would not be an adequate representative.  In his July 9, 2010 filing, Elizondo acknowledged that his

   claimed loss was very small; and he withdrew his application. Elizondo now supports the Pension Group.

(5) Afshani recognizes that he does not have the largest financial interest and cannot seek appointment as lead plaintiff or have his counsel selected as lead counsel. Nonetheless, Zamansky & Associates asked that it and its co-counsel, Lovell Stewart Halebian Jacobson, LLP be included as participants in the case going forward on behalf of individual investors.

Since Elizondo and Afshani do not seek lead plaintiff status, the Court turns to the three claims for lead plaintiff status. Both the IIG and the Pension Fund cite to the Lax factors and contend that a fair application of those factors leads to their selection. Each, in turn, criticizes the composition of the other, as well as the qualifications of counsel.

Bochner maintains that the Institutional Investors did not invest in Goldman put and call options and, accordingly, have no standing to assert Bochner's claims. Similarly, the Institutional Investors have no financial incentive to litigate on behalf of the proposed options class. Bochner also objects to the Pension Funds application to be lead counsel for essentially the same reason: no option investment, lack of standing, and lack of financial incentives to actively prosecute the put and call options claims. Bochner contends that if the Court were to recognize either the IIG or Pension Funds class actions to include options, there would likely be conflicts between the common stock investors and the options class in prosecuting the action and in any settlement negotiations. Having knocked out the other two contenders, Bochner is the last proposed class standing and, accordingly, claims lead plaintiff status.

Of course, Bochner's argument skips over the facts that the dollar amount and her "financial interest" are minimal to the point of being de minimis. Her proposed relief would result in a very tiny tail wagging a very large dog. Further, it would put an individual plaintiff in charge of a litigation that Congress has instructed should be guided by institutional investors.[4] Finally, the option claims raised by Ms. Bochner can be handled in other ways which fully protect the interests of her proposed class.

---

[4] S. Rep No. 104-98, at 10-11 (1995), as reprinted in 1995 U.S. C.C.A.N. 679, 689-90, ("The Committee intends to increase the likelihood that institutional investors will serve as lead plaintiffs by requiring the court to presume that the member of the class with the largest financial stake in the relief sought is the 'most adequate plaintiff.'")

The Court concludes that Ms. Bochner is not entitled to lead plaintiff status, and her selection of counsel is not relevant.

With respect to the Pension Funds and the Institutional Investors, this chart sets forth in tabular form the nature of the parties' interests:

|  | Total Shares Purchased | Net Shares Purchased | Net Expenditures | LIFO Loss | FIFO Loss |
|---|---|---|---|---|---|
| Pension Fund | 715,015 | 112,488 | 25,000,000 | 14,300,000 | 18,500,000 |
| Institutional Investors | 581,054 | 149,078 | 33,400,000 | 13,200,000 | 14,200,000 |

The Institutional Investors point to the fact that their Net Shares Purchased and Net Expenditures are significantly higher than those of the Pension Fund. In turn, the Pension Funds argue that their number of total shares is much greater; and the size of their combined losses, whether measured by FIFO or LIFO accounting methods, is greater.

The Investor Group also attacks West Virginia's status as a participant in the Pension Fund Group. West Virginia was a net seller and the Institutional Investors suggest that makes West Virginia "inadequate and atypical of the class and cannot be appointed as Lead Plaintiff." (Institutional Investors Group, Memo in Further Support, July 12, 2010, pg. 1). By knocking out West Virginia, the Institutional Investors Group's total losses, measured by the LIFO accounting methods, are larger than the Pension Fund Group's losses attributable to the remaining pension funds, the Arkansas Teachers Retirement System and the Plumbers and Pipefitters National Pension Fund.

The Institutional Investors' argument has evolved during the briefing process. Initially, it argued that it should be selected as the lead plaintiff because it had the largest loss. When the Pension Fund showed that it had the largest loss, the Institutional Investors shifted gears and attacked the composition of the Pension Fund loss. West Virginia, they argued, should be excluded because it was a net seller.

7

And, if excluded, the Institutional Investors Group regains its preeminence in the loss column.  If West Virginia is not excluded, however, so that the Pension Group has the largest loss, then Institutional Investors turn to the next argument.  Under this revised argument, the Institutional Investors ignore the fourth Lax factor and instead focus on the second and third Lax factors:  net shares purchased and net expenditures.  Under this proposed revised test, the Institutional Investors still have the largest financial interest.  Thus, the test is changed and adjusted, depending on conditions, so that the lead plaintiff status (and the right to select counsel) may be achieved.

The Pension Group emphasizes that it has the largest loss, measured by either LIFO or FIFO, and then attacks the composition of the Institutional Investors Group on the grounds of adequacy.  Other courts have recognized that groups, which have no previous affiliations with one another, may band together to aggregate their trading activities so that they may claim lead plaintiff status.  Even in this "only-for-PSLRA" world, however, the Institutional Investors are strange bedfellows.  The Group consists of a German, Danish, and U.S. entity.  The Pension Group argues that Metzler is inappropriate.  The Institutional Investors Group assures us that Metzler is an investment company organized as a Kapitalangegesellshaft (KAG), which is governed by the German Investment Act.  Sampension, based in Hellerup, Denmark, is not an investment company, but a pension fund created for the benefit of local government employees and workers in the graphical arts industry (a strange combination of interests in itself).

The Joint Declaration of the Institutional Investors Group (Graziano Affidavit, July 20, 2010, Ex. A) does not explain how the group was formed, or whether the members previously worked together. The Court assumes that both of the contending groups had their genesis in work by the proposed lead counsel.  See Iron Workers Local No. 25 Pension Fund v. Credit-Based Asset Servicing and Securitization, LLC, 616 F. Supp. 2d 461 (S.D.N.Y. 2009).  In Iron Workers, Judge Rakoff comments incisively on the working of the lead plaintiff world and how lead plaintiffs work with lead counsel.

Assembling the aggregation of monetary losses, such as we have here, to achieve the "largest financial interest" may not be exactly what Congress intended with its PSLRA reform. We have replaced what Congress deemed to be an unseemly race by individual investors (and their pre-chosen counsel) to the courthouse, with a new mechanism based on the lawyers' beguiling ability to arrange large financial figures. The group is convened for a brief moment in time over a common grievance, in order to achieve two goals: lead plaintiff status and the resulting right to select counsel.

Nonetheless, the Court agrees that groups may be formed and that foreign entities who buy stocks traded on United States exchange markets are entitled to the protection of United States securities laws. See In re: McDermott International, Inc. Securities Litigation, No. 08 Civ. 9943 (DC), 2009 WL 579502 at *2 (S.D.N.Y. March 6, 2009) (majority of courts permit unrelated investors to group together and seeking lead plaintiff status, if such an arrangement would best serve the class). Accordingly, the Court rejects the Pension Groups' arguments about the inadequacy of the composition of the Institutional Investors Group.

Similarly, the Court rejects the argument that Grant & Eisenhofer's prior representation in an unrelated derivative action involving Goldman Sachs & Co. is disqualifying. Certainly, Goldman Sachs & Co. does not make that argument. And the Pension Groups' motive in raising this remote issue is obvious.

The Court turns to the true test—which entity has the largest financial interest. The Pension Group has the largest loss, if West Virginia is included. The Institutional Investors Group emphasizes and relies on this Court's prior Order. Police & Fire Ret. Sys. v. SafeNet, Inc., 2007 U.S. Dist. LEXIS 97959, at *11 (S.D.N.Y. Feb. 21, 2007).

In Safenet, one pension group had a loss of $1.78 million and the other, a loss of $1.82 million. The investor with the largest claimed loss was not selected; but the difference in loss amounts was only $40,000. The loss here—$1.2 million—is significantly larger in dollar amount. Moreover, the larger

loss amount claimed by one entity was subject to various offsets (it sold before Safenet announced corrective measures). When the unique defense was recognized, that group no longer had the larger loss. In the end, the group with the largest possible loss was selected.

The Court rejects the Institutional Investors Group's argument that the loss factor can be ignored and that it should be selected based on their larger net shares purchased and net expenditures. Certainly, these factors have to be considered, but they are not dispositive in themselves. Most courts agree that the largest loss is the critical ingredient in determining the largest financial interest and outweighs net shares purchased and net expenditures. Foley v. Transocean Ltd., 2011 WL 103960 (S.D.N.Y. Jan. 3, 2011). The Institutional Investors concede that if West Virginia is included, that the Pension Group has the largest loss. Notwithstanding that it is a net seller, West Virginia still had losses which can be recognized and included in the Pension Group's loss calculation. While there is wisdom in the rule that net sellers who are also net gainers should not be lead plaintiffs; there is no good reason not to recognize losses which a net seller has incurred. West Virginia is well positioned to argue that the challenged conduct caused it legal harm. See id.

Accordingly, the Court finds that the Pension Group, consisting of the Arkansas Teachers Retirement System, the West Virginia Investment Management Board, and the Plumbers and Pipefitters Pension Group, has the largest financial interest in the class action litigation, and thus, is the presumptive lead plaintiff.

**Rule 23 Requirements**

The presumptive lead plaintiff must also satisfy the requirements under Federal Rule of Civil Procedure 23. 15 U.S.C. § 77z-1(a)(3)(B)(iii)(I)(cc). At this stage in the litigation, one need only make a "preliminary showing" that Rule 23's typicality and adequacy requirements have been satisfied. The most adequate plaintiff presumption "may be rebutted only upon proof by a member of the purported plaintiff class that the presumptively most adequate plaintiff—(aa) will not fairly and adequately protect

the interests of the class; or (bb) is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 77z-1(a)(B)(iii)(II).

### (a) Typicality

The typicality requirement is satisfied when the claims of the proposed lead plaintiff "arise from the same conduct from which the other class members' claims and injuries arise." In re Oxford, 182 F.R.D. at 50 (citations omitted).  The claims of the proposed lead plaintiff need not be identical to the claims alleged by other class members.  See In re Party City Sec. Litig., 189 F.R.D. 91, 107 (D.N.J. 1999).

### (b) Adequacy

The adequacy requirement is satisfied if "(1) the class counsel is qualified, experienced, and generally able to conduct the litigation; (2) the interests of the class members are not antagonistic to one another; and (3) the lead plaintiff has a sufficient interest in the outcome to ensure vigorous advocacy." In re Olsten Corp. Sec. Litig., 3 F. Supp. 2d 286, 296 (E.D.N.Y. 1998) (citations omitted).  The Pension Group also satisfies the adequacy requirement.  Its proposed co-counsels, Robbins Geller Rudman & Dowd, LLP and Labaton Sucharow, LLP, are experienced in class action litigation and have the ability to conduct the litigation effectively.  See In re Nortel Networks Corp. Securities Litigation, No. 05md1659, In re Refco Inc. Securities Litigation, No. 05cv8626, In re EVCI Career Colleges Holding Corp., No. 05cv10240.

### Lead Counsel

Under the PSLRA, the lead plaintiff shall select counsel to represent the class, subject to the court's approval.  The Pension Group has selected Robbins Geller Rudman & Dowd, LLP and Labaton Sucharow, LLP, as co-lead counsels for the class.  As mentioned previously, both firms have substantial experience litigating complex securities class actions, and are well qualified.  With respect to co-counsel, there will be "no duplication of attorneys' services, and

the use of co-lead counsel [will] not in any way increase attorneys' fees and expenses." In re La Branche & Co. LLC, 220 F.R.D. 398, 403 (S.D.N.Y. 2004).

## CONCLUSION

*I. Consolidation*

The Clerk of the Court is ORDERED, pursuant to Fed. R. Civ. P. 42(a), to consolidate: 10 Civ. 3461, 10 Civ. 3493, 10 Civ. 3595, 10 Civ. 3616, 10 Civ. 4786, and 10 Civ. 4812. These actions are consolidated as In re Goldman Sachs Group, Inc. Securities Litigation, Master File No. 1:10-cv-03461-PAC.  After being consolidated, the following cases and any pending motions in these cases shall be terminated:  10 Civ. 3493, 10 Civ. 3595, 10 Civ. 3616, 10 Civ. 4786, and 10 Civ. 4812.  Any pending motions in 10 Civ. 3461 shall also be terminated, but the case shall remain open as it has been designated as the master file number.

*II. Lead Plaintiff & Lead Counsel*

Pursuant to PSLRA, 15 U.S.C. § 78u-4(a)(3)(b) and 78-u-4(a)(3)(B)(v), the Pension Group's motion (document #18 in 10 Civ. 3461)  for appointment as lead plaintiff is GRANTED, and its choice of co-lead counsels is approved (also document # 18 in 10 Civ. 3461).  The Clerk of Court is further ORDERED to list the following as lead plaintiffs: *Pension Group, consisting of the Arkansas Teachers Retirement System, the West Virginia Investment Management Board, and the Plumbers and Pipefitters Pension Group* as lead plaintiffs.  It is further that the Clerk of Court list the law firm *of  Robbins Geller Rudman & Dowd, LLP and Labaton Sucharow, LLP* as co-lead counsels for the class.  All other applications for designation as lead counsel and selection of counsel are DENIED.

*III. Final Procedures*

The parties are directed to meet and confer and to prepare a Civil Case Management Plan with due allowance for time to file an amended class action pleading and to answer, or otherwise respond to

12

the amended complaint. The Plan should address coordination of discovery and case management with the eight derivative actions which are consolidated in a separate Order. See 10 Civ 3614. The parties should submit the agreed upon plan (or any differences which have to be resolved) ten days in advance of the next Civil Case Management Conference. The conference will be held on Tuesday, May 24, 2011, at 4:30 p.m., in Courtroom 20-C.

Dated: New York, New York
       March 25, 2011

SO ORDERED

*[signature]*
PAUL A. CROTTY
United States District Judge