

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————————— x
                                              :
In re GOLDMAN SACHS GROUP, INC.               :    Master File No. 1:10-cv-03461-PAC
SECURITIES LITIGATION                         :
                                              :    CLASS ACTION
——————————————————————                        :
                                              :    "ECF Case"
This Document Relates To:                     :
                                              :    LETTER OF REQUEST FOR
      ALL ACTIONS.                            :    INTERNATIONAL JUDICIAL
                                              x    ASSISTANCE PURSUANT TO THE
———————————————————— x                             HAGUE CONVENTION TO PERMIT
                                                   TRIAL TESTIMONY FROM GEORGE
                                                   MALTEZOS

EXHIBIT 1

| | |
|---|---|
| **SENDER:** | United States District Court for the Southern<br>District of New York<br>Daniel Patrick Moynihan<br>United States Courthouse<br>Courtroom 11D<br>500 Pearl St.<br>New York, NY 10007-1312<br>United States of America |
| **CENTRAL AUTHORITY OF<br>THE REQUESTED STATE:** | Competent Authority of Australia<br>Private International Law Section<br>Australian Government<br>Attorney-General's Department<br>3-5 National Circuit<br>BARTON, ACT 2600<br>Australia |
| **PERSON TO WHOM THE<br>EXECUTED REQUEST IS TO<br>BE RETURNED:** | Ben Slade<br>NSW Managing Principal<br>Maurice Blackburn Pty Ltd.<br>Level 20, 201 Elizabeth Street<br>Sydney, NSW 2000<br>Australia |

      In conformity with Article 3 of the Hague Convention of 18 March 1970 on the Taking of Evidence Abroad in Civil or Commercial Matters (23 U.S.T. 2555, T.I.A.S. No. 7444) (the "Hague Convention") and Part 4 of the Evidence on Commission Act of 1995 (NSW), the undersigned has the honor to submit the following request:

      THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK (the "Court"), presents its compliments to the Australian Attorney-General's Department as the Central Authority of Australia and to the Supreme Court of New South Wales, and requests international judicial assistance to obtain evidence to be used in a civil proceeding before the Court in the above-captioned matter. This Court has determined that it would further the interests of justice if testimony were taken from the person identified herein, under oath, for possible use at trial. The testimony sought by this letter of request is not available from other sources.

- 1 -

937790_1

## I.     THE PARTIES AND REPRESENTATIVES

### A.     The Applicants

The Applicants, Plaintiffs Arkansas Teachers Retirement System, the West Virginia Investment Management Board, and the Plumbers and Pipefitters National Pension Fund (collectively, "Plaintiffs"), represent a putative class of persons who purchased the securities of The Goldman Sachs Group, Inc. ("Goldman") between February 5, 2007, and June 10, 2010, inclusive (the "Class Period"). The Applicants may be contacted through their attorneys:

Spencer A. Burkholz
Jonah H. Goldstein
Robert R. Henssler, Jr.
Eric. I. Niehaus
Brian E. Cochran
Robbins Geller Rudman & Dowd LLP
655 West Broadway, Suite 1900
San Diego, CA, 92101
United States of America
Telephone: (619) 231-1058
Facsimile: (619) 231-7423

Thomas A. Dubbs
James W. Johnson
Michael H. Rogers
Irina Vasilchenko
Labaton Sucharow LLP
140 Broadway, 34th Floor
New York, NY 10005
United States of America
Telephone: (212) 907-0700
Facsimile: (212) 818-0477

### B.     The Defendants

The Defendants are Goldman and the Individual Defendants: Lloyd C. Blankfein, David A. Viniar, and Gary D. Cohn. The Individual Defendants are present or former officers and/or directors of Goldman. All Defendants are represented by the same counsel and may be contacted through their attorneys:

- 2 -

937790_1

Richard R. Klapper
Theodore Edelman
David M.J. Rein
Benjamin R. Walker
Sullivan & Cromwell LLP
125 Broad Street
New York, NY 10004-2498
United States of America
Telephone: (212) 558-4000
Facsimile: (212) 558-3588

## II.   NATURE AND PURPOSE OF THE PROCEEDINGS AND SUMMARY OF THE FACTS

### A.   Plaintiffs' Allegations

This is a civil class action being actively litigated in the United States District Court for the Southern District of New York before the Honorable Paul A. Crotty. *See In re Goldman Sachs Grp., Inc. Secs. Litig.*, No. 1:10-cv-03461-PAC (S.D.N.Y.).  Plaintiffs in this class action allege that Defendants violated Sections 10(b) and 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. §78j(b), and Rule 10b-5 of the Securities and Exchange Commission Rules by disseminating false statements during the Class Period that they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.  A copy of the operative complaint is attached hereto as Exhibit A.

Goldman is a financial holding company, headquartered in New York, New York, that provides global banking, securities and investment management services in the United States and internationally.  On April 16, 2010, the United States Securities and Exchange Commission ("SEC") charged Goldman with securities fraud for creating and selling to its clients a portfolio of securities titled Abacus 2007-AC1 ("Abacus"), a collateralized debt obligation ("CDO"), that Goldman allegedly designed to fail in order to benefit Paulson & Co. Inc. ("Paulson"), a New York-based hedge fund.  The SEC asserted that Goldman failed to disclose to its clients that Paulson had played

- 3 -

937790_1

a major role in structuring Abacus or that Paulson had taken a massive short position in the CDO. According to the SEC, in less than a year, Paulson earned more than $1 billion from the collapse of Abacus, while Goldman's clients lost approximately $1 billion. Ultimately, in order to settle the SEC charges related to Abacus, Goldman paid $550 million.

In April 2010, the United States Senate Permanent Subcommittee on Investigations ("Senate Subcommittee") released Goldman's internal emails and, in April 2011, issued a report (the "Senate Report"[1]), which asserted that, beginning in late 2006 through early 2008, Goldman made billions of dollars betting against the very mortgage-related CDOs that it sold to its clients, and structured and underwrote Abacus to fail in order to allow a favored client to profit at the expense of Goldman's other clients who bought Abacus.[2]

The Senate Report further asserted that Goldman engaged in pervasive conflicts of interest with its clients and improper business practices. The Senate Report identified four particular CDO deals structured by Goldman in 2006-2007, namely Abacus, Hudson Mezzanine Funding 2006-1 ("Hudson"), Timberwolf I ("Timberwolf"), and Anderson Mezzanine 2007-1 ("Anderson") (collectively, the "Four CDOs"), which it alleged that Goldman improperly structured to unload toxic mortgage assets on to its clients while hiding their impaired value, substantial risks and/or the fact that Goldman (or its favored clients) were betting that those same securities would significantly decline in value.

---

[1]  *See* Report of the Permanent Subcommittee of Investigation of the United States Senate, entitled "Wall Street and the Financial Crisis: Anatomy of a Financial Collapse," dated April 13, 2011, *available at* http://www.hsgac.senate.gov/subcommittees/investigations/reports?c=112.

[2]  Although Defendants do not oppose Plaintiffs' Letter of Request, Defendants disagree with the factual assertions set forth herein and dispute the views expressed in the Senate Report concerning Goldman Sachs.

- 4 -

Plaintiffs allege that Goldman's conduct rendered its statements during the Class Period regarding its conflicts of interests, internal controls and client practices materially false and misleading. Plaintiffs allege that they suffered damages in that, in reliance on the integrity of the market, they paid artificially inflated prices for Goldman securities and suffered economic loss when the value of those securities declined upon disclosure of the fraud.

## B.  Knowledge of the Person to Be Examined

Plaintiffs are seeking to obtain testimony, for use at trial, from George Maltezos, a former Goldman Australian sales representative. Plaintiffs believe that Mr. Maltezos has knowledge about certain facts underlying this action that Plaintiffs would seek to admit at trial. Plaintiffs maintain that the Senate Report and documents produced by Defendants reveal that Mr. Maltezos was one of the salespersons for the CDOs at issue in this case, in particular Timberwolf and Hudson, during the relevant period.

As alleged by the Senate Report, Timberwolf was a $1 billion hybrid-CDO squared constructed by Goldman that closed in March 2007 that began losing value almost as soon as its underlying assets were issued. Senate Report at 393-395, 541-559. The Senate Report asserts that Goldman rushed Timberwolf to market approximately six weeks ahead of schedule, engaging in an aggressive campaign to sell Timberwolf to its clients while concealing its poor asset quality. *Id.* at 394. According to the Senate Report, Goldman specifically targeted clients in Australia and elsewhere that it felt would be easier to dupe into purchasing Timberwolf securities for far more than Goldman knew they were worth. *Id.* Mr. Maltezos, one of the salespersons responsible for Timberwolf, targeted these clients, including Basis Capital Management ("Basis"). *Id.* at 499, 549-552. In an April 2007 email from Mr. Maltezos to a Goldman trader, entitled "utopia," Mr. Maltezos described Basis as a "white elephant, flying pig and unicorn all at once." *Id.* at 499. Plaintiffs contend that documents show that Mr. Maltezos repeatedly urged Basis to invest in Timberwolf, at

- 5 -

one point stating in an email to Basis that Timberwolf would "help create something where the return on invested capital for Basis is over 60%," despite Goldman's internal marks showing Timberwolf securities were fast losing value. *Id.* at 549. The Senate Report asserts that, later in 2007, Mr. Maltezos provided inaccurate pricing information to Basis to conceal the fact that Goldman's internal marks showed its CDO products were worth much less than disclosed. *Id.* at 550-551. When Basis confronted Mr. Maltezos about the valuation issue on Timberwolf, Mr. Maltezos responded: "I assure you no foul here." *Id.* at 551.

The Senate Report suggests that, as a result of Mr. Maltezos's sales efforts, Basis invested $100 million in Timberwolf on June 13, 2007. *Id.* at 550-552. Almost immediately, this investment began to lose value. *Id.* at 552. Less than two months later, the value of Basis's Timberwolf holdings had collapsed more than 50%. *Id.* By the end of July 2007, Basis liquidated its hedge fund. *Id.* Goldman repurchased the Timberwolf securities at a fraction of the price it had sold them to Basis. *Id.*

According to the Senate Report, Hudson was a $2 billion synthetic CDO that Goldman created in late 2006 in order to unload toxic mortgage-related assets off of its books and on to the books of its clients. *Id.* at 390-392, 517-532. Despite the fact that all of the assets in Hudson came from Goldman, marketing materials stated that Hudson's assets were "sourced from the Street" and that it was "not a Balance Sheet CDO," which some have interpreted to mean that the assets were provided by third parties. *Id.* at 525-526. The Senate further asserts that Goldman concealed from potential investors that it had taken a massive short position against Hudson's assets, instead stating that Goldman's interests were "aligned" with investors due to Goldman's equity investments. *Id.* at 525. In addition, Goldman purportedly concealed many of the multiple roles it played in the formation and administration of Hudson. *Id.* at 526-527, 531.

937790 1

Based on the Senate Report, Plaintiffs believe that Mr. Maltezos participated substantially in the sale and marketing of Hudson. *Id.* at 531. For example, the Senate Report asserts that Mr. Maltezos was a salesperson responsible for Goldman's efforts to sell Hudson to Mariner Financial ("Mariner"), an Australian financial services group. *Id.*, Exhibit Footnote 2289. In early March 2007, less than three months after Hudson was issued, Mr. Maltezos was informed in an email from a Goldman trader that the "likelihood of getting principal back is almost zero" for Mariner and other Goldman clients that invested in the CDO. *Id.*

Plaintiffs contend that Mr. Maltezos could testify at trial regarding, among other topics, his personal knowledge of: Goldman's sales practices in relation to the Four CDOs; the creation, valuation and marketing of the Four CDOs; what was known by which Goldman personnel and when regarding the Four CDOs; the various roles played by Goldman personnel in the creation, sale and marketing of the Four CDOs; the nature of representations made by Goldman to potential clients regarding the Four CDOs; client reactions and responses to the sharp downgrades in the Four CDOs; the prevailing market sentiment at the time of the issuance of the Four CDOs; Goldman's conflict of interest policies and practices and internal controls as they related to Goldman's sales personnel during the relevant time period; Goldman's sales and marketing protocols and international sales efforts; and so on.

## III.   ADDRESS OF THE PERSON TO BE EXAMINED

George Maltezos
c/o Maltisian Capital Pty Ltd
Level 13, 167 Macquarie Street
Sydney NSW 2000
Australia

## IV.   PROCEDURAL STATUS OF THE CASE

This case is currently in discovery. The fact discovery deadline is June 16, 2014. The Court has yet to set a trial date.

- 7 -

## V.    EVIDENCE TO BE OBTAINED

### A.    Purpose

The evidence to be obtained consists of testimony for use in trial of this class action and is necessary for the just and proper disposal of the proceedings before this Court.  This Court respectfully requests the Australian Attorney-General's Department as the Central Authority of Australia and the Supreme Court of New South Wales to require George Maltezos to appear and to testify, under oath.

### B.    Relevant Time Period

All testimony relates to the period from January 1, 2006 to December 31, 2008.

### C.    Topics For Examination

The following constitutes a non-exhaustive list of anticipated areas of examination:

(i)      sales efforts related to the Four CDOs, and the importance of these sales efforts to Goldman personnel;

(ii)     the creation, valuation and marketing of the Four CDOs to potential investors, and the roles of various salespersons and other Goldman personnel in these efforts;

(iii)    the identity of clients who invested or were targeted for investment in the Four CDOs;

(iv)    Mr. Maltezos's personal knowledge of what was known by Goldman personnel and when regarding the Four CDOs and to what extent this internal knowledge was disclosed to Goldman's clients;

(v)     Mr. Maltezos's personal knowledge of client reactions and responses to the sharp downgrades in the Four CDOs, and Goldman's awareness of these effects and client responses;

- 8 -

937790_1

(vi)      Mr. Maltezos's personal knowledge of the prevailing market sentiment at the time of the issuance of the Four CDOs, and how this contrasted to Goldman's internal knowledge;

(vii)      Mr. Maltezos's personal knowledge of and experience with Goldman's conflict of interest policies and practices and internal controls during the relevant time period as they related to Goldman's sales personnel;

(viii)      Mr. Maltezos's personal knowledge of and experience with Goldman's sales and marketing protocols during the relevant time period;

(ix)      Mr. Maltezos's personal knowledge of and experience with Goldman's international sales efforts and the decision to target certain international clients for the Four CDOs; and

(x)      Compensation received by Mr. Maltezos and other Goldman personnel for their efforts in selling the Four CDOs.

## VI.   OTHER MATTERS

### A.   Requirement that the Evidence Be Given Under Oath and Special Form to Be Used

This Court respectfully requests that you require that the testimony given during the examination be given under the following oath: "I, George Maltezos, swear or affirm that the testimony that I am about to give is the truth, the whole truth and nothing but the truth." In the event that the law of Australia does not permit the swearing of this oath by a witness, the duly appointed officer shall make inquiry of such witness to ensure that he understands the gravity of the procedure and affirms that his statement will be true and correct in all respects.

- 9 -

**B.**     **Special Methods or Procedures to Be Followed**

(i)        This Court requests that, pursuant to regulation 52.1(1)(a) of the Uniform Civil Procedure Rules 2005 (NSW), Mr. Ben Slade of Maurice Blackburn Pty Ltd. be granted leave to commence proceedings for an order under Section 33 of the Evidence on Commission Act 1995 (NSW).

(ii)       This Court respectfully requests that the examination be taken orally and be recorded verbatim in writing, and videotaped, and that the transcript of the testimony be authenticated in accordance with your procedure. With respect to the transcript of the testimony, we request that we be permitted to provide a United States court reporter to transcribe the oral examination.

(iii)      This Court respectfully requests that counsel for Plaintiffs and Defendants be permitted to attend the examination, and further requests that the witness be examined by counsel for the Plaintiffs and Defendants, being practitioners of the United States of America.

**C.**     **Request for Notification of the Time and Place for the Execution of the Request and the Identity and Address of the Person to Be Notified**

(i)        This Court respectfully requests that the examination commence on May 16, 2014, or a date as soon as practicable thereafter.

(ii)       This Court respectfully requests the following persons be notified:

Spencer A. Burkholz
Jonah H. Goldstein
Robert R. Henssler, Jr.
Eric. I. Niehaus
Brian E. Cochran
Robbins Geller Rudman & Dowd LLP
655 West Broadway, Suite 1900
San Diego, CA, 92101
United States of America
Telephone: (619) 231-1058
Facsimile: (619) 231-7423

- 10 -

937790_1

Thomas A. Dubbs
James W. Johnson
Michael H. Rogers
Irina Vasilchenko
Labaton Sucharow LLP
140 Broadway, 34th Floor
New York, NY 10005
United States of America
Telephone: (212) 907-0700
Facsimile: (212) 818-0477

Richard R. Klapper
Theodore Edelman
David M.J. Rein
Benjamin R. Walker
Sullivan & Cromwell LLP
125 Broad Street
New York, NY 10004-2498
United States of America
Telephone: (212) 558-4000
Facsimile: (212) 558-3588

### D.    Fees and Costs

Fees and costs incurred which are reimbursable under the second paragraph of Article 14 or

under Article 26 of the Hague Convention will be borne by the Plaintiffs.  Plaintiffs' payment of any

such fees and costs is without prejudice to their making a subsequent request to be reimbursed for

these costs by other parties to the action.

DATED: __May 6, 2014__          _____

THE HONORABLE PAUL A. CROTTY
UNITED STATES DISTRICT JUDGE

- 11 -

937790 1

DATED:  April 30, 2014

LABATON SUCHAROW LLP
Thomas A. Dubbs
James W. Johnson
Louis Gottlieb
Michael H. Rogers

ROBBINS GELLER RUDMAN
    & DOWD LLP
Spencer A. Burkholz
Jonah H. Goldstein
Robert R. Henssler Jr.
Eric I. Niehaus
Brian E. Cochran

s/ James W. Johnson
James W. Johnson

140 Broadway, 34th Floor
New York, NY  10005
Telephone:  212/907-0700
212/818-0477 (fax)

s/ Robert R. Henssler Jr.
Robert R. Henssler Jr.

655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)

ROBBINS GELLER RUDMAN
    & DOWD LLP
Samuel H. Rudman
58 South Service Road, Suite 200
Melville, NY  11747
Telephone:  631/367-7100
631/367-1173 (fax)

*Co-Lead Counsel for Lead Plaintiffs*

937790_1