**SULLIVAN & CROMWELL LLP**

TELEPHONE: 1-212-558-4000
FACSIMILE: 1-212-558-3588
WWW.SULLCROM.COM

*125 Broad Street*
*New York, NY 10004-2498*

LOS ANGELES • PALO ALTO • WASHINGTON, D.C.

FRANKFURT • LONDON • PARIS

BEIJING • HONG KONG • TOKYO

MELBOURNE • SYDNEY

May 8, 2014

*By ECF*

The Honorable Paul A. Crotty,
   United States District Court,
      Southern District of New York,
         500 Pearl Street, Room 735,
           New York, New York  10007.

    Re:   <u>In re Goldman Sachs Group, Inc. Secs. Litig.</u>, Master File No. 1:10-cv-03461-PAC

Dear Judge Crotty:

        Pursuant to Rule 3(D) of the Court's Individual Practices, Defendants in the above-referenced action ("Action") respectfully request a pre-motion conference to seek leave to file a motion for reconsideration of the Court's Opinion and Order, dated June 21, 2012, denying in part Defendants' motion to dismiss ("Dismissal Decision"), or alternatively for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c).  Controlling Second Circuit decisions issued since the Dismissal Decision, most recently in *City of Pontiac Policemen's and Firemen's Retirement Sys.* v. *UBS AG*, 2014 WL 1778041 (2d Cir. May 6, 2014) ("*UBS*") (copy attached as Exhibit A), make clear that the disclosures remaining at issue in this Action are inactionable as a matter of law.  The Court thus should reconsider its Dismissal Decision and dismiss the Action in its entirety.  *See Cobalt Multifamily Investors I, LLC* v. *Shapiro*, 2009 WL 2058530, at *5 (S.D.N.Y. July 15, 2009) (reconsideration proper "at any time before the entry of judgment"); *cf. Jovanovic* v. *City of New York*, 2008 WL 355515, at *1 n.2 (S.D.N.Y. Feb. 7, 2008) ("An intervening change of controlling law is considered sufficient justification for granting a motion for reconsideration."); *see also Deeters* v. *Phelan Hallinan & Schmieg, LLP*, 2013 WL 6524625, at *2 (W.D. Pa. Dec. 12, 2013) (considering motion for judgment on the pleadings in alternative to motion for reconsideration).

        Pursuant to the Private Securities Litigation Reform Act of 1996 ("PSLRA") and the Court's inherent powers, the Court also should stay ongoing discovery pending its decision on Defendants' anticipated motion, particularly as to senior Goldman Sachs executives who would otherwise be burdened with depositions in the near future.  *See, e.g.*, *In re Salomon Analyst Litig.*, 373 F. Supp. 2d 252, 256 (S.D.N.Y. 2005) (granting discovery stay in light of renewed motion to dismiss based on "intervening appellate decision" in order to "afford the parties an opportunity to brief the implications of that decision").

        ***Controlling Second Circuit Decisions Issued Since the Court's Prior Ruling Require Dismissal of Plaintiffs' Remaining Claims.***  The Court's Dismissal Decision permitted Plaintiffs' claims to proceed to the extent predicated on statements concerning Goldman Sachs' general business principles and Goldman Sachs' efforts to manage conflicts of interest (*see* Compl. (Dkt No. 68) ¶¶ 134, 154, 289), finding that those disclosures were not immaterial as a matter of law, *Richman* v. *Goldman Sachs Grp., Inc.*, 868 F. Supp. 2d 261, 280 (S.D.N.Y. 2012).

The Honorable Paul A. Crotty -2-

Following the Court's ruling, the Second Circuit has issued a series of opinions making clear that the standard enunciated in *ECA & Local 134 IBEW Joint Pension Trust of Chicago* v. *JP Morgan Chase Co.*, 553 F.3d 187, 205-206 (2d Cir. 2009) ("*JP Morgan*"), that general statements of business principles are not actionable, fully applies to the types of statements that remain at issue here. The Second Circuit confirmed in *UBS* that "it is well-established that general statements about reputation, integrity, and compliance with ethical norms are inactionable 'puffery,' meaning that they are 'too general to cause a reasonable investor to rely upon them.'" *UBS*, 2014 WL 1778041, at *5. The Second Circuit underscored that establishing materiality requires more than showing that the disclosure at issue involves an important matter, such as the business principles and ethics here:

> But while importance is undoubtedly a *necessary* element of materiality, importance and materiality are not synonymous. To be "material" within the meaning of § 10(b), the alleged misstatement must be sufficiently specific for an investor to reasonably rely on that statement as a guarantee of some concrete fact or outcome which, when it proves false or does not occur, forms the basis for a § 10(b) fraud claim.

*Id.* at *6 (emphasis in original); *see also JP Morgan*, 553 F.3d at 206.

The statements remaining at issue here are the same type of statements found to be immaterial as a matter of law in *UBS*. For example, Goldman Sachs' general statements that "[i]ntegrity and honesty are at the heart of our business," "[o]ur reputation is one of our most important assets" and "[w]e are dedicated to complying fully with the letter and spirit of the laws, rules and ethical principles that govern us," *Richman*, 868 F. Supp. 2d at 277, are substantively indistinguishable from UBS's statements that "preserving UBS's integrity is vital to its most valuable asset—its reputation," "UBS aims to comply with all applicable provisions and to work closely and maintain good relations with regulators in all jurisdictions where the firm conducts business," and "UBS expects its employees to follow [a code of ethics, which] outlines the required standards of fairness, honesty[,] and integrity," *In re UBS AG Sec. Litig.*, 2012 WL 4471265, at *34 (S.D.N.Y. Sept. 28, 2012) (emphasis omitted). Similarly, Goldman Sachs' statement that "[w]e have extensive procedures and controls that are designed to . . . address conflicts of interest," *Richman*, 868 F. Supp. 2d at 277, is analogous to UBS's statement that "[o]ur operational risk management and control systems and processes are designed to ensure the risks associated with our activities . . . are appropriately controlled," Amended Consolidated Securities Class Action Complaint at 537, *In re UBS*, 2012 WL 4471265 (No. 07 Civ. 11225). The Second Circuit held that it is "well-established" that these sorts of general and "explicitly aspirational" statements are not actionable. *UBS*, 2014 WL 1778041, at *5.

The *UBS* decision culminated a series of Second Circuit decisions to the same effect issued after the Dismissal Decision. In *Boca Raton Firefighters & Police Pension Fund* v. *Bahash*, the Second Circuit held that a credit rating agency's similar "generalizations about a company's business practices and integrity" were too subjective, generic and indefinite to be actionable under the securities laws. 506 F. App'x 32, 37 (2d Cir. 2012). And two weeks prior to its decision in *UBS*, the Second Circuit affirmed in relevant part a decision by Judge Scheindlin in which she recognized that the "Second Circuit has held, as a blanket matter, that 'statements that are too general to cause a reasonable investor to rely upon them' such as 'generalizations about a company's business practices and integrity' may not form the basis for a Rule 10b-5 fraud claim." *Gusinsky* v. *Barclays PLC*, 944 F. Supp. 2d 279, 289 (S.D.N.Y. 2013) (quotation marks omitted) (citing *Boca Raton*, 506 F. App'x at 37), *reconsideration denied* (June 13, 2013), *aff'd in relevant part sub nom, Carpenters Pension Trust Fund of St. Louis* v. *Barclays PLC*, 2014 WL 1645611 (2d Cir. Apr. 25, 2014).

Significantly, the plaintiffs in *UBS* and *Boca Raton* (both represented by a law firm that represents Plaintiffs here) relied on this Court's Dismissal Decision in their appellate briefing, and in both instances, the Second Circuit ruled for the defendants notwithstanding those arguments. *See, e.g.*, Brief and Special Appendix on Behalf of Plaintiffs-Appellants at 35-36, *UBS*, 2014 WL 1778041 (No. 12-4355-cv) (citing *Richman*, 868 F. Supp. 2d at 277); Appellant's Reply Brief at 5-6, *Boca Raton*, 506 F. App'x 32 (No. 12-1776-cv) (citing *Richman*, 868 F. Supp. 2d at 277 n. 8). Defendants respectfully submit that the Second Circuit's repeated reaffirmation of *JP Morgan*'s principles, despite repeated citations to the Dismissal Decision, warrants reconsideration of that ruling, particularly given that the statements at issue in *UBS* and here are substantively identical.

***Discovery Should be Stayed Pending Resolution of Defendants' Motion.*** The Court should stay discovery pending resolution of Defendants' anticipated motion. Courts broadly construe the PSLRA to permit discovery stays for "any motion to dismiss," regardless of its procedural form, including where, as here, a party seeks dismissal in light of an intervening appellate decision following initial denial of a dismissal motion. *See In re Salomon Analyst Litig.*, 373 F. Supp. 2d at 256; *see also Gardner v. Major Auto. Companies*, 2012 WL 1230135, at *3 (E.D.N.Y. Apr. 12, 2012) (PSLRA stay "appl[ies] to both initial and successive motions to dismiss"); *see also, e.g., In re S. Pac. Funding Corp. Sec. Litig.*, 83 F. Supp. 2d 1172, 1174, 1175 n.1 (D. Or. 1999) (discovery stayed pending new dismissal motions after intervening appellate decisions "affect[ing the court's] prior holdings.") Moreover, the Court plainly possesses the inherent power to stay discovery.

With a month and a half to the close of what has been extraordinarily burdensome fact discovery, eleven noticed depositions remain outstanding, including the three individual defendants, seven other former or current Goldman Sachs employees and one non-party. The parties also remain at odds regarding several unresolved document requests and subpoenas. We anticipate that expert discovery will require considerable attention (and cost) during the three and a half months prior to the September 1, 2014 deadline for its completion. The parties should not continue to expend their own or the Court's time and resources on burdensome discovery and disputes when the Second Circuit has made so clear that Plaintiffs' claims are deficient as a matter of law.

At a minimum, the Court should order the parties to defer impending depositions of the three individual defendants, Lloyd Blankfein (Chairman and CEO of Goldman Sachs), Gary Cohn (President and COO) and David Viniar (former CFO). *See, e.g., Chevron Corp. v. Donziger*, 2013 WL 1896932, at *1 (S.D.N.Y. May 7, 2013) ("Because of the possibility of business disruption and the potential for harassment, courts give special scrutiny to requests to depose high-ranking corporate . . . officials, who are sometimes referred to as 'apex witnesses.'")

We are available at the Court's convenience to address these issues further.

Respectfully submitted,

Richard H. Klapper

cc: Counsel of Record