UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------X
                                                   :

IN re GOLDMAN SACHS GROUP, INC.    :
SECURITIES LITIGATION                        :    Master File No. 10 Civ. 3461 (PAC)
                                                   :
This Document Relates To:                    :
                                                   :    **MEMORANDUM & ORDER**
     ALL ACTIONS                          :
                                                   :
------------------------------------------------------------X

> USDC SDNY
> DOCUMENT
> ELECTRONICALLY FILED
> DOC #: _____
> DATE FILED: June 23, 2014

HONORABLE PAUL A. CROTTY, United States District Judge:

      In this consolidated securities class action, Plaintiffs allege that Goldman Sachs Group, Inc. ("Goldman") and certain of its senior executives (collectively, "Defendants") made material misstatements and misleading omissions relating to four collateralized debt obligation ("CDO") transactions in 2006 and 2007. Previously, the Court (1) granted Defendants' motion to dismiss claims regarding their failure to disclose Goldman's receipt of Wells notices from the Securities and Exchange Commission ("SEC"), but (2) denied the motion with respect to claims that Goldman had made misstatements about its conflicts of interest in those transactions. *See Richman v. Goldman Sachs Grp., Inc.*, 868 F. Supp. 2d 261 (S.D.N.Y. 2012). Defendants now move for partial reconsideration of that decision on the grounds that three intervening Second Circuit decisions have clarified what kinds of statements constitute inactionable "puffery." The motion is denied.

## BACKGROUND

**A. The Court's Prior Decision**

      As explained more fully in the Court's prior decision, Plaintiffs allege that Goldman improperly failed to disclose that it, or a favored client, held short positions in certain CDO

transactions that it sold to other clients.  *See id.* 269–71.  That is, Goldman allegedly had conflicts of interests with those buyer-clients because it was selling them the same financial products that it was effectively betting against and profiting from the clients' losses.  *See id.*  In three of those transactions, "Goldman affirmatively represented that it held a long position in the equity tranches, without disclosing its substantial short positions." *Id.* at 278.  In one of those three, "Goldman stated that it had 'aligned incentives' with investors by 'investing in a portion of equity,' which amounted to $6 Million, without disclosing that it also held 100% of the short position at the same time, which amounted to $2 Billion." *Id.* at 278–79.

In light of the foregoing conduct, Plaintiffs claim that the following statements made by Defendants during the class period were materially misleading:

- "[W]e increasingly have to address potential conflicts of interest, including situations where our services to a particular client or our own proprietary investments or other interests conflict, or are perceived to conflict, with the interest of another client . . . ." (Compl. ¶ 134 (Form 10–K))

- "We have extensive procedures and controls that are designed to . . . address conflicts of interest." (Compl. ¶¶ 134, 154 (Form 10–K))

- "Our clients' interests always come first. Our experience shows that if we serve our clients well, our own success will follow." (Compl. ¶ 154 (Goldman Annual Report))

- "We are dedicated to complying fully with the letter and spirit of the laws, rules and ethical principles that govern us.  Our continued success depends upon unswerving adherence to this standard." (Compl. ¶ 154 (Goldman Annual Report))

- "Integrity and honesty are at the heart of our business." (Compl. ¶ 289 (Goldman Annual Report))

- "Most importantly, and the basic reason for our success, is our extraordinary focus on our clients." (Compl. ¶ 154 (Viniar's Statements on Goldman's Investor Conference Call))

- "Our reputation is one of our most important assets." (Compl. ¶ 154 (Form 10–K))

*See* 868 F. Supp. 2d at 277.

Both parties previously addressed *ECA & Local 134 IBEW Joint Pension Trust of Chi. v. JP Morgan Chase Co.*, 553 F.3d 187, 206 (2d Cir. 2009) ("*JP Morgan*"), which held that the statements at issue were "no more than 'puffery'" because they were "too general to cause a reasonable investor to rely upon them." The defendant's statements at issue there were that it "had 'risk management processes [that] are highly disciplined and designed to preserve the integrity of the risk management process,' that it 'set the standard' for 'integrity,' and that it would 'continue to reposition and strengthen [its] franchises with a focus on financial discipline.'" *Id.* at 205–06 (citations omitted). The plaintiffs argued that those statements "were misleading because [defendant]'s poor financial discipline led to liability in the WorldCom litigation and involvement in the Enron scandal." *Id.* at 206. The Second Circuit rejected the argument, reasoning that they "were merely generalizations regarding [defendant]'s business practices" and did not "amount to a guarantee that its choices would prevent failures in its risk management practices." *Id.*

In this case, the Court rejected Defendants' argument that *JP Morgan* required dismissal: "[T]he Court cannot say that Goldman's statements that it complies with the letter and spirit of the law and that its success depends on such compliance, its ability to address 'potential' conflict of interests, and valuing its reputation, would be so obviously unimportant to a reasonable investor." 868 F. Supp. 2d at 280.

### B. Intervening Second Circuit Decisions

Defendants cite three subsequent Second Circuit decisions which held that certain general statements about compliance, reputation, and integrity were inactionable puffery. *See City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*, No. 12-4355-CV, 2014 WL 1778041, at *5, 6 (2d Cir. May 6, 2014) ("*UBS*"); *Carpenters Pension Trust Fund of St. Louis v. Barclays*

3

*PLC*, No. 13-2678-CV, 2014 U.S. App. LEXIS 7864, at *22–23 (2d Cir. Apr. 25, 2014) ("*Barclays*"); *Boca Raton Firefighters & Police Pension Fund v. Bahash*, 506 F. App'x 32, 37 (2d Cir. 2012) (summary order) ("*Bahash*").  Defendants contend that if applied here, these cases would result in dismissal of the pending claims.

In *UBS*, the defendant stated that it "held its employees to the highest ethical standards and complied with all applicable laws, and that [its] wealth management division did not provide services to clients in the United States when, in fact, [it] was [allegedly] engaged in [a] cross-border tax scheme."  2014 WL 1778041, at *4.  The Second Circuit affirmed dismissal of the plaintiffs' claim that the statements were misleading:

> It is well-established that general statements about reputation, integrity, and compliance with ethical norms are inactionable "puffery" . . . .  This is particularly true where, as here, the statements are explicitly aspirational, with qualifiers such as "aims to," "wants to," and "should."  Plaintiffs' claim that these statements were knowingly and verifiably false when made does not cure their generality, which is what prevents them from rising to the level of materiality required to form the basis for assessing a potential investment.

*Id.* at *5 (citing *JP Morgan*, 553 F.3d at 206).  The court also affirmed dismissal of a claim that defendant had falsely stated that it "avoided 'concentrated positions' of assets," though it had accumulated a portfolio of $100 billion in residential mortgage-backed securities ("RMBS") and related CDOs.  *Id.* at *6–7.  The court observed that the plaintiffs' contention that this statement was an "important" representation missed the mark: "[W]hile importance is undoubtedly a *necessary* element of materiality, importance and materiality are not synonymous.  To be 'material' within the meaning of § 10(b), the alleged misstatement must be sufficiently specific for an investor to reasonably rely on that statement as a guarantee of some concrete fact or outcome . . . ."  *Id.* at *6 (citing, *inter alia*, *JP Morgan*, 553 F.3d at 206).  The court further explained that the statements at issue were "too open-ended and subjective to constitute a

guarantee that UBS would not accumulate a $100 billion RMBS portfolio, comprising 5% of UBS's overall portfolio, or 16% of its trading portfolio." *Id.* at *7.

In *Barclays*, the defendant stated that "[m]inimum control requirements have been established for all key areas of identified risk," even though it allegedly "submit[ted] false information for the purpose of calculating the London Interbank Offered Rate ("LIBOR")" and "had no specific systems or controls for its LIBOR submissions process." 2014 U.S. App. LEXIS 7864, at *3, 9. The Second Circuit affirmed dismissal on the grounds that the plaintiffs did not "demonstrate with specificity that Barclays's minimum control statements were false or misleading" as required by the Private Securities Litigation Reform Act ("PSLRA"), 15 U.S.C. § 78u-4(b)(1)(B). *Id.* at *22–23. The court explained that "Barclays's statements do not mention LIBOR, nor do they say that Barclays had established 'specific systems or controls' relating to LIBOR submission rates. . . . [,] but only that it had established controls for other areas of its business." *Id.* at *22.

In *Bahash*, the Second Circuit affirmed dismissal of claims that defendants "made public statements about the honesty and integrity of S&P's credit-ratings services while knowing that its ratings method was basically a sham." 506 F. App'x at 34. The court stated that these statements "are the type of mere 'puffery' that we have previously held to be not actionable" due to their "generic, indefinite nature." *Id.* at 37.

## DISCUSSION

### I.  Standard for Motion for Reconsideration

A district court's discretion to reconsider a prior decision is "limited" by the doctrine of the law of the case: "where litigants have once battled for the court's decision, they should neither be required, nor without good reason permitted, to battle for it again." *Official Comm. of*

*Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, L.L.P.*, 322 F.3d 147, 167 (2d Cir. 2003) (internal quotation marks omitted).  Accordingly, decisions should "not usually be changed unless there is 'an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent a manifest injustice.'"  *Id.*

"It is not enough . . . that defendants could now make a more persuasive argument . . . . The law of the case will be disregarded only when the court has 'a clear conviction of error' with respect to a point of law on which its previous decision was predicated."  *Fogel v. Chestnutt*, 668 F.2d 100, 109 (2d Cir. 1981) (citation omitted).  "Thus generally, there is a strong presumption against amendment of prior orders."  *Bergerson v. N.Y. State Office of Mental Health*, 652 F.3d 277, 288 (2d Cir. 2011).

**II.  Analysis**

    **A.  Basis for Reconsideration**

Contrary to Defendants' argument, *UBS*, *Barclays*, and *Bahash* do not constitute an intervening change in controlling law, but merely elaborate on *JP Morgan*, which the Court considered in its June 2012 decision.

Defendants principally rely on *UBS*, where the Second Circuit stated that the "puffery" rule it was applying was "well-established" liberally quoted the portion of *JP Morgan* that was at issue in the motion to dismiss.  *See* 2014 WL 1778041, at *5 & nn.43, 44.  Likewise, *UBS*'s subsequent observations—regarding the "guarantee" element of materiality and the distinction between "importance" and materiality—cited substantially identical statements in *JP Morgan*. *See id.* at *6 & nn.56, 57.

Nor do *Barclays* or *Bahash* constitute a *sub silentio* change in controlling law.  *Barclays* did not announce any new rule regarding materiality; rather, it contains a brief discussion

applying the PSLRA's heightened pleading standard to the issue of whether particular statements were false or misleading under the circumstances. *See* 2014 U.S. App. LEXIS 7864, at *22–23 ("Plaintiffs fail, therefore, to demonstrate with specificity that Barclays's minimum control statements were false or misleading."). *Bahash* was a nonprecedential summary order[1] concluding that the statements at issue "regarding [defendant]'s integrity and credibility and the objectivity of S&P's credit ratings are the type of mere 'puffery' that we have ***previously held*** to be not actionable." 506 F. App'x at 37 (emphasis added) (citing *JP Morgan*, 553 F.3d at 206).

Defendants apparently seek an exception to the requirement that there be a change in controlling law, suggesting that a decision that "clarif[ies]" or "extend[s] and crystallize[s] the scope and meaning" of a prior decision is sufficient to warrant reconsideration. (Defs.' Mem. at 4, 8.) Of course, the law changes, but reconsideration is not warranted when an appellate court "merely applie[s] the existing standard to a new set of facts." *In re Fannie Mae 2008 ERISA Litig.*, No. 09-CV-1350, 2014 WL 1577769, at *4 (S.D.N.Y. Apr. 21, 2014). Accordingly, the motion for reconsideration must be denied.

### B. There Was No Error in the Prior Decision

Even if the Court were to grant the motion for reconsideration, it would adhere to its prior decision. As Judge Scheindlin noted in distinguishing *Barclays* and *Bahash* from this case, Goldman's "statements about business practices were directly related to the subject of the fraud." *Gusinsky v. Barclays PLC*, 944 F. Supp. 2d 279, 290 n.74 (S.D.N.Y. 2013), *aff'd in relevant part*, *Barclays*, 750 F.3d 227.

The statements at issue in *UBS*, *Barclays*, and *Bahash* were too open-ended, indefinite, or subjective to be actionable under the circumstances. For instance, in *UBS*, the defendant's

---

[1] *See* 2d Cir. Local R. 32.1.1(a) ("Rulings by summary order do not have precedential effect.").

statement that it strove to comply with applicable laws could not be interpreted as a guarantee that it would never be out of compliance, and its statement that it avoided "concentrated positions of assets" was not a guarantee that it would avoid investing 5% of its portfolio in RMBS.  Likewise, in *Barclays*, stating that "[m]inimum control requirements have been established for all key areas of identified risk" was too general to constitute a guarantee that it had specific control systems for potential manipulations of LIBOR.  Finally, in *Bahash*, statements about the reputation and integrity of S&P was not a guarantee against the specific deficiencies alleged to have afflicted its ratings process.

In contrast, Goldman's representations about its purported controls for avoiding conflicts were directly at odds with its alleged conduct.  For instance, Goldman represented that "[w]e have extensive procedures and controls that are designed to . . . address conflicts of interest" and "we increasingly have to address potential conflicts of interest, including situations where our services to a particular client or our own proprietary investments or other interests conflict, or are perceived to conflict, with the interest of another client . . . ."  (Compl. ¶¶ 134, 154 (Form 10–K).)  Meanwhile, Goldman is alleged to have sold financial products to clients despite clear and egregious conflicts of interest—indeed, where its "services to a particular client" (Paulson & Co. in the Abacus deal) and its "own proprietary investments" (in short positions in the Hudson, Anderson, and Timberwolf I deals) "conflict[ed] with the interest of [the] []other client[s]" investing in those deals.  Particularly in light of Goldman's statements prior to the class period regarding its "aligned incentives" with its clients, the Court cannot say that as a matter of law no reasonable investor would have relied on the statements above in making an investment decision. *See* 17 C.F.R. § 240.10b-5 (whether omission is materially misleading is judged "in the light of the circumstances under which [the statements] were made"); *JP Morgan*, 553 F.3d at 197, 206

8

(statements not immaterial as a matter of law "unless they are so obviously unimportant to a reasonable investor that reasonable minds could not differ on the question of their importance" or "too general to cause a reasonable investor to rely upon them").

The parties have seized upon the Court's observations about the financial crisis in a footnote in the prior decision. *See* 868 F. Supp. 2d at 277 n.8 ("If Goldman's claim of 'honesty' and 'integrity' are simply puffery, the world of finance may be in more trouble than we recognize."). The real issue in the prior decision was whether Plaintiffs had adequately alleged that Defendants made a material misstatement or misleading omission. On the basis of Defendants' statements regarding conflicts of interest alone, the Court adheres to its conclusion that Plaintiffs have pleaded a viable claim.

## CONCLUSION

For the foregoing reasons, Defendants' motion for partial reconsideration is DENIED.

Dated: New York, New York
June 23, 2014

SO ORDERED

*/s/ Paul A. Crotty*
PAUL A. CROTTY
United States District Judge