UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| In re GOLDMAN SACHS GROUP, INC. SECURITIES LITIGATION | : : : : : : : : : : | Master File No. 1:10-cv-03461-PAC <br><br> <u>CLASS ACTION</u> <br><br> "ECF Case" <br><br> PLAINTIFFS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THEIR MOTION FOR CLASS CERTIFICATION |
| This Document Relates To: <br><br>    ALL ACTIONS. | | |

1027004_1

## TABLE OF CONTENTS

                                                                                   **Page**

I.   INTRODUCTION .................................................................................................................1

II.  DEFENDANTS HAVE FAILED TO PROVE THE LACK OF ANY PRICE IMPACT NECESSARY TO REBUT THE PRESUMPTION OF RELIANCE ..................2

III. DEFENDANTS' TRUTH-ON-THE-MARKET ARGUMENT IS INAPPROPRIATE AT THE CLASS CERTIFICATION STAGE AND SHOULD BE REJECTED..................................................................................................................5

IV. DEFENDANTS' MISSTATEMENTS AND OMISSIONS IMPACTED GOLDMAN'S STOCK PRICE ...............................................................................................7

V.  DEFENDANTS' DAMAGE-RELATED ARGUMENT IS MISPLACED ........................9

VI. CONCLUSION..................................................................................................................10

1027004_1

## TABLE OF AUTHORITIES

Page

**CASES**

*Amgen Inc. v. Conn. Ret. Plans & Trust Funds*,
    133 S. Ct. 1184 (2013) ................................................................................................5, 6

*Aranaz v. Catalyst Pharm. Partners, Inc.*,
    302 F.R.D. 657 (S.D. Fla. 2014) ......................................................................................6

*Basic Inc. v. Levinson*,
    485 U.S. 224 (1988) .....................................................................................................5, 6

*City of Livonia Emples. Ret. Sys. v. Wyeth*,
    284 F.R.D. 173 (S.D.N.Y. 2012) .....................................................................................7

*Comcast Corp. v. Behrend*,
    133 S. Ct. 1426 (2013) ................................................................................................9, 10

*Curtis v. Extra Space Storage*,
    No. 13-319, 2013 WL 6073448
    (N.D. Cal. Nov. 18, 2013) ..............................................................................................10

*Dodona I, LLC v. Goldman, Sachs & Co.*,
    296 F.R.D. 261 (S.D.N.Y. 2014) .....................................................................................9

*Erica P. John Fund, Inc. v. Halliburton Co.*,
    131 S. Ct. 2179 (2011) .....................................................................................................5

*Freudenberg v. E*Trade Fin. Corp.*,
    712 F. Supp. 2d 171 (S.D.N.Y. 2010) .............................................................................5

*Ganino v. Citizens Utils. Co.*,
    228 F.3d 154 (2d Cir. 2000) .............................................................................................7

*Halliburton Co. v. Erica P. John Fund, Inc.*,
    134 S. Ct. 2398 (2014) ........................................................................................1, 2, 6, 7

*In re BP P.L.C. Sec. Litig.*,
    2014 U.S. Dist. LEXIS 69900 (S.D. Tex. May 20, 2014) .............................................10

*In re BP PLC Sec. Litig.*,
    2013 WL 6388408 (S.D. Tex. Dec. 6, 2013) .................................................................10

*In re Deepwater Horizon*,
    739 F.3d 790 (5th Cir. 2014) .........................................................................................10

Page

*In re Diamond Foods, Inc.*,
    295 F.R.D. 240 (N.D. Cal. 2013) .................................................................................... 6

*In re Heckmann Corp. Sec. Litig.*,
    No. 10-378-LPS-MPT, 2013 U.S. Dist. LEXIS 79345
    (D. Del. June 6, 2013) ....................................................................................................... 9

*In re Moody's Corp. Sec. Litig.*,
    274 F.R.D. 480 (S.D.N.Y. 2011) ..................................................................................... 8

*In re POM Wonderful*,
    2014 U.S. Dist. LEXIS 40415 (C.D. Cal. Mar. 25, 2014) ................................................ 9

*In re Vivendi Universal, S.A. Sec. Litig.*,
    765 F. Supp. 2d 512 (S.D.N.Y. 2011) ............................................................................. 8

*Local 703, I.B. of T. Grocery & Food Emples. Welfare Fund v. Regions Fin. Corp.*,
    No. 10-cv-2847, 2014 U.S. Dist. LEXIS 162403
    (N.D. Ala. Nov. 19, 2014) ................................................................................................ 7

*McIntire v. China MediaExpress Holdings, Inc.*,
    38 F. Supp. 3d 415, 434 (S.D.N.Y. 2014) ...................................................................... 8

*Richman v. Goldman Sachs Grp., Inc.*,
    868 F. Supp. 2d 261 (S.D.N.Y. 2012) ......................................................................... 2, 5

*Roach v. T.L. Cannon Corp.*,
    778 F.3d 401 (2d Cir. 2015) ............................................................................................ 9

*Silverman v. Motorola, Inc.*,
    798 F. Supp. 2d 954 (N.D. Ill. 2011) ............................................................................... 7

*Turnbow v. Life Partners Inc.*,
    No. 3:11-cv-1030, 2013 WL 3479884
    (N.D. Tex. July 9, 2013) .................................................................................................. 9

*Wallace v. Intralinks*,
    302 F.R.D. 310 (S.D.N.Y. 2014) .................................................................................... 9

**STATUTES, RULES AND REGULATIONS**

Federal Rules of Civil Procedure
    Rule 23(b)(3) ........................................................................................................ 1, 9, 10
    Rule 56 ............................................................................................................................. 6

## I.     INTRODUCTION

Plaintiffs have established each of the prerequisites for class certification, including that Goldman Sachs' stock traded in an efficient market, and are thus entitled to the fraud on the market presumption of reliance.  *See* Dkt. No. 136 at 20-23.  Defendants have failed to provide any reliable evidence to challenge market efficiency[1] or meet their burden to rebut the presumption of reliance by showing a total absence of price impact from Defendants' false statements and omissions.  *See Halliburton Co. v. Erica P. John Fund, Inc.*, 134 S. Ct. 2398, 2416-17 (2014) ("*Halliburton II*").  Instead, Defendants incorrectly assert that price impact issues "plainly overlap with the considerations relevant to the merits issues of materiality." Dkt. No. 142 at 17.  This assertion contravenes the Supreme Court's mandate that materiality "should be left to the merits stage, because it does not bear on the predominance requirement of Rule 23(b)(3)." *Halliburton II*, 134 S. Ct. at 2416.  Defendants' latest attempt at an end-run around this Court's prior orders regarding the materiality of the alleged misstatements and omissions should be disregarded, and the Court should certify the proposed class.

---

[1] The efficiency of the market in Goldman's stock is not in serious contention – it is one of the most closely watched, actively-traded investment banks in the world, and, as Plaintiffs demonstrated in their opening papers, all of the relevant factors support a finding of market efficiency.  *See* Dkt. No. 136 at 20-23; *see also* Rebuttal Declaration of John D. Finnerty, Ph.D. in Support of Plaintiffs' Motion for Class Certification ("Finnerty Reb. Decl."), ¶¶5-175.  Indeed, Defendants' own market efficiency expert found statistically significant stock price declines due to Goldman-specific news on three out of the four corrective disclosure dates, consistent with the findings of Plaintiffs' expert and strongly indicative of a cause-and-effect relationship under *Cammer* factor five, and testified that he did not even bother to analyze the remaining *Cammer* factors.  *See* Declaration of Paul Gompers, Ph.D. ("Gompers Decl."), ¶¶64, 79, 89 (Dkt. No. 144); April 30, 2015 Deposition Transcript of Paul A. Gompers, Ph.D. ("Gompers Tr.") at 284:22-298:2 (attached as Ex. 1 to the Appendix of Exhibits in Support of Plaintiffs' Reply in Support of Their Motion for Class Certification ("App."), filed herewith).  As Goldman's stock traded in an efficient market during the Class Period, Plaintiffs are entitled to the presumption of reliance.

- 1 -

## II. DEFENDANTS HAVE FAILED TO PROVE THE LACK OF ANY PRICE IMPACT NECESSARY TO REBUT THE PRESUMPTION OF RELIANCE

Under *Halliburton II*, in order to rebut the presumption of reliance Defendants are required to prove that the "asserted misrepresentation (or its correction) ***did not*** affect the market price of [Goldman's] stock." 134 S. Ct. at 2414 (emphasis added). Here, Defendants and their experts failed to prove a total lack of price impact. This should end the inquiry.

This Court has explicitly rejected the same central argument Defendants raise here – that the SEC fraud charge and related investigations standing alone caused Goldman's stock price declines on the alleged corrective disclosure dates (April 16, 2010, April 30, 2010 and June 10, 2010), and not the revelation of Goldman's misrepresentations and omissions about its business practices and conflicts of interest and the necessary resulting damage to its reputation. *See Richman v. Goldman Sachs Grp., Inc.*, 868 F. Supp. 2d 261, 282 (S.D.N.Y. 2012) ("While Defendants argue that the lawsuits and investigations themselves cause the stock decline, these suits and investigations can more appropriately be seen as a series of 'corrective disclosures,' because they revealed Goldman's material misstatements – and indeed pattern of making misstatements – and its conflicts of interest."). Because Defendants have failed to offer any evidence to show a total lack of price impact, the propriety of the Court's prior reasoning remains. The presumption of reliance applies, and the Class should be certified.

Defendants' expert Dr. Gompers agreed with Plaintiffs' expert Dr. Finnerty that Goldman's stock dropped significantly when the SEC made public the fraud charge and underlying allegations on April 16, 2010. *See* Gompers Decl., ¶62 ("April 16, 2010, April 30, 2010 and June 10, 2010 are accompanied by statistically significant residual stock price declines . . . ."); Finnerty Reb. Decl., ¶¶3(b), 177, 202. One of Defendants' experts, Dr. Choi, further admitted that the SEC's lawsuit on April 16, 2010 necessarily revealed that Goldman had engaged in conflicts of interest with its clients

- 2 -

because the SEC fraud charge and Goldman's underlying conduct were inextricably linked.[2] *E.g.*, April 24, 2015 Deposition Transcript of Stephen Choi, Ph.D. ("Choi Tr.") at 56:21-80:7 (App., Ex. 2). And, amazingly, Defendants represented to this Court that Dr. Choi found that the SEC fraud charge, as well as the related DOJ and SEC investigations on April 30 and June 10, 2010, in and of themselves caused the entire stock price decline on those respective days, and that Goldman's misconduct caused none (*see* Dkt. No. 142 at 22-23). However, Dr. Choi flatly admitted numerous times in his deposition that it was not within the scope of his expert assignment to analyze in any way whether the revelation of Goldman's misconduct caused any of Goldman's stock price declines. *See* Choi Tr. at 48:5-17, 56:21-80:7, 101:8-24, 118:11-20, 126:15-23, 132:4-19, 163:21-164:22. Dr. Choi did not even consider the substantive allegations of the SEC fraud case, could not testify that 100% of the decline was caused by the SEC case itself, and could not say what, if any, part of the decline on April 16, 2010 was caused by the SEC fraud charge standing alone versus Goldman's underlying misconduct as detailed in the SEC complaint. *Id*. This defeats Defendants' argument that it was simply the announcement of the SEC lawsuit and related investigations that solely caused the stock price declines and not the revelation of Goldman's underlying misconduct. *See also* Finnerty Reb. Decl., ¶¶179-180, 187-195.

Moreover, Defendants ignore market commentary that explicitly recognized that the disclosure of Goldman's misconduct of engaging in conflicts of interest and improper business practices – the very subjects of the alleged misstatements and omissions – caused, at the very least, a part of Goldman's stock price declines:

---

[2] The SEC's press release and complaint announcing the lawsuit detailed Goldman's misconduct in structuring and selling the Abacus CDO against clients' interests, thereby disclosing to the market that Defendants' prior statements about Goldman's business practices and conflicts of interest were false and misleading. App., Exs. 3-4.

- "In its corporate profile, the company says its culture distinguishes it from other firms and 'helps to make us a magnet for talent.' That culture is summed up in the firm's '*14 Business Principles,' which preach an almost militant philosophy of putting the client before the firm. Now it's that very philosophy that has been questioned by the government*." (*The Associated Press*, Apr. 18, 2010). App., Ex. 5 (emphasis added).

- "The product [Abacus] was new and complex, but the deception and *conflicts are old and simple*. . . . Goldman wrongly permitted a client that was betting against the mortgage market to heavily influence which mortgage securities to include in an investment portfolio, while telling other investors that the securities were selected by an independent, objective third party." (*Chicago Tribune*, Apr. 16, 2010, quoting Director of the SEC Division of Enforcement, Robert Khuzami). App., Ex. 6 (emphasis added).

- "It's hard to imagine the *damage that these developments have done already to Goldman Sachs's reputation. The company has always maintained a public position that the business of investment banking depends on trust, integrity and putting clients' interests first*." (*The Wall Street Journal*, Apr. 21, 2010). App., Ex. 7 (emphasis added).

And when confronted at deposition, Defendants' experts admitted that when Goldman stock dropped significantly on the three corrective disclosure dates, the financial community did indeed focus on Goldman's misconduct, and its failure to control for conflicts of interest, and the resulting impact on Goldman's reputation and loss of business. *See* Choi Tr. at 97:4-100:18; Gompers Tr. at 101:2-102:5, 114:22-117:11, 119:20-121:11; May 1, 2015 Deposition Transcript of Charles Porten ("Porten Tr.") at 101:2-10, 108:2-109:9, 244:21-245:21 (App., Ex. 8). Defendants' purported disclosure expert, Mr. Porten, admitted that Defendants' failure to adequately manage Goldman's conflicts of interest and failure to preserve its reputation would have price impact. *See* Porten Tr. at 199:23-200:6; 203:5-16; and 303:21-304:17. This evidence further undermines Defendants' already abject failure to show the lack of *any* price impact. *See also* Finnerty Reb. Decl., ¶¶181, 193-201.

Unable to refute this direct evidence of price impact, Defendants are left to argue that the disclosures did not "reveal the fraud," and were not "corrective." *See* Dkt. No. 142 at 21-23. This argument is nothing more than a loss causation challenge, which the Supreme Court has specifically

- 4 -

held inappropriate at class certification.  *See Erica P. John Fund, Inc. v. Halliburton Co.*, 131 S. Ct. 2179, 2181 (2011).  And, even if this argument were considered, a corrective disclosure need not admit or directly reveal the alleged fraud.  *See Freudenberg v. E*Trade Fin. Corp.*, 712 F. Supp. 2d 171, 202 (S.D.N.Y. 2010) ("[N]either the Supreme Court in *Dura*, nor any other court addressing the loss causation pleading standard require a corrective disclosure be a 'mirror image' tantamount to a confession of fraud [b]ecause corporate wrongdoers rarely admit that they committed fraud . . . .").  Furthermore, as this Court previously recognized, the corrective disclosures here on their face directly revealed: (i) the risks Plaintiffs allege Defendants misrepresented and (ii) that those risks that had been concealed had in fact materialized.  *See Richman*, 868 F. Supp. 2d at 282; *see also* Gompers Tr. at 26:10-27:5 (acknowledging that the "sheer realization" of a known risk "can cause stock prices to move").

Because Defendants have failed to show that none of the stock price declines were caused by the disclosure of the underlying misconduct, which Plaintiffs allege Defendants misrepresented and concealed throughout the Class Period, they have failed to rebut the presumption of reliance.

### III.   DEFENDANTS' TRUTH-ON-THE-MARKET ARGUMENT IS INAPPROPRIATE AT THE CLASS CERTIFICATION STAGE AND SHOULD BE REJECTED

Given Defendants' failure to show the lack of any price impact, they resort to raising a "truth on the market defense" asserting that "the press widely reported during the Class Period . . . that Goldman [] allegedly had failed to manage conflicts in a variety of transactions."  Dkt. No. 142 at 13.  The Supreme Court has repeatedly held that such a challenge is inappropriate at the class certification stage.  *Basic Inc. v. Levinson*, 485 U.S. 224, 248-49 (1988); *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 133 S. Ct. 1184 (2013).  In *Amgen*, the Supreme Court explicitly held:

> We recognized as much in *Basic* itself.  A defendant could "rebut the [fraud-on-the-market] presumption of reliance," we observed in *Basic*, by demonstrating

> that "news of the [truth] credibly entered the market and dissipated the effects of [prior] misstatements." 485 U.S. at 248-249 . . . . We emphasized, however, that "[p]roof of that sort is a matter for trial" (and presumably also for a summary-judgment motion under Federal Rule of Civil Procedure 56). *Id.* at 249, n.29 . . . .

*Id.* at 1204; *Halliburton II*, 134 S. Ct. at 2416; *see also In re Diamond Foods, Inc.*, 295 F.R.D. 240, 250 (N.D. Cal. 2013); *Aranaz v. Catalyst Pharm. Partners, Inc.*, 302 F.R.D. 657 (S.D. Fla. 2014). Not coincidentally, Defendants completely ignore this directly on-point part of the Supreme Court's opinion.

Even if considered, Defendants' argument fails. Although ***some*** of Goldman's conduct may have been reported in the media, at the same time, Defendants immediately blunted the price impact of any such concerns by telling the public that its conduct was appropriate and legal.[3] *See, e.g.*, App., Ex. 10 at 10, 13 ("We don't think we did anything wrong . . . I don't think there's any guilt whatsoever."); App., Ex. 11 ("Today certain media reports have erroneously stated that, during testimony at the Financial Crisis Inquiry Commission in Washington, D.C. yesterday, Lloyd Blankfein said Goldman Sachs' practices with respect to the sale of mortgage-related securities were 'improper.' Mr. Blankfein said no such thing. . . . Mr. Blankfein does not believe, nor did he say, that Goldman Sachs had behaved improperly in any way.").[4] *See also* Finnerty Reb. Decl., ¶¶184-185 and Ex. 6 thereto.

Furthermore, the April 16, 2010 SEC lawsuit also revealed, ***for the first time***, Goldman's conflicts of interest and improper business practices, including the fact that the marketing materials

---

[3] Indeed, many of the articles have nothing to do with CDOs or the subject of the Complaint. *See also* Finnerty Reb. Decl., ¶184 and Ex. 6 thereto. And some of the articles relied on by Defendants' expert as evidence that Goldman's misconduct was known to the public actually touted Goldman as a model of good corporate governance. *See, e.g.*, *Goldman Offers Example of Governance* (Financial Times, Dec. 4, 2007, App., Ex. 9).

[4] Defendants' expert, Dr. Gompers, agreed that the disclosure of positive information could blunt the impact of the disclosure of bad news. Gompers Tr. at 19:7-20:7.

- 6 -

misled investors in the Abacus transaction by failing to disclose Paulson's role in selecting the assets, and the fact that Goldman misled ACA into believing Paulson was investing on the long side of the deal when in fact he had a huge short position.  *See* SEC Complaint, ¶¶2-4; *see also* Finnerty Reb. Decl., ¶¶183-186.  This was conceded by Defendants' own expert: "I didn't see any news articles that indicated – any news articles which were published prior to April 16th that indicated that Goldman Sachs ***misled ACA***."  Gompers Tr. at 99:6-16 (emphasis added).  Defendants' truth-on-the-market argument fails.  *See Ganino v. Citizens Utils. Co.*, 228 F.3d 154, 167 (2d Cir. 2000) ("[T]he corrective information must be conveyed to the public 'with a degree of intensity and credibility sufficient to counter-balance effectively any misleading information created by' the alleged misstatements.").[5]

## IV. DEFENDANTS' MISSTATEMENTS AND OMISSIONS IMPACTED GOLDMAN'S STOCK PRICE

Defendants do not dispute that Goldman's stock price dropped significantly in response to the corrective disclosures on April 16, 2010, April 30, 2010, and June 10, 2010.  *See* Finnerty Reb. Decl., ¶¶177, 202.  These declines establish price impact and should end the inquiry.  *See Halliburton II*, 134 S. Ct. at 2414-15 (price impact is appropriately measured by looking at the decrease following the corrective disclosure); *Silverman v. Motorola, Inc.*, 798 F. Supp. 2d 954, 976 (N.D. Ill. 2011); *City of Livonia Emples. Ret. Sys. v. Wyeth*, 284 F.R.D. 173, 182 (S.D.N.Y. 2012).  To sidestep this insurmountable hurdle, Defendants assert that because Goldman's stock did not

---

[5] Defendants' assertion that the presumption has been rebutted because Plaintiffs' expert failed to prove price impact by direct evidence is misplaced.  *See, e.g.*, Dkt No. 142 at 19-21.  Crucially, unless and until Defendants meet their burden of rebutting that presumption – which they have not – Plaintiffs have no burden whatsoever to show price impact.  *Halliburton II*, 134 S. Ct. at 2417.  *See also Local 703, I.B. of T. Grocery & Food Emples. Welfare Fund v. Regions Fin. Corp.*, No. 10-cv-2847, 2014 U.S. Dist. LEXIS 162403, at *25 (N.D. Ala. Nov. 19, 2014) ("nothing in *Halliburton II* requires the plaintiffs to produce an event study in opposition to defendants' event study on a class certification motion").  In any event, Plaintiffs' expert's rebuttal declaration further demonstrates that Defendants' misstatements and omissions impacted Goldman's Class Period stock price.  *See* Finnerty Reb. Decl., ¶¶176-206.

increase by a statistically significant amount on the dates of the alleged misstatements, there is no price impact.  Dkt. No. 142 at 18.  Defendants' argument ignores the basic principle that misstatements and omissions of material information create inflation and thus cause price impact by keeping a company's stock price trading at a higher level than it would have traded had the truth been revealed.[6]  *See* Finnerty Reb. Decl., ¶¶203-204.

In a related argument, Defendants assert that Goldman's stock price was inflated due to pre-Class Period statements.  Not so.  Rather, Defendants' statements and omissions on the first day of the Class Period inflated Goldman's stock price – *i.e.*, kept the stock trading at a higher price than it would have been had the truth been known – and subsequent statements and omissions further inflated and maintained inflation.  *See* Complaint, ¶¶132-306, and Finnerty Reb. Decl., ¶205.

Lastly, Defendants improperly assert that no inflation exists because of the dismissal of the Wells Notice Claims.  However, Goldman's stock price was already artificially inflated prior to the Wells Notice statements in June 2009 by the full amount of the later corrective disclosures due to the false statements from February 2007 to June 2009 relating to misleading statements about Goldman's conflicts of interest and business practices.  *See* Complaint, ¶¶324-330; Finnerty Reb. Decl., ¶206.  The conduct that Defendants failed to disclose in 2007-2009 that made their statements about their conflicts of interest and business practices misleading was the same conduct that made

---

[6]  *McIntire v. China MediaExpress Holdings, Inc.*, 38 F. Supp. 3d 415, 434 (S.D.N.Y. 2014) (rejecting defendants' argument that decrease in price following misstatement proved lack of price impact and reasoning that "[a] material misstatement can impact a stock's value either by improperly causing the value to increase ***or*** by improperly maintaining the existing stock price.") (emphasis in original); *In re Vivendi Universal, S.A. Sec. Litig.*, 765 F. Supp. 2d 512, 561 (S.D.N.Y. 2011) ("misstatement may cause inflation simply by maintaining existing market expectations, even if it does not actually cause the inflation in the stock price to increase on the day the statement is made") (emphasis in original).  Defendants also improperly rely upon *In re Moody's Corp. Sec. Litig.*, 274 F.R.D. 480 (S.D.N.Y. 2011) in support of this argument (*see* Dkt. No. 142 at 19-20) by conveniently declining to note that the *Moody's* court found that "there is no period within the proposed class period where the alleged misrepresentation caused a statistically significant increase in the price ***or where a corrective disclosure caused a statistically significant decline in the price***."  *See id.* at 493 (emphasis added).

the Wells Notice statements misleading and was disclosed to investors from April 2010 to June 2010. The Wells Notice statements from June 2009 and onward maintained the inflation in Goldman's stock price. *Id.* Thus, the dismissal of the Wells Notice statements did not remove or dissipate in any way the artificial inflation created and already existing in Goldman's stock price from the actionable misstatements concerning Goldman's conflicts of interest and business practices. *Id.*

## V.    DEFENDANTS' DAMAGE-RELATED ARGUMENT IS MISPLACED

Defendants assert that the recent Supreme Court *Comcast* decision required Plaintiffs to submit a damages model at the class certification stage to demonstrate that liability and damages are common to all class members. *See generally Comcast Corp. v. Behrend*, 133 S. Ct. 1426 (2013). The Second Circuit recently rejected such a broad reading of *Comcast*: "*Comcast's* holding was narrower. *Comcast* held that a model for determining class-wide damages relied upon to certify a class under Rule 23(b)(3) must actually measure damages that result from the class's asserted theory of injury; **but the Court did not hold that proponents of class certification must rely upon a classwide damages model to demonstrate predominance**." *See Roach v. T.L. Cannon Corp.*, 778 F.3d 401, 407 (2d Cir. 2015) (emphasis added). The court noted that the parties in *Comcast* did not even contest whether there was a requirement that damages be measured on a classwide basis, and that although damage questions "should be considered at the certification stage when weighing predominance issues," there is no "requirement of a class-wide damages model." *Id.* at 407-08.[7]

---

[7]   *See also Dodona I, LLC v. Goldman, Sachs & Co.*, 296 F.R.D. 261, 270-71 (S.D.N.Y. 2014) (rejecting damages arguments as loss causation analysis at class certification stage); *In re Heckmann Corp. Sec. Litig.*, No. 10-378-LPS-MPT, 2013 U.S. Dist. LEXIS 79345, at *42 (D. Del. June 6, 2013) (plaintiffs "'need only show that a "viable method" [be] available to prove damages on a class-wide basis'" and distinguishing *Comcast* as an antitrust case with different issues) (citations omitted); *Wallace v. Intralinks*, 302 F.R.D. 310, 318 (S.D.N.Y. 2014) (plaintiffs' proposed determination of damages by event study is a workable methodology under *Comcast*). Defendants' cases are inapposite – *In re POM Wonderful*, 2014 U.S. Dist. LEXIS 40415, at *11 (C.D. Cal. Mar. 25, 2014), *Turnbow v. Life Partners Inc.*, No. 3:11-cv-1030, 2013 WL

- 9 -

Unlike *Comcast*, in this case, Plaintiffs have ***one*** theory of liability that relates to various statements that were all false for the same reason – because Goldman failed to disclose conduct that was eventually disclosed from April-June 2010. Defendants' arguments about "disaggregating" damages from various statements and disclosures are inappropriate at this stage. Even if Defendants' arguments are successful in reducing inflation (damages), it will affect all class members equally and not create any individual issues to predominate. Finally, Dr. Finnerty has submitted a methodology (to be used in conjunction with his regression analysis and event study), which can be used at a later stage to estimate damages and which is common and accepted by courts in securities cases.[8]  *See* Finnerty Reb. Decl., ¶¶207-208.

## VI.  CONCLUSION

For the reasons set forth herein and in Plaintiffs' motion for class certification and related briefing (Dkt. Nos. 135-140), the proposed class should be certified.

| | |
|---|---|
| DATED: May 15, 2015 | Respectfully submitted, |
| LABATON SUCHAROW LLP | ROBBINS GELLER RUDMAN  & DOWD LLP |
| s/ Thomas A. Dubbs  THOMAS A. DUBBS | s/ Spencer A. Burkholz  SPENCER A. BURKHOLZ |

---

3479884 (N.D. Tex. July 9, 2013) and *Curtis v. Extra Space Storage*, No. 13-319, 2013 WL 6073448 (N.D. Cal. Nov. 18, 2013) are all consumer cases. The only securities case Defendants cite – *In re BP PLC Sec. Litig.*, 2013 WL 6388408 (S.D. Tex. Dec. 6, 2013), is a district court opinion that is inconsistent with the Fifth Circuit's subsequent decision in *In re Deepwater Horizon*, 739 F.3d 790 (5th Cir. 2014), that there is no requirement of a reliable common methodology for measuring damages under Rule 23(b)(3), as well as the subsequent *BP* decision that certified a narrower class with multiple misrepresentations and six corrective disclosures. *In re BP P.L.C. Sec. Litig.*, 2014 U.S. Dist. LEXIS 69900, at *66, *107-*108 (S.D. Tex. May 20, 2014).

[8]  Pursuant to the Court's Scheduling Order, Plaintiffs' merits reports are due to be exchanged with Defendants on May 22, 2015. Dr. Finnerty will address loss causation and damages at that time. *See* Finnerty Reb. Decl., ¶208.

| | |
|---|---|
| LABATON SUCHAROW LLP<br>Thomas A. Dubbs<br>James W. Johnson<br>Michael H. Rogers<br>Irina Vasilchenko<br>140 Broadway, 34th Floor<br>New York, NY  10005<br>Telephone:  212/907-0700<br>212/818-0477 (fax) | ROBBINS GELLER RUDMAN<br>  & DOWD LLP<br>Spencer A. Burkholz<br>Jonah H. Goldstein<br>Robert R. Henssler Jr.<br>Eric I. Niehaus<br>Brian E. Cochran<br>655 West Broadway, Suite 1900<br>San Diego, CA  92101<br>Telephone:  619/231-1058<br>619/231-7423 (fax)<br><br>ROBBINS GELLER RUDMAN<br>  & DOWD LLP<br>Samuel H. Rudman<br>58 South Service Road, Suite 200<br>Melville, NY  11747<br>Telephone:  631/367-7100<br>631/367-1173 (fax) |

*Co-Lead Counsel for Lead Plaintiffs*

CERTIFICATE OF SERVICE

I hereby certify that on May 15, 2015, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I caused to be mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on May 15, 2015.

                                                  s/ Spencer A. Burkholz
                                                SPENCER A. BURKHOLZ

                                                ROBBINS GELLER RUDMAN
                                                           &DOWD LLP
                                                655 West Broadway, Suite 1900
                                                San Diego, CA  92101-8498
                                                Telephone:  619/231-1058
                                                619/231-7423 (fax)

                                                E-mail:  spenceb@rgrdlaw.com

**Mailing Information for a Case 1:10-cv-03461-PAC**

**Electronic Mail Notice List**

The following are those who are currently on the list to receive e-mail notices for this case.

- **Spencer A. Burkholz**
  spenceb@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Regina Marie Calcaterra**
  rcalcaterra@barrack.com

- **Mark W. Carbone**
  wvjustice@aol.com

- **Brian E Cochran**
  bcochran@rgrdlaw.com,karenc@rgrdlaw.com

- **Jeffrey A Dubbin**
  jdubbin@labaton.com

- **Thomas A. Dubbs**
  tdubbs@labaton.com,lmehringer@labaton.com,lgottlieb@labaton.com

- **Christopher James Dunne**
  dunnec@sullcrom.com,s&cmanagingclerk@sullcrom.com,martelj@sullcrom.com

- **Theodore Edelman**
  edelmant@sullcrom.com,holtzmanb@sullcrom.com,pierrej@sullcrom.com,Bellwarej@sullcrom.com,katzmand@sulllcrom.com,Trapsl@sullcrom.com,Rabinl@sullcron

- **Kenneth A. Elan**
  elanfirm@yahoo.com

- **Kevin Dugald Galbraith**
  kevin@kevingalbraithlaw.com

- **Robert Joseph Giuffra , Jr**
  giuffrar@sullcrom.com,s&cmanagingclerk@sullcrom.com

- **Edward H. Glenn , Jr**
  eglenn@zamansky.com,ecf@zamansky.com

- **Jonah H. Goldstein**
  jonahg@rgrdlaw.com,karenc@rgrdlaw.com

- **Louis Gottlieb**
  lgottlieb@labaton.com,EChan-Lee@labaton.com,tdubbs@labaton.com,mpenrhyn@labaton.com,lmehringer@labaton.com,thoffman@labaton.com,electroniccasefiling@labaton.com

- **Sean M. Handler**
  shandler@ktmc.com,namjed@ktmc.com,bdegroot@ktmc.com,ecf_filings@ktmc.com

- **James Abram Harrod , III**
  jim.harrod@blbglaw.com,errol.hall@blbglaw.com

- **Robert R. Henssler , Jr**
  bhenssler@rgrdlaw.com

- **Fred Taylor Isquith**
  fisquith@lshllp.com

- **James W. Johnson**
  jjohnson@labaton.com,settlementquestions@labaton.com,jalexander@labaton.com,mpenrhyn@labaton.com,lmehringer@labaton.com

- **Christopher J. Keller**
  ckeller@labaton.com

- **Richard Howard Klapper**
  klapperr@sullcrom.com,josepht@sullcrom.com,Bellwarej@sullcrom.com,gottliebal@sullcrom.com,Trapsl@sullcrom.com,cedenom@sullcrom.com,s&cmanagingclerk

- **Christopher Lovell**
  clovell@lshllp.com,lshscanner@lshllp.com

- **Craig Anthony Martin**
  cmartin@labaton.com

- **Danielle Suzanne Myers**
  dmyers@rgrdlaw.com

- **Eric I. Niehaus**
  ericn@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **James Stuart Notis**
  jnotis@gardylaw.com

- **David Maxwell Rein**
  reind@sullcrom.com,druckj@sullcrom.com,pierrej@sullcrom.com

- **Darren J. Robbins**
  e_file_sd@rgrdlaw.com

- **Michael Howard Rogers**
  mrogers@labaton.com,jdubbin@labaton.com,lmehringer@labaton.com,electroniccasefiling@labaton.com

- **David Avi Rosenfeld**
  drosenfeld@rgrdlaw.com,e_file_ny@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Marian Rosner**
  mrosner@wolfpopper.com

- **Samuel Howard Rudman**
  srudman@rgrdlaw.com,e_file_ny@rgrdlaw.com,mblasy@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Gerald H. Silk**
  jerry@blbglaw.com,matthew.mahady@blbglaw.com,errol.hall@blbglaw.com,ross@blbglaw.com

- **Evan J. Smith**
  esmith@brodsky-smith.com

- **Victor E. Stewart**
  victornj@ix.netcom.com

- **Lawrence Alan Sucharow**
  lsucharow@labaton.com,lmehringer@labaton.com,electroniccasefiling@labaton.com

- **Irina Vasilchenko**
  ivasilchenko@labaton.com,electroniccasefiling@labaton.com

- **Benjamin Robert Walker**
  walkerb@sullcrom.com,s&cmanagingclerk@sullcrom.com

- **Jacob H. Zamansky**
  jake@zamansky.com,eglenn@zamansky.com,august@zamansky.com,ecf@zamansky.com,samuel@zamansky.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

```
Charles            A. Germershausen
Gardy & Notis, LLP
560 Sylvan Avenue
Englewood Cliffs, NJ 07632

Catherine          J. Kowalewski
Robbins Geller Rudman & Dowd LLP (San Diego)
655 West Broadway
Suite 1900
San Diego, CA 92101

David              C. Walton
Robbins Geller Rudman & Dowd LLP (SANDIEGO)
655 West  Broadway
Suite  1900
San Diego, CA 92101
```