UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

—————————————————————— x
                                          :
In re GOLDMAN SACHS GROUP, INC.           :     Master File No. 1:10-cv-03461-PAC
SECURITIES LITIGATION                     :
                                          :     ECF Case
This Document Relates To:                 :
                                          :     **ORAL ARGUMENT REQUESTED**
      ALL ACTIONS                         :
                                          :
                                          :
—————————————————————— x

### SUPPLEMENTAL MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Robert J. Giuffra, Jr. *(giuffrar@sullcrom.com)*
Richard H. Klapper *(klapperr@sullcrom.com)*
David M.J. Rein *(reind@sullcrom.com)*
Benjamin R. Walker *(walkerb@sullcrom.com)*
Julia A. Malkina *(malkinaj@sullcrom.com)*
Jacob E. Cohen *(cohenja@sullcrom.com)*
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York  10004-2498
Tel:  (212) 558-4000
Fax:  (212) 558-3588

*Counsel for Defendants The Goldman Sachs Group, Inc., Lloyd C. Blankfein, David A. Viniar, and Gary D. Cohn*

January 18, 2022

# TABLE OF CONTENTS

*Page*

**PRELIMINARY STATEMENT** ................................................................................. 1

**ARGUMENT** ......................................................................................................... 2

1.    Recent case law confirms there is no triable issue as to the scienter of Goldman or
      Messrs. Blankfein, Cohn, and Viniar ............................................................... 2

2.    There is no material dispute over the challenged statements' falsity ................................ 4

3.    New case law establishes lack of materiality ................................................... 6

4.    Recent case law confirms that no reasonable juror could find loss causation .................. 9

**CONCLUSION** ................................................................................................... 10

# TABLE OF AUTHORITIES

*Page(s)*

*Arkansas Teacher Retirement System* v. *Goldman Sachs Group, Inc.*,
  955 F.3d 254 (2d Cir. 2020) ............................................................ 7

*Asay* v. *Pinduoduo Inc.*,
  No. 18-cv-7625 (PKC), 2020 WL 1530745 (S.D.N.Y. Mar. 30, 2020) ............................ 6, 7

*Asay* v. *Pinduoduo Inc.*,
  No. 20-1423, 2021 WL 3871269 (2d Cir. Aug. 31, 2021) ................................. 6, 7

*Atlantica Holdings, Inc.* v. *Sovereign Wealth Fund Samruk-Kazyna JSC*,
  477 F. Supp. 3d 88 (S.D.N.Y. 2020) ............................................ 9

*Boca Raton Firefighters* v. *Rahash*,
  506 Fed. App'x 32 (2012) ................................................... 9

*Burr* v. *Equity Bancshares, Inc.*,
  No. 19-cv-4346 (AJN), 2020 WL 6063558 (S.D.N.Y. Oct. 14, 2020) .................... 8

*City of Birmingham* v. *Ryanair Holdings*,
  No. 18-cv-10330 (JPO), 2020 WL 2834857 (S.D.N.Y. June 1, 2020) .................... 3

*Dalberth* v. *Xerox Corp.*,
  766 F.3d 172 (2d Cir. 2014) ............................................... 10

*Dodona I, LLC* v. *Goldman Sachs & Co.*,
  132 F. Supp. 3d 505 (S.D.N.Y. 2015) .................................... 4, 5

*Fogel* v. *Vega*,
  759 F. App'x 18 (2d Cir. 2018) ............................................ 7

*Gray* v. *Alpha & Omega Semiconductor Ltd.*,
  No. 20-cv-2414 (RA), 2021 WL 4429499 (S.D.N.Y. Sept. 27, 2021) .................... 4

*Gross* v. *GFI Grp.*,
  784 F. App'x 27 (2d Cir. 2019) ............................................ 7

*In re Curaleaf Holdings, Inc. Securities Litigation*,
  519 F. Supp. 3d 99 (E.D.N.Y. 2021) ................................... 10

*In re Liberty Tax*,
  828 F. App'x 747 (2d Cir. 2020) .......................................... 7

*In re Synchrony*,
  988 F.3d 157 (2d Cir. 2021) .............................................. 7

*In re Xunlei Ltd. Securities Litigation*,
    No. 18-cv-467 (PAC), 2019 WL 4276607 (S.D.N.Y. Sept. 10, 2019) ................................. 10

*Jackson* v. *Abernathy*,
    960 F.3d 94 (2d Cir. 2020) ................................................................................................ 2, 3, 4

*Lachman* v. *Revlon, Inc.*,
    487 F. Supp. 3d 111 (E.D.N.Y. 2020) ..................................................................................... 4

*Ling Living Trust* v. *B. Communications Ltd.*,
    346 F. Supp. 3d 389 (S.D.N.Y. 2018) ..................................................................................... 8

*Loreley Fin. (Jersey) No. 3 Ltd.* v. *Wells Fargo Securities, LLC*,
    412 F. Supp. 3d 392 (S.D.N.Y. 2019) ................................................................................. 4, 5

*Lorenzo* v. *SEC*,
    139 S. Ct. 1094 (2019) ........................................................................................................... 3

*Omnicare, Inc.* v. *Laborers District Council Construction Industry Pension Fund*,
    575 U.S. 175 (2015) ............................................................................................................... 9

*Plumber & Steamfitters* v. *Danske Bank*,
    11 F.4th 90 (2d Cir. 2021) ............................................................................................... 2, 7, 8

*Singh* v. *Cigna Corp.*,
    918 F.3d 57 (2d Cir. 2019) ............................................................................................... 6, 7, 8

*Woolgar* v. *Kingstone Cos.*,
    477 F. Supp. 3d 193 (S.D.N.Y. 2020) ..................................................................................... 3

# TABLE OF RECORD CITATIONS

*Page(s)*

**TESTIMONY**

John D. Finnerty, Ph.D., Deposition Transcript, dated October 1, 2015
(excerpts)
(Dist. Ct. ECF No. 170-87) .............................................................................. 9, 10

Transcript of Evidentiary Hearing, dated July 25, 2018
(Dist. Ct. ECF No. 233) ...................................................................................... 9

**OTHER DOCUMENTS**

Goldman Sachs' Annual Report on Form 10-K for fiscal year ended
November 30, 2007, filed with the Securities & Exchange
Commission on January 29, 2008 (excerpts)
(Dist. Ct. ECF No. 170-91) .................................................................................. 6

Declaration of Daniel L. Sparks, dated November 5, 2015
(Dist. Ct. ECF No. 170-121) ................................................................................ 2

Plaintiffs' Opposition to Defendants' Motion to Dismiss the Consolidated
Complaint
(Dist. Ct. ECF No. 77) ......................................................................................... 3

Defendants' Memorandum of Law in Support of Their Motion for Summary
Judgment, dated November 6, 2016
(Dist. Ct. ECF No. 168) .................................................................................... 3, 4

Defendants' Local Rule 56.1 Statement of Material Facts as to Which There
is No Genuine Issue to be Tried, dated November 6, 2016
(Dist. Ct. ECF No. 169) .............................................................................. *passim*

Plaintiffs' Opposition to Defendants' Motion for Summary Judgment, dated
December 18, 2015
(Dist. Ct. ECF No. 173) .................................................................. 2, 3, 5, 6, 10

Plaintiffs' Response Pursuant to Local Rule 56.1 to Defendants' Local
Rule 56.1 Statement of Material Facts and Separate Statement of
Additional Material Facts in Opposition to Defendants' Motion for
Summary Judgment, dated December 18, 2015
(Dist. Ct. ECF No. 174) ....................................................................................... 3

Defendants' Reply and Objections to Plaintiffs' Response to Defendants'
  Local Rule 56.1 Statement of Material Facts and Responses and
  Objections to Plaintiffs' Separate Statement of Additional Material
  Facts, dated September 21, 2018
  (Dist. Ct. ECF No. 223) ............................................................................... 3, 4, 6

## PRELIMINARY STATEMENT

In opposing summary judgment, Plaintiffs focus on alleged misstatements or omissions to CDO investors.  But Plaintiffs do not represent CDO investors.  Their claim is that Goldman and its most senior executives—Lloyd Blankfein, Gary Cohn, and David Viniar—defrauded Goldman's shareholders by publishing two sets of statements:  (i) Goldman's longstanding "Business Principles," included in its annual shareholder reports (*e.g.*, "Our clients' interests always come first"); and (ii) a required "Risk Factor" in annual Form 10-Ks that Goldman had "extensive procedures and controls" to manage conflicts, but that those procedures might "fail, or appear to fail," which could "give rise to litigation or enforcement actions."

Plaintiffs contend that these two sets of statements were false because, in 2006 and 2007, Goldman allegedly made misrepresentations to, and concealed conflicts from, highly sophisticated institutional investors in four CDO transactions—ABACUS, Hudson, Timberwolf, and Anderson. Although the press previously reported on alleged misconduct in ABACUS and Hudson, Plaintiffs claim that an April 2010 SEC enforcement action, and two later reports of other investigations, revealed further "corrective" information about the conduct, causing Goldman's stock price to fall.

Since Defendants filed their summary judgment reply brief in September 2018, the Second Circuit and other courts have issued multiple decisions confirming that there is no triable issue of fact on at least four essential elements of Plaintiffs' claims:

*First*, recent Second Circuit law confirms Plaintiffs' reliance on lower-level employees' knowledge cannot prove scienter.  The Court should grant summary judgment because Plaintiffs point to no evidence that Messrs. Blankfein, Cohn, and Viniar—the only people Plaintiffs assert were responsible for the alleged misstatements—knew of any misrepresentations or other misconduct in the four CDOs.

*Second*, under recent case law there is no triable issue of falsity because Plaintiffs point to

no evidence of any conflict undisclosed to Hudson, Timberwolf, and Anderson CDO investors, nor how isolated misconduct in ABACUS (or even all four CDOs) rendered false Goldman's statements to its shareholders, none of which provided assurance that misconduct would not occur in its CDO business.

*Third*, since Defendants' summary judgment reply, the Second Circuit has held seven times that statements indistinguishable from Goldman's are immaterial because they are "too general to induce reliance." *Plumber & Steamfitters* v. *Danske Bank*, 11 F.4th 90, 104 (2d Cir. 2021).

*Fourth*, recent decisions require summary judgment because Plaintiffs provide no evidence to disaggregate their alleged "fraud-related" losses (*i.e.*, losses caused by shareholders learning that the challenged statements were false) from "non-fraud-related" losses (*i.e.*, losses caused by press reports of an SEC lawsuit and rumors of other government investigations).

## ARGUMENT

### 1.     Recent case law confirms there is no triable issue as to the scienter of Goldman or Messrs. Blankfein, Cohn, and Viniar.

In *Jackson* v. *Abernathy*, the Second Circuit held that an employee's scienter generally can be imputed to the company *only if* the employee "made," "craft[ed]," or "review[ed]" the alleged misrepresentations or otherwise was "involved in the[ir] dissemination." 960 F.3d 94, 98, 99 (2d Cir. 2020) (per curiam). Post-*Jackson*, Plaintiffs cannot rely on the supposed knowledge of lower-level employees in Goldman's Mortgage Department who worked on the four CDOs. (*See* SJ Opp. 13 n.11, 16 n.13, 18 n.18.) No Mortgage Department employee, including the head of the Department, Daniel Sparks, made any of the challenged statements in Goldman's Form 10-Ks or annual reports or had "responsibility for drafting, reviewing or approving Goldman['s] public statements, filings or annual reports." (ECF 170-121 ¶ 3; *see* 56.1 ¶ 135.) Because Mortgage Department employees did not communicate with Goldman's shareholders, they also did not

"disseminat[e] false or misleading information to prospective investors with the intent to defraud." *Lorenzo* v. *SEC*, 139 S. Ct. 1094, 1101 (2019).  Thus, as in *Jackson*, Plaintiffs fatally fail to identify any "connective tissue between those employees and the alleged misstatements."  960 F.3d at 99.

In opposing Goldman's motion to dismiss, Plaintiffs promised that their evidence would show that Messrs. Blankfein, Cohn, and Viniar had "actual knowledge" that (i) ABACUS's offering documents omitted that "Goldman's favored client, Paulson, [] design[ed] th[at] CDO so that Paulson could profit at the direct expense of Goldman's other clients who invested in [it]," and (ii) Hudson, Timberwolf, and Anderson's offering documents omitted that Goldman "secretly invest[ed] billions of dollars on the short side of [those] CDOs."  (ECF 77 at 2-3, 23.)  After extensive discovery, no evidence shows that Messrs. Blankfein, Cohn, and Viniar knew of the alleged misstatements in those CDO offering documents or that any such misconduct rendered materially false Goldman's firmwide Business Principles and conflicts warning.

Plaintiffs cannot infer scienter by mischaracterizing emails and other documents involving Messrs. Blankfein, Cohn, and Viniar.  (SJ Opp. 14-18.)  Those documents show *at most* that Messrs. Blankfein, Cohn, and Viniar knew that some (but not all) of the four CDOs existed,[1] and that Goldman sought to reduce its exposure to mortgage securities in a declining housing market.  (Reply 56.1 ¶¶ 114-31; SJ Br. 18-20.)  For example, Plaintiffs claim that "Hudson was discussed on a weekly basis with the Firmwide Risk Committee" on which Messrs. Blankfein, Cohn, and Viniar served.  (SJ Opp. 10.)  But "the mere fact that . . . Defendants attended meetings where"

---

[1] Plaintiffs cite no evidence that Mr. Blankfein or Mr. Cohn even knew of ABACUS, Timberwolf, or Anderson.  (*See* Pl. 56.1 ¶¶ 115, 121.)  That a media report stated Mr. Blankfein said "[w]e participated in things that were clearly wrong" (SJ Opp. 13) cannot support scienter.  The report does not reference CDOs or conflicts, refers only to Goldman's "role in the financial crisis" and "criticism" of "employee compensation" after receiving "federal bailout money" (Pls. SJ Ex. 52), and, in any event, statements "indicating a present-sense understanding of a prior state of affairs do not give rise to an inference of scienter."  *City of Birmingham* v. *Ryanair Holdings*, 2020 WL 2834857, at *3 n.3 (S.D.N.Y. June 1, 2020) (Oetken, J.).

Hudson was "discussed is insufficient to demonstrate [scienter]." *Woolgar* v. *Kingstone Cos.*, 477 F. Supp. 3d 193, 238 n.21 (S.D.N.Y. 2020) (Abrams, J.).  Fatally for their claims, Plaintiffs have no evidence that Messrs. Blankfein, Cohn, and Viniar ever saw any misleading marketing material or were aware of any conflicts-control failure for any of the four CDOs.  (Reply 56.1 ¶¶ 114-31.)

Recent decisions confirm that senior executives' knowledge that lower-level employees were selling securities to highly sophisticated counterparties during a declining market is legally insufficient to establish that the executives knew that those employees were allegedly selling securities through fraud.  *See Lachman* v. *Revlon, Inc.*, 487 F. Supp. 3d 111, 137 (E.D.N.Y. 2020) (Kovner, J.) (allegation that defendants "'led the planning and implementation' . . . does not establish that they 'actually received information about the fraud'"); *Gray* v. *Alpha & Omega Semiconductor Ltd.*, 2021 WL 4429499, at *11 (S.D.N.Y. Sept. 27, 2021) (Abrams, J.) (allegations were "a leap too far" because "[k]nowing that Huawei was added to [a government red flag list] does not mean knowing that all business with Huawei after that addition was unlawful").  Nor does the asserted importance to Goldman's profits of CDOs—which contributed less than 1% of Goldman's revenues (56.1 ¶¶ 94-95)—support any inference that Messrs. Blankfein, Cohn, and Viniar "must have known" about any misleading marketing.  *Jackson*, 960 F.3d at 99.

### 2.    There is no material dispute over the challenged statements' falsity.

To prove their theory of the case, Plaintiffs must produce evidence showing genuine disputes on two distinct issues:  (i) Goldman made material misstatements to investors in the four CDOs; and (ii) that conduct rendered materially false the challenged statements to its shareholders.  (SJ Br. 10.)  Recent decisions confirm that Plaintiffs have not made either showing.

On the first issue, this Court's decision in *Loreley Fin. (Jersey) No. 3 Ltd.* v. *Wells Fargo Sec., LLC*, 412 F. Supp. 3d 392, 395, 408-09 (S.D.N.Y. 2019) (Crotty, J.), *aff'd*, 13 F.4th 247 (2d Cir. 2021), combined with Judge Marrero's decision in *Dodona I, LLC* v. *Goldman Sachs & Co.*,

132 F. Supp. 3d 505, 517 (S.D.N.Y. 2015), confirm that Goldman made no misstatements to investors in the Hudson, Timberwolf, and Anderson CDOs.  In *Loreley*, this Court granted summary judgment for defendants, rejecting the claim that Wachovia failed to disclose to CDO investors that "an important hedge fund client" "exerted improper influence over and selected inferior collateral for" two of the bank's CDOs "to advance [the hedge fund's] strategy to bet against or 'short' the CDOs"—in other words, Plaintiffs alleged that the "CDOs were set up to fail." 412 F. Supp. 3d at 395.  In affirming, the Second Circuit held that defendants "did not have a duty to disclose" the hedge fund's role and trading "strategies" to CDO investors, because "the parties were not in a fiduciary relationship," and the investors were not acting on "mistaken knowledge." 13 F.4th at 263-64 & n.9.  Here, as in *Loreley*, the factual record is uncontroverted that Goldman was not a fiduciary to the sophisticated investors in the Hudson, Timberwolf, and Anderson CDOs (*see* 56.1 ¶¶ 30, 42, 55), who agreed to base their investment decisions on their own independent evaluation and "not upon any view expressed by" Goldman (*id.*).  Nor were those CDO investors acting on mistaken knowledge since there is no dispute that Goldman accurately disclosed (i) the assets underlying the CDOs, and (ii) that Goldman held each CDO's short position, *i.e.*, the fundamental "conflict" in Plaintiffs' theory.  (*Id.* ¶¶ 26, 31, 38, 43, 51, 56.)

In *Loreley*, this Court favorably cited *Dodona*, which held that no "evidence show[s]" that Goldman "possessed and failed to disclose some material, nonpublic information" to Hudson investors.  132 F. Supp. 3d at 516.  Judge Marrero concluded that Goldman had no duty to disclose its "internal strategy of obtaining short positions in order to reduce [its] long exposure," and that the offering circulars did disclose Goldman's short positions, and thus that it "stood to gain if there were [] adverse credit event[s]."  *Id.* at 513, 516.  *Loreley* and *Dodona* thus require the Court to reject Plaintiffs' same theory as to the Hudson, Timberwolf, and Anderson CDOs (SJ Opp. 6-8).

On the second issue, recent Second Circuit decisions make clear that misconduct in ABACUS (or any of the four CDOs) could not render false Defendants' general statements about conflicts risks throughout Goldman.  In *Asay* v. *Pinduoduo Inc.*, a company's statement about its "strict" anti-counterfeiting controls was not false when coupled with "an express warning about the potential ineffectiveness of [those] policies."  2020 WL 1530745, at *7 (S.D.N.Y. Mar. 30, 2020) (Castel, J.), *aff'd*, 2021 WL 3871269 (2d Cir. Aug. 31, 2021).  Here, Goldman's statement about its "extensive procedures and controls that are designed to identify and address conflicts" was in the "Risk Factors" section of its SEC filings and cautioned that conflicts were "increasing," and that "a failure to appropriately . . . deal with [them] could adversely affect our businesses" and "give rise to . . . enforcement actions."  (56.1 ¶¶ 2-6.)  As in *Asay*, the statement appears amid "disclosures regarding the historical and ongoing problems and risks associated with" the controls, 2021 WL 3871269, at *3, and, "[r]ead in its surrounding context, . . . was a qualified statement about the effectiveness" of those controls, 2020 WL 1530745, at *7.  Thus, "[a] reasonable investor would not understand [Goldman] to be boasting that" its conflicts controls would never fail.  *Id.* As the Second Circuit held in *Singh* v. *Cigna Corp.*, 918 F.3d 57, 64 (2d Cir. 2019), statements are not materially misleading where, as here, their "framing suggests caution (rather than confidence) regarding the extent of [the company's] compliance").[2]  That is even clearer for the Business Principles, as generic statements about aspirational, firm-wide values do not promise that isolated misconduct will never occur.

### 3.    New case law establishes lack of materiality.

In its second Rule 23(f) decision, the Second Circuit pointed to "summary judgment" as

---

[2] That a July 2007 internal audit report found that the "CDO desk"—just one among thousands at Goldman (*see*, *e.g.*, ECF 170-91 at 5)—"does not always obtain conflict clearance as required by firm policy" (SJ Opp. 12) underscores that policies and conflicts controls existed and that failures were isolated.  (*See* Reply 56.1 ¶¶ 418, 437.)

"an appropriate time" for this Court to address materiality.  *Ark. Teacher Ret. Sys.* v. *Goldman Sachs Grp., Inc.*, 955 F.3d 254, 274-75 (2d Cir. 2020).  Since Defendants' 2018 summary judgment reply, the Second Circuit has held seven more times—15 times in total—that statements nearly identical to the alleged misstatements here were immaterial, because they amounted only to "general declarations about the importance of acting lawfully and with integrity." *Singh*, 918 F.3d at 61, 63.[3]  This Court previously considered those decisions "only to the extent [they] inform[] the Court's narrow mandate to determine whether Defendants have demonstrated a lack of price impact." (ECF 258 at 22 n.17.)  In deciding summary judgment, this Court should now follow those uniform Second Circuit holdings in evaluating the materiality of Defendants' statements.

Goldman's conflicts warning correctly stated that Goldman had "extensive procedures and controls" to manage conflicts, but that those procedures might "fail, or appear to fail" with "litigation or enforcement actions" as a result.  (56.1 ¶ 3.)  The Second Circuit recently held in *Danske Bank* that similar warnings about compliance procedures were legally immaterial.  Danske Bank claimed to "take[] the steps necessary to comply with internationally recognised [anti-money

---

[3] Statements analogous to Goldman's conflicts warning held immaterial include that defendant "adopted strict measures to protect [it] against these potential liabilities [from counterfeiting], including proactively verifying the authenticity and authorization of products sold on [its] platform," *Asay*, 2020 WL 1530745, at *6, *aff'd*, 2021 WL 3871269; defendant "takes the steps necessary to comply with internationally recognised standards, including Know Your Customer procedures" and "customer due diligence [and] reporting," *Danske Bank*, 11 F.4th at 103; "[o]ur compliance task force was very successful in analyzing, reviewing and evaluating the work of our compliance department and taking appropriate action," *In re Liberty Tax*, 828 F. App'x 747, 750-51 (2d Cir. 2020); and defendant has "established policies and procedures to comply with applicable requirements" to which it "continue[s] to allocate significant core resources," *Singh*, 918 F.3d at 60.  Statements analogous to the Business Principles held immaterial include that "our partner-centric business model has been successful because it aligns our interests with those of our partners," *In re Synchrony*, 988 F.3d 157, 173 (2d Cir. 2021); defendant "maintained strict compliance" with law and "honesty and integrity [are] non-negotiable core values," *Fogel* v. *Vega*, 759 F. App'x 18, 21 (2d Cir. 2018); the "goal of management" was "[o]ptimizing [defendant's] value for stockholders," *Gross* v. *GFI Grp.*, 784 F. App'x 27, 28-30 (2d Cir. 2019); and "we have a responsibility to act with integrity in all we do," *Singh*, 918 F.3d at 61.

laundering] standards," and to follow "procedures for 'customer due diligence [and] reporting." 11 F.4th at 103. These statements were allegedly shown to be false by a "gigantic money-laundering scandal." *Id*. at 101. The Second Circuit held these statements legally immaterial, contrasting them with statements describing procedures in "detail" (*e.g.*, describing specific "equipment" or "teams") or claiming "particular acts of compliance" (*e.g.*, averring to have "never been fined for regulatory violations"). *Id*. at 103 (quoting *Meyer* v. *Jinkosolar Holdings Co.*, 761 F.3d 245, 247-48 (2d Cir. 2014)). Because the statements contained no such details and "claimed no particular acts of compliance," "no reasonable investor" would "weigh" them "in its investment calculus." *Id.* at 103-04; *see also Singh*, *supra* n.3. Here, Goldman's firmwide warning similarly described no specific features of its conflicts controls and did not claim perfect compliance with any specific policy. Indeed, Goldman's statements were *more* qualified than those in *Danske Bank*, as Goldman expressly warned that procedures might "fail, or appear to fail." (56.1 ¶ 3.)

At a minimum, the Court should grant summary judgment as to the Business Principles (*e.g.*, "Our clients' interests always come first"). In recently recertifying the class, the Court recognized that some challenged statements (presumably, the Business Principles) "may present as platitudes when read in isolation." (ECF 258 at 20; *see id.* at 26.) The law is clear that "platitudes" "tout[ing] [a company's] business philosophy" that do not "provide specific, falsifiable details about the corporation's financial condition" "are 'too general to cause a reasonable investor to rely upon them.'" *Burr* v. *Equity Bancshares, Inc.*, 2020 WL 6063558, at *6 (S.D.N.Y. Oct. 14, 2020) (Nathan, J.); *see Ling Living Trust* v. *B. Commc'ns Ltd.*, 346 F. Supp. 3d 389, 405 (S.D.N.Y. 2018) (Oetken, J.) ("vague platitudes . . . are insufficiently concrete to be misleading in a way that could give rise to liability under Section 10(b) and Rule 10b-5").

At class certification, the Court questioned whether the Business Principles' platitudes

could take on increased significance when read "in conjunction with statements specifically concerning conflicts." (ECF 258 at 20-21.) But Plaintiffs have the burden to "demonstrate with specificity why and how *each statement* is materially false." *Boca Raton Firefighters* v. *Bahash*, 506 F. App'x 32, 38 (2012) (emphasis added). Although courts may consult the "surrounding text" of each challenged statement for "context," *Omnicare, Inc.* v. *Laborers Dist. Council Const. Indus. Pension Fund*, 575 U.S. 175, 190 (2015), statements made in different documents at different times provide little, if any, relevant context. Here, Plaintiffs cite no evidence that investors construed the Business Principles, which appeared in annual reports to shareholders, in conjunction with the conflicts warning, which appeared in annual Form 10-K filings with the SEC.

### 4.    Recent case law confirms that no reasonable juror could find loss causation.

At class certification, where *Defendants* had the burden to show "that the alleged misstatements had *no* price impact whatsoever," the Court "accept[ed] that the enforcement actions themselves—divorced from the underlying conduct alleged therein—may have been a 'contributing factor' to Goldman's price drops." (ECF 258 at 18-19, 22.) At summary judgment, however, the burden shifts, and "Plaintiffs must 'disaggregate' losses caused by 'disclosures of the truth behind the alleged misstatements' from losses caused by other factors." *Atlantica Holdings, Inc.* v. *Sovereign Wealth Fund Samruk-Kazyna JSC*, 477 F. Supp. 3d 88, 110 (S.D.N.Y. 2020). In *Atlantica*, Judge Furman granted summary judgment for this exact reason: plaintiffs' expert had "fail[ed] to disaggregate losses caused by non-fraud factors." *Id.* at 110-11.

The same applies here. Dr. Finnerty testified that "[o]ne could disaggregate" the alleged fraud losses (caused by the supposed misstatements) from non-fraud losses (including from news of enforcement activity) (ECF 233 at 175:4-22), and that "[w]hen enforcement actions are announced, they are almost always met with a strong negative reaction" regardless of the underlying allegations (ECF 170-87 at 232:6-8, 241:8-245:5). But Dr. Finnerty elected not to

"attempt to measure th[e] incremental impact" (ECF 170-87 at 307:3-6) of the alleged fraud alone and so there is no basis on which a reasonable juror could identify fraud-related losses.[4]

Moreover, at least as to the second and third "corrective disclosures," recent authority demonstrates why Plaintiffs present no triable issue of loss causation.  In *In re Curaleaf Holdings, Inc. Sec. Litig.*, Judge Cogan held that there could be no loss causation where "[t]he only previously unknown information that may have been 'corrected' by" a regulator's statement that it "may pursue enforcement" was "the uncertainty as to whether the [regulator] would pursue any enforcement action." 519 F. Supp. 3d 99, 110 (E.D.N.Y. 2021).  Similarly, in *In re Xunlei Ltd. Sec. Litig.*, this Court observed that neither a business partner's allegation that a company was being "investigated by Chinese regulators," nor a self-regulatory organization's "Risk Alert" about the company, could allege loss causation because the reports "fail[ed] to reveal any new facts not already known to the public."  2019 WL 4276607, at *4, 12 (S.D.N.Y. Sept. 10, 2019) (Crotty, J.).

Plaintiff's second "corrective disclosure" (April 30, 2010) merely reported on a rumored criminal investigation into "mortgage trading" without referencing any conduct, conflict, or CDO. (56.1 ¶¶ 160-62.)  Plaintiffs' third "corrective disclosure" (June 10, 2010) similarly revealed only the rumor of an SEC investigation.  (*See* 56.1 ¶ 167.)  *Curaleaf* and *Xiunlei* correctly recognized that news of enforcement activity alone cannot show loss causation without also "reveal[ing] some then-undisclosed fact with regard to the [alleged] misrepresentations."  *Dalberth* v. *Xerox Corp.*, 766 F.3d 172, 188 (2d Cir. 2014).

## CONCLUSION

Defendants respectfully request that the Court grant their summary judgment motion.

---

[4] Nor was an April 16, 2010 email from an investor relations employee a "contemporaneous admission" about loss causation.  (SJ Opp. 23.)  That email simply stated that "[f]inancials led markets sharply lower after federal regulators filed civil fraud charges against Goldman Sachs regarding alleged conflicts of interest in connection with CDO marketing" (Pls. SJ Ex. 13) and so does not suggest any new information that caused the price decline except for the SEC lawsuit.

Respectfully submitted,

*/s/ Robert J. Giuffra, Jr.*

Robert J. Giuffra, Jr. *(giuffrar@sullcrom.com)*
Richard H. Klapper *(klapperr@sullcrom.com)*
David M.J. Rein *(reind@sullcrom.com)*
Benjamin R. Walker *(walkerb@sullcrom.com)*
Julia A. Malkina *(malkinaj@sullcrom.com)*
Jacob E. Cohen *(cohenja@sullcrom.com)*
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York  10004-2498
Telephone:  (212) 558-4000
Facsimile:  (212) 558-3588

*Counsel for Defendants The Goldman Sachs Group, Inc., Lloyd C. Blankfein, David A. Viniar, and Gary D. Cohn*

January 18, 2022